**Document 6**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL ORRIN BAKER,<br>　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES, et al.,<br>　　　　Defendants. | :<br>:<br>:<br>: Civ. Action No. 05-147 (SJM-SPB)<br>:<br>:<br>:<br>: |

**DECLARATION OF JAMES F. SHERMAN**

I, James F. Sherman, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Warden at the Federal Correctional Institution (FCI), McKean, Pennsylvania. I have been employed as the Warden at FCI McKean since approximately January 26, 2004.

2. In February 2004, the general population at FCI McKean consisted of 4 inmate housing units (not including the satellite prison camp), Unit A, Unit B, Unit C, and Unit D. Each housing unit consisted of two sides, A or B. The Housing Units were identified by unit and side; for example, Unit AA, Unit AB, Unit BA, Unit BB, etc. Each side of each housing unit housed approximately 150 to 160 inmates.

3. To my knowledge, on February 27, 2004, there was no BOP regulation or policy in effect which dictated the number of correctional officers, the placement of correctional officer posts within a federal correctional institution, or the specific duties assigned to correctional officers assigned to posts within

1

a BOP facility. The authority to determine the number, placement and specific duties of correctional officers within a BOP facility was and continues to be a matter within the discretion of each BOP Warden during normal operations as well as during emergency situations.

4. As the Warden at FCI McKean in February 2004, it was my duty to determine how best to deploy Correctional Officers and other staff to the various posts within the compound, based upon the security needs of the institution and the effective use of limited resources.

5. In February 2004, it was my determination, based upon staffing levels, professional experience, and institutional needs, that one correctional officer would be posted on each side of each housing unit. This unit officer would be responsible for supervising the inmates inside the housing unit by making frequent rounds through all areas of the housing unit, conducting safety and sanitation inspections, distributing cleaning supplies, passes out mail, and conducting cell searches and pat searches of inmates inside the housing unit.

6. On February 27, 2004, inmate housing assignments at FCI McKean was a matter left to the discretion of the Warden, upon the advice of staff.

7. In February 2004, the decision as to which inmates should be separated, placed in administrative detention or

recommend be moved to other facilities was also a matter left to the discretion of each BOP Warden that took into consideration numerous factors, including the safety of inmates, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited resources.

8.  In February 2004, the decision to assign an inmate to general population, as opposed to administrative detention was a matter left to the discretion of each BOP Warden based upon available information and the availability of limited resources.

    I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this __8__ day of December 2005.

                                      *James F. Sherman*
                                      JAMES F. SHERMAN
                                      Warden
                                      Federal Correctional Institution
                                      McKean, Pennsylvania