UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,

        Plaintiff,      )
                     )
                     )
VS.                 )   CIVIL ACTION NO. 05-147E
                     )
                     )   HONORABLE
                     )   JUDGE MCLAUGHLIN
                     )
UNITED STATES OF AMERICA   )
GOVERNMENT OFFICIALS AT    )
FCI-MCKEAN, WARDEN, OFFICER )
B. WESEMEN, MEDICAL DEPARTMENT )
                     )
        Defendants.

## LEAVE TO FILE A SECOND
## AMENDED COMPLAINT

### INTRODUCTION

NOW COMES, the plaintiff DARRYL ORRIN BAKER, (hereinafter "PLAINTIFF")
and proceeding **pro-se**, and respectfully mover **"inter alia"** this
Honorable Court for leave to File a Second Amended Complaint against
the Defendant's United States of America, et.al., and for the
reasons that follow.

### JURISDICTION

This Honorable Court has jurisdiction pursuant to Federal Tort
Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. and 28 U.S.C. 2680(a).
The Plaintiff filed a Administrative Claim on a Administrative
Claim Standard Form 95 ("Claim for Damages, Injury, Or Death"),
on June 17, 2004 and the Bureau of Prisons denied relief on
December 3, 2005. See **(EXHIBIT 1);** The FTCA permits an individual

to bring suit in federal court against the United States:

> for injury of loss of property, or personal
> injury or death caused by the negligence
> or wrongful act or omission of any employee
> of the Government while acting within the
> scope of his office or employment, under
> circumstances where the United States if
> a private person, would be liable to the
> claiment in accordance with the law of
> the place where the act or omission occurred.

28 U.S.C. 1346(b)(1). Pursuant to this provision, federal inmates

may bring suit for injuries they sustain while incarcerated as a

consequence of the negligence of prison officials. **United States**

**v. Muniz,** 374 U.S. 150, 83 s.Ct. 1850, 10 L.Ed.2d 805 (1963).

However, the Plaintiff may not bring such a suit unless he has

first presented his claim to the appropriate Federal Agency and

that Agency has denied the claim. 28 U.S.C. § 2675(a):

> [A] claim shall be deemed to have been
> presented when a Federal Agency receives
> from a claimant an executed standard form
> 95 or other written notification of an
> incident, accompanied by a claim for money
> damages in a sum certain for personal injury
> alleged to have occurred by reason of an
> incident.

28 C.F.R. § 14.2(a) a Plaintiff's failure to exhaust administrative

remedies before he brings suit mandates dismissal of the claim.

**McNeil v. United States ,** 508 U.S. 106, 113 S.Ct. 1980, 1984, 124

L.Ed.2d 21 (1993).

This Honorable Court also have jurisdiction Pursuant to Federal Tort Claims Act 28 U.S.C. § 1346(b), 28 U.S.C. 2672, 28 U.S.C. 2675(a); See **Gotha v. United states,** 115 F.3d 176 (3rd Cir.1997) (quoting **Berkovitz v. United States,** 486 U.S. 531, 108 S.Ct. 1954 1959, 100 L.Ed.2d 531 (1988).

## HAINES V. KERNER
## STANDARD OF REVIEW

In **Alvarado v. Litscher,** 267 F.3d 648 97th Cir.2001), allegations of a pre-se complaint are held "to less stringent standards than formal pleading drafted by lawyers." **Haines v. Kerner,** 404 U.S. 519, 520, 92, 30 L.Ed.2d 652 (1972)(per curiam). Accordingly, pro-se complaints are liberally construed. See **Wilson v. Civil Town of Clayton, Ind.,** 839 F.2d 375, 378 (7th Cir.1988); This Court stated, we cannot affirm the dismissal unless we can "say with assurance that under the allegation of the pro-se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." haines 404 U.S. 519 Id. (quoting **Conley v. Gibson,** 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1975)). See also, **Urrutia v. Harrisburg County Police Dept.,** 91 F.3d 451 (3rd Cir.1996); **Gibbs v. Roman,** 116 F.3d 83 (3rd Cir.1997). Accord **McDowell v. Delaware State Police,** 88 IІ.3d 188 (3rd Cir. 1996).

## RULE 8(a) STANDARD

In **Alvarado v. Litscher,** 267 F.3d 648 97th Cir.2001), these elements may be put forth in a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.P. 8(a)(2). In reviewing the complaint on a motion to dismiss, "No more [is required] from plaintiff'[s] allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally. **Triad Assoc., Inc. v. Robinson,** 10 B.3d 492, 497 (7th Cir.1993). See **Chamberlain v. Giampapa,** 210 F.3d 154 (3rd Cir.2000); Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ.P. 8(a). The only situations that require pleading with particularity are specified in Fed. R. Civ.P. 9, and a malpratice claim is not one the situations listed in that rule. In **Crisin v. Brennan,** 281 F.3d 404 (3rd. Cir.2002); Civil Procedure 8(a) which states that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

## RULE 12(b)(1)

Complaint lack subject matter jurisdiction. The plaintiff is aware that in order for plaintiff to establish subject matter jurisdiction the plaintiff must establish facts to persuade this Court. In **Gould v. Eletronics Inc. v. United States**, 220 F.3d 169 (3rd Cir. 2000); this Court stated, in contrast, in a factual attack under Rule 12(b)(1), the Court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction. See Mortensen

549 F.2d at 891. The plaintiff has the burden of persuasion to convince the court it has jurisdiction. See **Kehr Packages,** 926 F.2d at 1409. A claim may be dismissed under Rule 12(b)(1) only if it clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction " or is" wholly insubstantial and frivolous." id. (internal quotation ommitted). See also **Gotha v. United States,** 115 F.3d 176 (3rd Cir.1997). Plaintiff have proved facts, and subject matter jurisdiction based on facts in this case.

## RULE 12(b)(6)

In a Rule 12(b)(6) motion, the Court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiff, and determining whether they state a claim as a matter of law. See **In re Burlington Coat Factory Securities Litigation,** 114 F.3d 1410, 1492 (3rd Cir. 1997). The defendant bears the burden of showing no claim has been stated. See **Kehr Packing,** 926 F.2d at 1409.

## DISCRETIONARY FUNCTION EXCEPTION

In **Ochran v. United States,** 117 F.3d 495 (11th Cir.1997); the Court for the Eleventh Circuit stated. The FTCA waives the United States Government's Sovereign Immunity from suit in Federal Court for the negligent actions of its employees. See 28 U.S.C. § 1346(b).

This broad waiver of immunity, however, is subject to several
exceptions. The discretionary function exception, at issue in
this case, precludes government liability for "[a]ny claim based
upon the exercise of performance or the failure to perform a
discretionary function or duty on the part of a federal agency or
an employee of the government, whether or not the discretion involved
be abused. 28 U.S.C. § 2680(a). The Supreme Court enunciated
a two-part test for determining whether a government employee's
action or omission falls within the discretionary function exception.
See **Autery v. United States**, 992 F.2d 1523, 1526 (11th Cir.1993).
First, we consider the nature of the conduct and determine whether
it involves an element of judgment or choice. **United States v.
Gaubert,** 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335
(1991)(quoting **Berkovitz v. United States,** 486 U.S. 531, 536, 108
S.Ct. 1954, 1958 100 L.Ed.2d 531 (1988)); **Powers v. United States,**
996 F.2d 1121, 1124 (11th Cir.1993). government conduct does not
involve an element of judgment or choice and thus is not discretionary,
if "a federal statute, regulation, or policy specifically prescribes
a course of action for an employee to follow, because the employee
has no rightful option but to adhere to the directive. Gaubert, 499
U.S. at 322, 111 S.Ct. at 1273 (quoting Berkovitz, 486 U.S. at 536
108 S.Ct. at 1958-59); See also Powers, 996 F.2d at 1124 (giving
examples of cases in which the relevant statute or policy was found
to prescribe a specific course of action). Second, if the conduct
at issue involves the exercise of judgment, we must determine whether

(6)

that judgment, is grounded in consideration of public policy. Gaubert, 499 U.S. at 322-23, 111 s.Ct. at 1273-74. "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 323, 111 S.Ct. at 1273 (quoting **United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),** 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)). Therefore, decisions that involve judgment grounded in these considerations fall within the exception. In making this determination, we do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting. id. at 325, 111 S.Ct. at 1275; Autery, 992 F.2d at 1530-31. We focus on the nature of the actions taken and on whether they are susceptible to policy analysis. Gaubert, 499 U.S. at 325, 111 S.Ct. at 1275. See also, **Gould Electronics Inc. v. United States,** 220 F.3d 169 (3rd Cir.2000); **Reo v. United States Postal Service,** 98 F.3d 73 (3rd Cir.1996); **Carnegie Mellow University v. Schwartz,** 105 F.3d 863 (3rd Cir.1997); **Norman v. United States,** 111 F.3d 356 (3rd Cir.1997).

## SHORT AND PLAIN STATEMENT
## RULE 8(a)

The Plaintiff alleges **"inter alia"** that on February 27, 2004, at
approximately 8:05 p.m. I inmate Baker, was assaulted by two (2)
Latin King Gang Members at F.C.I. Mckean. At the time of this attack,
I was assigned to the ten (10) man cell where I shared my living
quarters with (9) other inmates, and several of these inmates
saw the attack being administered to me by these Latin King Gang
Members. The assault lasted approximately between (7) to (10)
minutes, leaving the Plaintiff battered and bruised very badly
and in need of serious medical attention.  I was in the ten (10)
man cell setting in a chair listening to the radio with my head
phones on with my eyes closed, and two (2) Latin King Gang Members
entered the ten (10) man cell and stared assaulting me. I suffered
a bleeding and bruised nose, swollen left eye, swollen head, cuts,
blurred vision, contusion, at the time of this attacks by the Latin
King Gang Members, Officer, B. Wesemen, was on duty working the
evening shift and was not present in the Unit at the time this
assault took place. perhaps, Officer Wesemen, was a sleep, or
perhaps he left for a cigarette, or a snack, but he was not in the
Unit when the Plaintiff was assaulted by the two (2) Latin King
Gang Members, and Officer Wesemen, was unaware what took place.
Two (2) days later, on February 29, 2004, at approximately 9:10a.m.
I was awoke by Officer Zerowitz, the morning shift Officer, and
he requested to see my face for bruises. i was then immediately
taken to the Lieutenant Office, and,while I was there, pictures
was taken of my face, left eye, back, hands, chest, where the two
(2) Latin King Gang Members assaulted me. Then I was immediately

taken to the Medical Department where I was seen by a Physician Assistant. The Physician Assistant, denied me any medication for my pain and suffering. The Physician Assistant, denied me medical attention to my left eye. The Physician Assistant was unaware that I had double vision, blurred vision, and that my left eye was off centered. The Physician Assistant, denied me to see a Eye Doctor, or  Eye specialist, and did not recommend me to see one. Then I was immediately placed in Administrative Detention. While I was there, I made numerous complaints, about my left eye and my pain and suffering and was denied any treatment. Then I made my complaints to the Warden and Assistant Warden and i still was denied medical attention for my left eye and pain and suffering. As a result, of the Defendant's negligence at F.C.I. Mckean, I am suffering future aliments included, but are limited to:

(a) The left eye will not look up as far as the right eye.

(b) Some scarring on the floor of the orbit with possible adhensions to the inferior rectus muscle.

(c) Orbital floor fracture.

(d) Orbital floor fracture w/entrapment.

(e) Blow out fracture.

(f) Can not look up with my left eye without experiencing a form of diplopia and pain.

Plaintiff alleges that the named Defendant's negligence subject the plaintiff to unusual punishment as a result of unreasonable risk of harm to plaintiff's present and future general health, and well-being.

(9)

## MEDICAL

On February 27, 2004, I inmate Baker, was assaulted by two (2)
Latin King Gang Members, as a result of this attack I sustained
injuries to my nose, and head, left eye, and emotional pain and
suffering. Two (2) days later on February 29, 2004, at approximately
9:10a.m., I was awoke by the morning shift Officer Mr. Zirowitz,
where he ordered to see the injuries I had sustained. Then I was
immediately taken to the Lieutenant Office where pictures where
taken of my injuries and then I was seen by a Physician Assistant.
I did not receive any medication or any treatment for my left eye
or my injuries. Then I was taken to Administrative Detention.
While I was in Administrative Detention, I did not receive any
medical attention for my left eye, and the injuries I sustained
at the hand of the assault. I put in several sick call forms and
was denied medical treatment by medical staff. On March 11, 2004
I was seen by Doctor Beam, and received some eye drops and was
denied medical treatment for my left eye. I was released from
Administrative Detention on march 26, 2004. After my release, I
begin to put in sick call forms and I was not seen by a Eye Specialist
until April 16, 2004. This negligence by these Government Officials
at F.C.I. Mckean cause the Plaintiff future injuries to my left
eye and, I will not be able to hold my job at General Motors when
I am released from prison. This negligence by these Government
Officials are the proximate cause of my injuries, and future pain
and suffering.

## FIRST CAUSE OF ACTION

Plaintiff allege that the named Defendant's Government Officials used nondiscretionary actions and was not involved in element of judgement or choice.

## MR. WESEMEN DID NOT USE JUDGMENT OR CHOICE

The Plaintiff states that Mr. Wesemen, the Defendant, did not use judgment or choice when he left the Unit unprotected. When the Plaintiff was assaulted by the two (2) Latin King Gang Members, the Defendant officer Wesemen, was not in the Unit, and was unaware of what took place. The record show, that, the Plaintiff was taken to the Lieutenant Office two (2) days later, and pictures where taken of the injuries. The assault took place on February 27, 2004, and the Plaintiff was taken to the Leiutenant on February 29, 2004. Officer Wesemen, the Defendant, did not use judgment or choice when he left the Unit unprotected or unsupervised when the assault took place. Several witnesses observed Officer Wesemen, leave the unit and was out of the Unit for a extended period of time, and did not return for a time. See **(EXHIBIT 2)**. The Defendant Officer Wesemen, used "negligence and carelessness" in leaving the Unit unattended for a period of time. Failure of Defendant Wesemen to overlook the potential danger's of leaving the Unit should be considered negligence on his behalf. The Plaintiff, allege that, this type of negligence made decisions would involve elements of judgment or choice, would not be compelled by statute or regulation and would be grounded in considerations of public policy since they would involve choices motivated by considerations of economy,

(11)

efficiency, and safety. Defendant Officer Wesemen, was carelessly
inattenitive to what was occurring or what could of occurred when
he left the Unit unattended, and discretionary functional exception
does not shield the United States from liability. these negligent
acts of Defendant Officer Wesemen leaving the Unit unattended do
not involve "considerations of public policy," and Defendant Officer
Wesemen, went to take a smoke break rather than perform his duties
in the Unit was negligence of the Government Officials behalf.

## ARGUMENT

For the proposition of this argument the Plaintiff cites **Gotha
v. United States,** 115 F.3d 176 (3rd Cir.1997); The Federal Torts
Claims Act is a partial abrogation of the federal government's
sovereign immunity that permits suits for torts against the United
States. The Act, however, imposes a significant limitation by providing
that no liability may be asserted for a claim "based upon the excercise
or performance or the failure to exercise or perform a discretionary
function or duty on the part of a federal agency or an employee of
the Government, whether or not the discretion involved be abused."
28 U.S.C. § 2680(a). The statute does not define "discretionary
function or duty" and these terms have led to extensive litigation
to tort claimants. It is clear that if the word "discretionary"
is given a broad construction, it could almost completely nullify
the goal of the Act. **United States v. S.A. Empresa De Viacao
Aerea Rio Grandense (Varig Airlines),** 467 U.S. 797, 808, 104 S.Ct.
2755, 2762, 81 L.Ed.2d 660 (1984) (exception "marks the boundary
between Congress willingness to impose tort liability upon the

United States and its desire to protect certain governmental
activities from exposure to suit by private individuals."). The
Statutory language does not apply to every situation in which
there is an actual option to choose between courses of action or
inaction. Rather, as the Supreme Court has stated, the discretion
that is immunized from "second-guessing" in the tort suit context
applies to "legislative and administrative decisions grounded in
social, economic, and political policy." Id. at 814, 104 S.Ct. at
2765. In **Berkovitz v. United States,**  486 U.S. 531, 537 108 S.Ct.
1954, 1959, 100 L.Ed.2d 531 (1988), the Court explained: "The
exception, properly construed...protects only governmental actions
and decisions based on consideration of public policy." The reason
for "fashioning an exception for discretionary functions" was to
"protect the government from liability that would seriously
handicap efficient government operations. " **Varig Airlines,** 467
U.S. at 814, 104 S.Ct. at 2765. In Berkovitz, the Court acopted a
two-stage inquiry: First, a court must consider if " a federal
statue, regulation or policy specifically prescribes a courts of
action for an employee to follow." 486 U.S. at 536, 108 S.Ct. at
1958. If so," the employee has no rightful option but to adhere to
the directive." Id. Consequently, there can be no lawful
discretionary act. If circumstances imposing compulsion do not
exist, a court must then consider whether the challenged action or
inaction "is of the kind that the discretionary function exception
was designed to shield." Berkovitz, 486 U.S. at 536, 108 S.Ct. at
1959. Again, the Court emphasized that the "discretionary function
exception insulates the Government from liability if the action..

involves the permissible exercise of policy judgment." Id. at 537
108 S.Ct. at 1959. In **United States v. Gaubert,** 499 U.S. 315, 325
111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991), the Court explained
that for a plaintiff's claim to survive, the challenged actions
cannot " be grounded in the policy of the regulatory regime."
The Court stressed that the "focus of the inquiry is not on the
agent's subjective intent in exercising the discretion conferred
by statute or regulation, but on the nature of the actions taken
and  on whether they are susceptible to policy analysis." Id.
Gaubert noted another limitation on the exception, citing the
hypothetical situation where an agency employee negligently drives
an automobile in the course of his employment. Such action, although
within the scope of employment, "cannot be said to be based on
the purposes that the regulatory regime seeks to accomplish."
499 U.S. at 325 n. 7, 111 S.Ct. at 1275 n. 7. An examination of
some of the situations where the discretionary function exception
was applied may be helpful in understanding its scope. A federal
agency decision to use a spot-checking process in inspecting
aircraft was an exercise of policy discretion. Varig Airlines,
467 U.S. at 814-16, 104 S.Ct. at 2764-66. The supervision of day-
to-day activities of a failing thrift institution was based on the
public policy considerations of protecting the federal savings and
loan insurance fund and federal oversight of the thrift industry.
Guabert, 499 U.S. at 332, 111 S.Ct. at 1278-79. The decision of
the Food and Drug Administration to refuse entry to suspected
contaminated fruit was a discretionary action. Fisher Bros., 46

(14)

F.3d at 285. See also **Sea-Land Serv. v. United States**, 919 F.2d
888 (3d Cir.1990)(decision to use asbestos in construction of ships
was a discretionary decision); **General Public Utils. Corp. v.
United States,** 745 F.2d 239 (3d Cir.1984)(action of Nuclear
Regulatory Commission in not reporting safety information was
discretionary). See also, **Santana-Rosa v. United States,** 335 F.3d
39 (1st Cir.2003); **Pooler v. United States,** 787 F.2d 868 (3rd Cir.
1986); **Palay v. United States,** 349 F.3d 418 (7th Cir.2003);
**Cestonaro v. United States,** 211 F.3d 749 (3rd Cir.2000).

### SECOND CAUSE OF ACTION

Defendant's Government Officials "negligent" actions have created
a direct liability for Plaintiff in relationship to Plaintiff's
present and future health and well-being.

### FUTURE HEALTH AND WELL-BEING

The Plaintiff alleges that, due to the Government Officials
"negligent" acts by the Medical Department and Defendant Officer
Wesemen, not being in the Unit, the Medical Department did not
provide the Plaintiff with medical treatment for months and then
the Plaintiff was transferred. The Plaintiff's suffered injuries
has caused the Plaintiff future health problems and will affect
Plaintiff's future well-being to hold employment. The Plaintiff,
has suffered a Orbital Floor Facture w/Entrapment,  and scarring
of the floor of the orbit with possible adhesions to the inferior
rectus muscle. ("Blow-out Fracture-Diplopia involving InfraOrbital

Nerve Branches") See ( **EXHIBIT 3**) It is obvious from the Plaintiff's medical record that show the Plaintiff has sustained injuries to the left eye and is still suffering pain because nothing has been done to alleviate this discomfort. This negligence by the Defendant Government Officials are the direct liability of this cause and the record show that this injury was sustained of February 27, 2004, and the Plaintiff is still suffering until this day December _14_, 2005.

## ARGUMENT "DUTY OF CARE"

For the proposition of this argument, the Plaintiff will rely on **Jones v. United States,** 91 F.3d 623 (3rd Cir.1996); The court concluded that "Plaintiff has not set forth specific facts showing that there is a genuine issue for trial." We disagree with the district court's conclusion that summary judgment was appropriate because Mr. Jones "produced no evidence that there was a duty" to provide him his prescription medicine at at certain time. Rather than requiring evidentiary proof, "[w]hether a defendant owes a duty of care to a palintiff is a question of law." **Kleinknet v. Gettyburg College,** 989 F.2d 1360, 1366 (3d Cir.1993)(citing Restatement (Second) of Torts § 328(B)(1965)) (other citations omitted). Therefore, we need only determine whether, as a matter of law the defendant owed a duty to Jones. In Paragraph 2 of his complaint, Jones specifically pointed to the relevant legal duty the government negligently breached:

> Defendant UNITED STATES OF AMERICA operates
> a prison system and is responsible for the
> care, health and welfare of federal prisoners
> within its custody in the federal prison system.

Jones also alleged that federal employees "failed to supply Plaintiff with his medication although it knew or should have known that [the medicine] was necessary for his health." We find the defendant's duty articulated in 18 U.S.C. § 4042(a)(2) and (3), which provide:

> The Bureau of Prisons... shall-(2)...
> provide for the safekeeping, care and
> subsistence... (3) provide for the
> protection...all persons charged with
> or convicted of offenses against the
> United States.

The statute is unambiguous, and to avert summary judgment, Jones was not required provide a further bases for his contention that defendant had a duty of care toward him. **United States v. Muniz,** 374 U.S. 150, 164-65, 83 S.Ct. 1850, 1859, 10 L.Ed.2d 805 (1963). ("T]he duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042...").

## NEGLIGENCE

the analytical framework of the discretionary function exception has been laid out by the Supreme Court in a trilogy of cases-- **United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig),** 467 U.S. 797, 104 s.Ct. 2755, 81 L.Ed.2d 660 (1984); **Berkovitz v. United States,** 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); and **United States v. Gaubert,** 499 U.S. 315, 111 S.Ct. 1267 113 L.Ed.2d 335 (1991). See Gotha, 115 F.3d at 179-80. The first

issue is whether "afederal statute, regulation, or policy specifically
prescribes a course of action for an employee to follow." Berkovitz,
486 U.S. at 536, 108 S.Ct. 1954. If so, the exception cannot apply.
if not, the question is whether the governmental action or inaction
"is, the action constitutes the exercise of protected discretion,
and the United States is immune from suit.  the touchstone of the
second step of the discretionary function test is susceptibility
to policy analysis. See Gaubert, 299 U.S. at 235, 111 S.Ct. U.S.
at 325, 111 S.Ct. 1267 ("The focus of the inquiry is not the agent's
subjective intent in exercising the discretion conferred by statute
or regulation, but on the nature of the actions taken and on whether
they are susceptible to policy analysis."). As we have previously
stated, a plaintiff's claim can only survive if "the challenged
actions cannot be grounded in the policy of the regulatory regime.
Gotha, 115 F.3d at 179 (quoting Gaubert, 499 U.S. at 325, 111 S.Ct.
1267). The Court in Gaubert underscored the importance of the
relationship between the discretionary decision and policy consideration,
noting the exception applies only if the challenged actions can
be said to be based on the purposes that the regulatory regime
seeks to accomplish. " 499 U.S. at 325 n. 7, 111 S.Ct. 1267.
Before proceeding to apply the discretionary function anaylysis to
the facts of this case, there is one remaining preliminary issue
we must identify the challenged action. See **Rosebush v. United
States,** 119 F.3d 438, 441 (6th Cir.1997)(noting that a crucial stop
in determining whether challenged action is protected "is to
determine exactly what conduct is at issue"). As noted by the

District court, plaintiff's complaint levels two allegations concerning the National park Service's conduct:

> Defendant was negligent in failing to provide adequate lighting and correct the known dangerous condition and to warn others about the existence of the dangerous condition.

Compl. at ¶7. In effect, plaintiff challenges the National Park Service's decisions concerning lighting and warning in the Hospital Street lot, From the record, it is unclear whether the National Park Service made a decision not to add lighting or warning signs to the hospital Street lot or whether that resulted from inaction or non-decision. As was the case in Gotha, however, [[i]t would appear that... the action or inaction goes more to the issue of negligence rather than whether the issue of policy discretion is implicated." 115 F.3d at 180. Because the question before us is only whether the nature of the actions taken, or not taken, are susceptible to policy analysis, we need not concern ourselves with whether the National Park Service acted affirmatibely regarding either lighting or warning at the Hospital Street lot. See Fisher Bros., 46 F.3d at 284; **Smith v. Johns-Manville Corp.,** 795 F.2d 301 208-09 93d Cir.1986)("the test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion.").

## THIRD CAUSE OF ACTION

Plaintiff was retaliated against for filing his tort claim against Defendant's Government Officials.

## RETALIATION

The Plaintiff alleges that Defendant's Government officials retaliated against the Plaintiff and violated the Plaintiff's First Amendment Right to file grievances.

## FCT-MCKEAN STAFF

The Plaintiff alleged that as a result of the Plaintiff's filing grievances against the Defendant's at FCI-Mckean, the Plaintiff was transferred out of the institution and relocated to FSL-Elkton where retaliation continues. Plaintiff had been at FCI-Mckean in 2002 and had not filed any grievances, until the incident on February 27, 2004. Within that 5 months before the Plaintiff was transferred, the Plaintiff commenced grievances action and was transferred in July 1, 2004. This retaliation violated the Plaintiff's First Amendment Right to the chill of speech.

## FSL ELKTON

Plaintiff was relocated to FSL-Elkton and continued his grievance process. The reocrd show that the Plaintiff arrived at FSL-Elkton on August 12, 2004. The reocrd show that since the Plaintiff's arrival, the Plaintiff was still having excruciating pain in his left eye and continued to request treatment and received none.

The record show, that Medical Staff Ms. Barnes, Doctor Quinn,
Doctor Mohamed Azam, Doctor Keller, and the Eye Doctor, all participated
in retaliation for filing grievances. The record show that on
numerous occasions the Plaintiff requested treatment and was denied
treatment. The record show that the Plaintiff on numerous request
indicated that Plaintiff's left eye was still causing him pain and
that surgery was needed. The record show that the Eye Surgeons
wanted to perform surgery but the Medical Staff at FSL-Elkton refused
to provide the Plaintiff with such treatment. The record show that
the Warden T.R. Sniezek, also denied the Plaintiff request to
receive medical treatment and as a result, the Plaintiff is continuing
to have present and future harm as a result of this negligence by
Medical Staff for refusing to provided medical assistance to Plainiff.
See **(EXHIBIT 4)**. The record show that the Plaintiff continued to
file administrative procedures when the Plaintiff did not receive
medical treatment by the Medical Department. As of this day December
____, 2005, the Plaintiff has again been transferred and is still
having pain in my left eye and my orbit still has entrapment.
This negligence has caused the Plaintiff future harm as a result
of this retaliation and negligence by the Medical Staff at FCI-Mckean
and FSL-Elkton's Medical Staff.

### COUNSELOR HOWARD, DOCTOR QUINN, NURSE BARNES, WARDEN SNIEZEK

The Plaintiff was placed in Administrative Detention and was not
found guilty of any charge. The Plaintiff submitted his grievance
to Counselor Howard, and was immediately placed in Aministrative

detention. Officer Brain Dickinson, placed the restraints on the
Plaintiff so tight, that the Plaintiff's hands, and rists went
numb. The Plaintiff made request to Medical Staff and nothing was
done about the retaliation, but there is a medical report that
was filed indicating that the Plaintiff had sustain injuries to
the hands and rists. Lieutenant Mckinny, had the Plaintiff placed
in Administrative Detention for 2 weeks and Plaintiff received no
treatment for the restraints being so tight, and also, the Plaintiff
received no Incident Report. The Plaintiff was seen by Nurse Barnes,
Doctor Quinn, and was evaluated. It was the same results they did
not allow the Plaintiff to see a Orbital Specialist even after the
record show that the Orbital Specialist stated through documentation
that surgery was needed. See **(EXHIBIT 5).** The Plaintiff was released
from Administrative Detention and was transferred to Lewisburg
Camp. The record show, that the Medical Department, Doctor Quinn,
Nurse Barnes, Doctor keller, Doctor Mohamed Azam, the Eye Doctor,
and the Warden, retaliated against the Plaintiff for requesting
medical treatment for a injury sustained on February 27, 2004, at
FCI-Mckean. The Plaintiff, acknowledge that the Defendant's at
FLS-Elkton, has not recieved a Form USM-285, but the Plaintiff
request that this Honorable Court instruct the Plaintiff on the
process to follow because the Plaintiff's First Amendment Rights
has been violated and theses Defendant's participated and cause the
Plaintiff continual future harm and pain and suffering.

**ARGUMENT**

The Plaintiff will rely on **Gill v. Pidlypchak,** 389 F.3d 379 (2nd
Cir.2004); which states that First, we might conclude that different
sorts of retaliation cases are susceptible to different requirements.
For example, it is well-settled that public employees alleging
retaliation for engaging in protected speech are not normally required
to demonstrate a chill subsequent to the adverse action taken against
them. They need only show (1) that the speech at issue was made
by the employee as a citizen expounding on matters of public concern
rather than as a worker speaking on matters of personal interest;
(2) that they  suffered an adverse employment action (such as firing
or demotion); and (3) that the speech was at least a substantial or
motivating factor of the adverse employment action. See **Johnson
v. Ganim,** 342 F.3d 105, 112 (2d Cir.2003). Thus, provided that the
government cannot justify its action under the Pickering test,
the employee's essential burden is to show that he or she was
punished, not that his or her speech was "effectively chilled" from
that point forward. This same approach holds true fro certain public
contractors as well. See **Bd. Of County Comm'rs v. Unbehr,** 518 U.S.
668, 670, 673, 116 S.Ct. 2342 (1996). We might therefore conclude
that prisoner cases, like public employee and contractor cases,
arise from different circumstances than the public official/private
citizen cases cited by defendants, and therefore have different
requirements. See, e.g., **Thaddeus-X v. Blatter,** 175 f.3d 378, 394
(6th Cir.1999)(en banc)(holding, in a prisoner retaliation case,
that the injury is "the adverse consequences which flow from the
inmate's constitutionally protected action"); **Dixon v. Brown,**

38 F.3d 379, (8th Cir.1994)(noting, in a prisoner case, that the injury "inheres in the retaliatory conduct itself"). Second, we might determine that there is no inconsistency at all. In the Spear line of cases, which impose a subjective test, the only injury alleged by the plaintiff is, seemingly, the putative chilling itself. The requirements of the Durley test, after all, are only; (1) a First Amendment interest; (2) a government official who is motivated to punish exercise of that interest; and (3) actual chilling. Plaintiffs in these types of cases need not show "adverse action" (say, keeplock or firing) plus chilling. In other words, it is the plaintiff's allegation of chilling which makes the action ostensibly "adverse" in the first place. So, for example, in Spear, the plaintiff did not allege, and probably could not have alleged any other harm. The town filed a complaint and sought an injunction against Spear, but the only potential injury Spear could have suffered was the impairment of his First Amendment rights. See also **Colombo v. O'Connell,** 310 F.3d 115, 117 (2d Cir.2002)(plaintiff alleged that a threatened suit against her by a school board official chilled her speech); **Connell v. Signoracci,** 153 F.3d 74, 79 (2d Cir.1998)_ (plaintiff alleged that harassment by town officials chilled his protected expression); **Singer v. Fulton County Sheriff,** 63 F.3d 110, 119 (2d Cir.1995)(plaintiff alleged that his speech was chilled by a malicious prosecution suit brought against him, even though all claims in the suit were dismissed).

## FOURTH CAUSE OF ACTION

Defendant's Government Officials "negligence" violated Discretionary Functional Exception.

## DISCRETIONARY FUNCTIONAL EXCEPTION

The Plaintiff alleges that the Government Officials are exempt from applying the discretionary Functional Exception ("DFE") because the Government Officials negligence and judgment or choice bar, the Government form use. By Officer Wesemen, not being in the Unit and leaving it unattended when the Plaintiff was assaulted by two (2) Latin King Gang Members, Defendant Officer Wesemen did not use judgment or choice and the Plaintiff has sustained future injuries as a result. The Medical Department negligence and judgment or choice also cause the Plaintiff future harm by not caring for the Plaintiff when these injuries where caused, and medical care was not provided.

## ARGUMENT

For the proposition of this argument, the Plaintiff will rely on this Circuit Court's Ruling in **Gotha v. United States,** 115 F.3d 176 (3rd Cir.1997); The Federal Torts Claims Act is a partial abrogation of the federal government's sovereign immunity that permits suits for torts against the United States. The Act, however imposes a significant limitation by providing that no liability may be asserted for a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The statute does not define "discretionary function or duty" and
these terms have led to extensive litigation over the scope of the
government's liability to tort claimants. It is clear that if the
word "discretiionary" is given a broad construction, it could almost
completely nullify the goal of the Act. **United States v. S.A. Empresa
de Viacao Aerea Rio Grandense (Varig Airlines),** 467 U.S. 797, 808
104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984)(exception "marks the
boundary between Congress willingness to impose tort liability upon
the United States and its desire to protect certain governmental
activities from exposure to suit by private individuals."). The
statutory language does not apply to every situation in which there
is an actual option to choose between courses of action or inaction.
Rather, as the Supreme Court has stated, the discretion that is
immunized from "second-guessing" in the tort suit context applies
to "legislative and administrative decisions grounded in social
economic, and political policy." Id. at 814, 104 S.Ct. at 2765.
In **Berkovitz v.United States,** 486 U.S. 531, 537, 108 S.Ct. 1954,
1959, 100 L.Ed.2d 531 (1988), the Court explained: "The exception,
properly construted... protects only governmental actions and decisions
based on consideration of public policy." The reason for..fashioning
an exception for discretionary governmental functions" was to"
protect the government from liability that would seriously handicap
efficient government operations." **Varig Airlines.** 467 U.S. at 814,
104 S.Ct. at 2765. In Berkovitz, the Court adopted a two-stage
inquiry: First, a court must consider it "a federal statute,
regulation of policy specifically prescribes a courts of action for
an employee to follow." 486 U.S. at 536, 108 S.Ct. at 1958. if so,

"the employee has no rightful option but to adhere to the directive." Id. Consequently, there can be no lawful discretionary act. if circumstances imposing compulsion do not exist, a court must then consider whether the challenged action or inaction "is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1959. Again, the Court emphasized that the "discretionary function exception insulates the Government from liability if the action... involves the permissible exercise of policy judgment." Id. at 537, 108 S.Ct. at 1959. In **United States v. Gaubert,** 499 U.S. 315, 325, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991), the Court explained that for a plaintiff's claim to survive, the challenged actions cannot "be grounded in the policy of the regulatory regime." The Court stressed that the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the action taken and on whether they are susceptible to policy analysis." Id. Guabert noted another limitation on the exception, citing the hypothetical situation where an agency employee negligently drives an automobile in the course of his employment. Such action, although within the scope of employment, "cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." 499 U.S. at 352 n. 7, 111 S.Ct. at 1275 n. 7. Am examination of some of the situations where the discretionary function exception was applied may be helpful in understanding its scope. A federal agency decision to use a spot-checking process in inspecting aircraft was an exercise of policy discretion. Varig Airlines, 467 U.S. at 814-16, 104 S.Ct. at 2764-66.

## FIFTH CAUSE OF ACTION

Whether the Defendant's Government Official's used an element of judgment or choice when they failed to protect Plaintiff.

## OFFICER WESEMEN

The Plaintiff allege that the Defendant Officer Wesemen, left the Unit at FCI -Mckean unsupervised and unmonitored when the Plaintiff was assaulted by two (2) Latin King Gang Members. The Plaintiff's injuries where caused by the Defendant's "negligence and carelessness" in that, Officer Wesemen, left the Unit unsupervised. The plaintiff notes that, there is no relevant regulations that mandate any particular course for employee's to follow when monitoring the Unit. By the Defendant Officer Wesemen leaving the Unit to smoke, or get a snack, or go to tis car, does not fall within the discretionary functional exception, because the Defendant Officer Wesemen, carelessness could have avoided the the Plaintiff's incident. This negligence and carelessness in the Defendant officer Wesemen, leaving the Unit for an hour is the type that is not sheilded by the discretionary functional exception. The action by Defendant Wesemen, are the kind that should be barred by the discretionary functional exception.

## ARGUMENT

In **Gotha v. United States,** 115 F.3d 179 93rd Cir.1997); and **Cestonaro v. United States,** 211 F.3d 749 (3rd Cir.2000); this Honorable court stated: The analytical framework of the discretionary function exception has been laid out by the Supreme Court in a trilogy of cases **United States v. S.A. Empresa de Vacao Aerea Rio**

(28)

**Grandense (Varig),** 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660
(1984); **Berkovitz v. United States,** 486 U.S. 531, 108 S.Ct. 1954
100 L.Ed.2d 531 (1988); and **United States v. Gaubert,** 499 U.S. 315
111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). See Gotha, 115 F.3d at
179-80. The first issue is whether a federal statute, regulation,
or policy specifically prescribes a course of action for an employee
to follow. Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. If so, the
exception cannot apply. If not, the question is whether the governmental
action or inaction "is of the kind that the discretionary function
exception was designed to shield." Id. if it is, the action constitutes
the exercise of protected discretion, and the United States is
immune from suit. The touchstone of the second step of the discretionary
function test is susceptibility to policy analysis. See Gaubert,
499 U.S. at 325. 111 S.Ct. 1267 ("The focus of the inquiry is not
the agent's subjective intent in exercising the discretion conferred
by statute or regulation, but on the nature of the actions taken
and on whether they are susceptible to policy analysis."). As we
have previously stated, a plaintiff's claim can only survive if
"the challenged actions cannot be grounded in the policy of the
policy of the regulatory regime. Gotha, 115 F.3d at 179 (quoting
Gaubert, 499 U.S. at 325, 111 S.Ct. 1267). The Court in Gaubert
underscored the importance of the relationship between the discretionary
decision and policy considerations, noting the exception applies
only if the challenged actions can 'be said to be based on the
purposes that the regulatory regime seeks to accomplish." 499 U.S.
at 325 n. 7. 111 S.Ct. 1267.

## SIXTH CAUSE OF ACTION

Negligent acts of the Defendant's Government Officials are the
the proximate cause of the Plaintiff's injuries.

## PROXIMATE CAUSE

The Plaintiff alleges that the Medical Department and Doctor Beam,
the Eye Specialist at FCI_Mckean, and the Warden's Staff as a hole
all participated in the proximate cause of the Plaintiff's injuries.
The record show that, the Plaintiff sustained injuries to the left
eye after the assault by the two (2) Latin King Gang Members. This
incident occurred on February 27, 2004. The Warden's Staff became
aware of the incident on February 29, 2004, two day later. The
record reveal that the Plaintiff was release from Administrative
Segregation on March 26, 2004. The Plaintiff acknowledge that I
put in numerous request or ("Cop-Outs") or ("Sick Call Forms"),
complaining about my injuries. After numerous request, I was seen
Doctor Beam on March 11, 2004, and only received some eye drops
for my left eye injury. The Plaintiff sent a letter to the Warden
complaining that I was not getting any medical attention and was
being denied any treatment by Medical Staff and the Warden responded
in a Memorandum. See **(EXHIBIT 6)**. The record show that Doctor Beam,
stated that the <u>exam revealed a left eyelid abrasion only</u>. <u>No other</u>
<u>injuries were found concerning your left eye.</u> These statements by
Doctor Beam, are inopposit from what the Orbital Specialist
Examination revealed. See **(EXHIBIT 7) The Eye Surgeons Letters.**
Also, Doctor Olsen states that my eye where 20/20, but the Eye
Surgeons states that:

> ("his vision was 20/100 in the right eye and
> 20/200 on the left. See **(EXHIBIT 7)**

When Plaintiff was released on March 26, 2004, the Plaintiff continued

to complain about my left eye. See **(EXHIBIT 8)**. As a result of this

injury I was transferred on July 1, 2004. This negligence by the

Medical Department was the proximate cause of the Plaintiff injuries,

and cause the Plaintiff future harm and pain and suffering.

## ARGUMENT AND PROXIMATE CAUSE

For the proposition of this argument, the Plaintiff will rely on

**Palay v. United States,** 349 F.3d 418 (7th Cir.2003); in which the

Court stated, Under Illinois law, proximate cause consists of two

elements: cause in fact and legal cause. **Evans v. Shannon,** 201 Ill.

2d 424, 267 Ill. Dec. 533, 776 N.E.2d 1184, 1190 (2002). cause in

fact exists when the defendant's conduct "is a material element

and a substantial factor in bringing about the injury." Id.,

quoting **First Springfield Bank & Trust v. Galman,** 188 Ill. 2d

252, 242 Ill. Dec. 113, 720 N.E.2d 1068, 1072 (1999). The defendant's

conduct meets this criterion "if, absent that conduct, the injury

would not have occurred." Id., quoting First Springfield.

> "legal cause," by contrast, is essentally a
> question of foreseeability. The relevant
> question here is whether the injury is of a
> type that a reasonable person would see as a
> likely result of his or her conduct.

Id., quoting First Springfield. Whether or not the defendant's

conduct proximately caused the plaintiff's injury ordinarily is

a question for the finder of fact to decide; only rarely are the facts so clear that the court can resolve the issue as a matter of law. See **Schick v. Ill. Dep't of Human Servs.,** 307 F.3d 605, 615 (7th Cir.2002); see also First Springfield, 242 Ill. Dec. 113, 720 N.E.2d at 1071; **Felty v. New Berlin Transit, Inc.,** 71 Ill. 2d 126, 15 Ill Dec. 768, 374 N.E.2d 203, 205 (1978). In **Suzik v. Sea Land Corp.** 89 F.3d 345 (7th Cir.1996); the Court stated: In considering Sea-Land's motion for a directed verdict, the district court properly focused on the issue of proximate cause. To establish Sea-Land's liability under either of his claims, Suzik had to prove that the condition of the propane tank was the proximate cause of **West v. Deere & Co.,** 145 Ill.2d 177, 164 Ill. Dec. 122, 124, 582 N.E.2d 685, 687 (1991) (holding that proximate cause is an element of products liability claims); **American Nat'l Bank & Trust Co. v. National Advertising Co.,** 149 Ill.2d 14, 171 Ill. Dec. 461, 466, 549 N.E.2d 313, 318 (1992) (holding that proximate cause depends upon the concept of foreseeability. A defendant's conduct is the proximate cause of a plaintiff's injury if all events following that including any actions by the plaintiff, are its reasonably foreseeable result. **Bentley v. Saunemin Township,** 83 Ill.2d 10, 46 Ill. Dec. 129, 132, 413 N.E.2d 1242, 1245 (1980). If an act that intervenes between the defendant's conduct and the plaintiff's injury is not reasonably foreseeable this intervening act is the independent cause of the injury, and it breaks that causal chain that would establish the defendant's liability. Id. In this case, Suzik could have established that Sea-Land had proximately caused his injury be

by proving that his own attempted repair was a reasonably foreseeable response to the broken bracket on the tank. To survive a motion for a directed verdict, Suzik would have had to introduce enough evidence to permit a reasonable jury to infer that Sea-Land could have foreseen his actions. See Pedrick, 229 N.E.2d at 513-14.

## SEVENTH CAUSE OF ACTION

Negligent acts of Defendant's Government Officials denied Plaintiff Duty of Care owed to Plaintiff.

## DUTY OF CARE

The Plaintiff allege that, the Defendant's owe the Plaintiff duty of care when the Medical Department denied the Plaintiff treatment concerning my left eye when the record show that the Plaintiff did not receive any treatment when the Plaintiff sustained his injuries. See **(EXHIBIT 7)**; This negligence by the Defendant's when the record show that the Plaintiff received a horric blow-out fracture caused the plaintiff future and permanent harm. The Plaintiff did not receive any medical attention to see a Eye Surgeon to have surgery on my left eye when the injury occurred, and then the Plaintiff was transferred to FSL-Elkton. This negligence from the Defendant's to respond to Plaintiff's injury to see a Eye Surgeon has caused the Plaintiff harm until this day December _14_, 2005. The record also show that the Plaintiff did not receive any medical attention in Administrative Detention.

## ARGUMENT "DUTY OF CARE"

For the proposition of this argument, the Plaintiff will rely on recent ruling that where affirmed on appeal, and acknowledge that the Plaintiff facts are different because, Officer B. Wesemen, abandon the Unit and left the Plaintiff to get assaulted by the two (2) Latin King Gang Memebers. In **Cohen v. United States**, 151 F.3d 1338 (11th Cir.1998); and **Santana-Rosa v. United States,** 335 F.3d 39 (1st Cir.2003); and **Calderon v. United States,** 123 F.3d 947 (7th Cir.1997); in which the Court stated: In addition to § 4042 establishes a non-discretionary duty of care that the BOP is required to undertake and thus, removes this case from the discretionary function exception. Calderron argues that the BOP breached this duty of care when it failed to take disciplinary action against Perez. Calderon's argument, however, is ineffective. Section 4042 provides, in relevant part, that "[t]he Bureau of Prisons under the direction of the Attorney General, shall...provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042. While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personael should engage in or avoid while attempting to fulfill their duty to protect inmates. For Calderon's argument to be effective, he must demonstrate that § 4042 sets forth non-discretionary actions which the BOP personnel were required to undertake to protect Calderon. Bailor, 51 F.3d at 685. As it currently

(34)

stands, Calderon's argument is, in reality, a negligence argument and thus, must fail because it does not address the prerequisite jurisdictional issues of the discretionary function exception. See **Miller v. United States,** 710 F.2d 656, 662 (10th Cir.1983)(finding that the discretionary function exception  serves as a jurisdictional prerequisite to suit, which the plaintiff must ultimately satisfy as part of his burden of establishing subject matter jurisdiction). Since we have determined that the BOP's act involved discretion, we must now consider whether the discretion excercised by the BOP is the type of discretion which the exception seeks to protect. Specifically, we must determine whether the BOP's actions were based on considerations of public policy, Gaubert, 499 U.S. at 323, 111 S.Ct. at 1273-74. As the Supreme Court noted in Gaubert, however, we presume that the actions are grounded in public policy in cases where the statute or regulations allow the government agent to exercise discretion:

> [f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

Id. at 324-25, 111 S.Ct. at 1274-75. A review of Calderon's complaint reveals that he has not presented any facts which would support a finding that the BOP's action not to take disciplinary action against Perez was based on grounds other than considerations of public policy. Instead, Calderon unconvincingly asserts that

"policy judgment is not involved in day to day, hour to hour, minute to minute actions of correctional officers in patrolling the cell blocks of a prison such as FCI oxford.'"'We disagree with Calderon's contention. It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy. **Bell Wolfish,** 441 U.S. 520, 547-48, 99 S.Ct. 1861, 1878-79, 60 L.Ed.2d 447 (1979)(holding that since problems that arise on the day to day basis of correctional facilities involve many complex issues, prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security.). The Supreme Court stated in **Muniz**, decision constitutes controlling authority to the contrary. In that case, the plaintiff was attacked by twelve other inmates and pursued by them into a dormitory under the eyes of a guard who, instead lock the plaintiff inside the dormitory with his attackers. Thus assisted, the attackers proceeded to bet the plaintiff so badly his skull was fractured and he was blinded in one eye. **United States v. Muniz,** 374 U.S. at 152. Although the Court declined to opine on the applicability of the discretionary function exception to those facts, id. at 163 83 S.Ct. 1850, a scenario of that sort obviously offers a sharp contrast to the facts of record here. in this case, we simply hold that, however ambiguous the boundaries of the discretionary function exception may appear to be, the conduct cited by this appellant as the basis for his claim manifestly fell within them.

## NEGLIGENCE

In **Santana-Rosa v. United States,** 335 F.3d 39 (1st Cir.2003); the Court stated; As the law stands now, the analysis of whether the discretionary function exception applies in a particular FTCA case begins, naturally enough, with the question of whether the Government's allegedly actionable conduct was discretionary. **United States v. Gaubert,** 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); see also **Magee v. United States,** 121 F.3d 1, 4 (1st Cir.1997). To demonstrate that its conduct was discretionary, the government need only show that there was room for choice in making the allegely actionable decision or decision. **Attallah v. United States,** 995 F.2d 776, 783 (1st Cir.1992). If the challenged conduct is found to have been discretionary, a court must then assess whether the Government's actions were of the kind that the discretionary function exception was designed to shield that is, whether the Government's acts were susceptible to policy analysis. Gaubert, 499 U.S. at 325, 111 S.Ct. 1267. See also, **Gotha v. United States,** 115 F.3d 176 (3rd Cir.1997).

## EIGHTH CAUSE OF ACTION

Plaintiff was denied medical treatment by Government Officials at FCI-Mckean.

## DENIED MEDICAL TREATMENT

The record show that the Plaintiff was lodged in Administrative Detention on February 29, 2004. The record show that the Plaintiff put in numerous ("Call Out Forms") and request to the Warden and Assistant Warden and was seen one time by Doctor Beam and received some eye drops. The record show that the Warden and Assistant Warden denied the Plaintiff medical treatment when the Memorandum states that

> ("no other injuries were found concerning your left eye")

and the Eye Surgeons documents states otherwise. The record also reveal that even after the Plaintiff was released on March 26, 2004, the Plaintiff seen the Eye Surgeon and he recommended surgery and the Defendant's disregarded this fact, and transferred the Plaintiff on July 1, 2004, without the treatment that was needed. The record show that Doctor Beam and Doctor Olsen, examined the Plaintiff's left eye and stated noting was wrong. The records show that the medical documents and the Defendant's states are in dispute and should be taken to the jury. The record show that this negligence by the Medical Department, Doctor Beam, Doctor Olsen, and the Warden and the Assistant Warden has caused the Plaintiff future and permanent harm and suffering as a result of this negligence by the Defendant's.

## ARGUMENT

In **Bultema v. United States,** 359 F.3d 379 (6th Cir.2004); the Court
stated that negligence in not directing Bultema to give a copy of
his pass to unit management, id proven would amount to negligence
following a nondiscretionary policy, and that particular negligence
claim is accordingly not protected by the discretionary function
exception to FTCA liability. Therefore, the district court should
not have granted summary judgment to the Government. The Government
relies on the discretionary function exception, which precludes tort
liability on the part of the United States for

> (a) Any claim based upon an act or omissions
> of an employee of the Government, exercising
> due care, in the execution of a statute or
> regulation be valid, or based upon the exercise
> or performance or the failure to exercise or perform
> a discretionary function  or duty on the part of
> a federal agency or an employee of the Government
> whether or not the discretion involved be abused.

28 U.S.C. § 2680(a):

There is a two-step test to determine whether the discretionary
function exception is applicable. See **United States v. Gaubert,**
1267, 113 L.Ed.2d 335 (1991); **Reetz v. United States ,** 224 F.3d 794
795-96 (6th Cir.2000). A court first must make a determination of
whether the challenged act or omission violated a mandatory
regulation or policy that allowed no judgment of choice. **Rosebush v.
United States,** 119 F.3d 438, 441 (6th Cir.1997). The court only needs
to consider the second step if the action was discretionary under
the first step. Reetz, 224 F.3d at 796. Under the second step, if
the conduct was of the type that Congress intended for the discretionary

function exception to include, then the exception is applicable. Id.
The intent of Congress was to prevent judicial second guessing of
legislative and administrative decisions grounded in social, economic
and political policy. Rosebush, 119 F.3d at 441 (internal quotation
omitted). Examples of exercises of discretionary functions under
this analysis include a decision to institute a program of producing
and expoeting fertilizer, **Dalehite v. United States,** 346 U.S. 15,
37-38 , 73 S.Ct. 956, 97 L.Ed. 1427 (1953); a decision to install a
system of coastal navigatonal aids, **Indian Towing Co. v. United
States,** 350 U.S. 61, 69, 76 s.Ct. 122, 100 L.Ed. 48 (1955); a
Federal Aviation Administration ("FAA") policy decision to spot
check airplanes rather that to inspect them in detail, **United States,
S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),** 467
U.S. 797, 815-19, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); a U.S.
Forest Service policy of not placing protective railings around
campgraound fire pits, rosebush, 119 F.3d at 443-44; and a U.S.
Forest Service policy of not marking off-rad-vehicle trails that
are closed (but rather marking only those that are open), Reetz,
224 F.3d at 797. Where a particular government action is a deliberate
or necessary result of a discretionary general policy, such that a
tort suit based on the particular act or omission would amount to
a challenge to the protected across-the-board policy, then the
discretionary function exception applies as well. Thus, the
discretionary function exception protected the United States against
suit for the use of a high bagging temperature fixed by a discretionary
plan to maufacture fertilizer, Dalehitee, 346 U.S. at 38-41, 73

S.Ct. 956, for the failure of the FAA to inspect a particular
airecraft because of the FAA's spot-check policy, Varig Airlines,
467 U.S. at 819-20, 104 S.Ct. 2755, and for a particular failure
fo the Forest Service to mark an off-road-vehicle trail as closed,
Reetz, 224 F.3d at 795. But where a particular government action
is not a necessary result of such a general policy, the act does not
necessarily amount to an  exercise of a discretionary function
merely because carrying out the general policy provided the opportunity
for the negligent act. Thus the United States can be liable for the
Coast Guard's negligent maintenance of a navigational aid, even
though the decision to employ such aids was an exercise of a
discretionary function. **Indian Towing,** 350 U.S. at 69, 76 S.Ct.
122. Negligence in maintaining the aid is not a necessary concomitant
of the decision to employ such aids. A fortiori, if a particular
act violates a governmental policy, the act cannot be protected
under the discretionary function exception by the fact that the
violated policy itself was an exercise of a discretionary function.

## CONCLUSION AND RELIEF REQUESTED

(1) The Defendant's Government Officials where negligent to Plaintiff's medical needs and the Plaintiff has been caused present and future and permanent harm as a result.

(2) The Plaintiff has established subject matter jurisdiction based on the facts and the discretionary function exception does not apply in the Plaintiff's case at hand.

(3) The Defendant's Officer Wesemen was negligent when he left the Unit unattended and unsupervised.

(4) The Defendant's Medical Department was negligent and the proximate cause of the Plaintiff's injuries.

(5) The Plaintiff demand for a trial by a jury, or a bench trial.

(6) Award Plaintiff 15 million for medical damages for pain and future suffering from the permanent injuries that was caused by the negligence by the Defendant's.

(7) Award Plaintiff 20 million for compensatory damages against the Defendant's Government Officials.

(8) Award Plaintiff 20 million for punitive damages against the Defendant's Government Officials.

(9) Award the Plaintiff 20 million for the claim submitted to the Federal Agency.

(10) Award Plaintiff any applicable interest against the Defendant's until all judgments are satisfied.

(11) Awarding Plaintiff any other relief that may be deemed just and fair against the Defendant's Government officials.

**Wherefore,** the Plaintiff request that this Honorable Court **"GRANT"** the following relief.

Respectfully submitted

BY: _____
DARRYL ORAIN BAKER
(PRO-SE)
Reg. No.# 19613-039
Federal Prison Camp
P.O. box 2000
Lewisburg, PA.
17837

**EXECUTED:** DECEMBER _14_ , 2005.

(43)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___14___ , day of December, 2005, a true and correct copy of the foregoing Plaintiff's Motion for Leave to File a Second Amended Complaint, was served by fist-calls U.S. mail, to the following:

United States Attoney's
Assistant United States Attorney
Mary Beth Buchanan
Paul E. Skirtich
Western District of PA
700 Grant Street, Suite 4000
Pittsburgh, PA. 15219

Respectfully submitted

BY: _____
DARRYL ORRIN BAKER
Reg. No.# 19613-039
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA.
17837

EXECUTED: DECEMBER _14_ ,2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,                          )
                                             )
                    Plaintiff,               )
                                             )
                                             )
VS.                                          )  CIVIL ACTION 05-147E
                                             )
                                             )  HONORABLE
                                             )  JUDGE MCLAUGLIN
                                             )
UNITED STATES OF AMERICA.                    )
GOVERNMENT OFFICIALS AT                      )
FCI-MCKEAN, WARDEN, OFFICER                  )
B. WESEMEN, MEDICAL DEPARTMENT               )
                                             )
                    DEFENDANTS.              )


## AFFIDAVIT

DARRYL ORRIN BAKER SWORE AND DEPOSE:

(1) The Plaintiff DARRYL ORRIN BAKER, was incarcerated at FCI-Mckean
in 2002 to July 1, 2004.

(2) That I the Plaintiff has suffered injuries on February 27, 2004.

(3) That I the Plaintiff was reviewed by the Staff at FCI-Mckean
on February 29, 2004, to take picture of my injuries I sustained
by the assault of the two (2) Latin King Gang Members.

(4) That Officer B. Wesemen, was not in the Unit when the Plaintiff
was assaulted  by the two Latin King Gang Members.

(5) That other inmates that where in the ten man cell and out, when
the Plaintiff was assaulted saw these attackes and  Officer B. Wesemen,
was not in the Unit.

(6) That the Medical Department was also negligent along with
Officer B. Wesemen, when the Plaintiff did not receive immediate

medical treatment from injuries sustained.

(7) That the Warden, Assistant Warden, Doctor Beam, and Doctor Olsen, was the proximate cause of Plaintiff injuries when the Plaintiff did not receive immediate medical attention for my left eye.

(8) That the Defendant's Government Officials caused the Plaintiff future harm and present harm because the Plaintiff is still suffering from these injuries, as a result of there negligence.

Respectfully submitted

BY: _Darryl Baker_

DARRYL ORRIN BAKER
   (PRO-SE)
Reg. No.# 19613-039
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA.
17837

EXECUTED: DECEMBER _14_, 2005.

THESE STATEMENT ARE TRUE FROM NOS. 1 THRU 8 UNDER THE PENALTIES OF PERJURY.

(EXHIBIT 1)

UNITED STATES GOVERNMENT

# Memorandum

Northeast Regional Office, Philadelphia, PA
FEDERAL BUREAU OF PRISONS

**DATE:** December 3, 2004

**REPLY TO**
**ATTN OF:** Henry J. Sadowski, Regional Counsel

**SUBJECT:** Administrative Tort Claim No. TRT-NER-2004-03801

**TO:** Darryl Orrin Baker, Reg. No. 19613-039
FCI Elkton

Your Administrative Tort Claim No. TRT-NER-2004-03801, properly
received by this agency on June 17, 2004,[1] has been considered
for settlement as provided by the Federal Tort Claims Act (FTCA),
28 U.S.C. § 2672, under authority delegated to me by
28 C.F.R. § 543.30. You seek compensatory damages in the amount
of $35,000.00 for an alleged personal injury. Specifically, you
claim staff did not exercise due care to protect you from being
assaulted by two other inmates on February 27, 2004. You contend
you were denied appropriate medical care, resulting in injury to
your left eye, as well as pain and suffering.

After careful review of this claim, I have decided not to offer
a settlement. Investigation reveals you were assaulted by others
at the Federal Correctional Institution (FCI), McKean,
Pennsylvania, on February 27, 2004. Staff did not become aware
of the incident until February 29, 2004. Upon notification of an
incident involving you, you were examined by medical staff and
provided appropriate treatment for your injuries. You suffered
multiple contusions, superficial abrasions, and bruising of the
face, right arm, chest and both hands. You complained of eye
pain and an initial eye exam was conducted. You refused
medication to relieve the pain. Subsequently, you were evaluated
by three different eye specialists. You were diagnosed with
adhesions to the inferior rectus muscle. Conservative treatment
was recommended. An ophthalmologist specializing in orbit
injuries, advised that surgery was not worth the risk. The
medical record indicates you received appropriate medical care,
consistent with community standards.

You did not inform staff of any problem you may have been
experiencing with any inmate or group of inmates. Without prior
knowledge of a specific problem, the Bureau of Prisons cannot

---

[1]This agency actually received two separate claims from you for an incident which
occurred on the same day. Therefore, they have been combined for the purpose of this response.

Darryl Orrin Baker, Reg. No. 19613-039
Claim No. TRT-NER-2004-03801
Page Two


be held responsible for the acts of other inmates.  Your failure
to properly advise staff of your alleged problems with other
inmates prevented staff from taking any action to protect you.
There is no evidence of negligence on the part of any Bureau of
Prisons' staff in this matter.

Accordingly, your claim is denied.  If you are dissatisfied with
this decision, you may seek reconsideration from this office or
bring an action against the United States in an appropriate
United States District Court within six (6) months of the date of
this memorandum.

cc: T. R. Sniezek, Warden, FCI Elkton
    James F. Sherman, Warden, FCI McKean



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

---

*U.S. Custom House*
*2nd & Chestnut Streets - 7th Floor*
*Philadelphia, PA. 19106*

June 24, 2004

Darryl Orrin Baker
Reg. No. 19613-039
Federal Correctional Institution-McKean
P.O. Box 8000
Bradford, PA  16701

Re: Administrative Tort Claim Received June 17, 2004
    Claim No. TRT-NER-2004-03601

Dear Mr. Baker:

This will acknowledge receipt on June 17, 2004, of your Administrative
Tort Claim for alleged personal injury suffered at the FCI McKean on
or about February 27, 2004.

Under the provisions of the Federal Tort Claims Act, 28 U.S.C. 2675,
we have six months from the date of receipt to review, consider, and
adjudicate your claim.  Accordingly, you may expect to hear from us on
or before December 14, 2004.

All correspondence regarding this claim should be addressed to me at:
Federal Bureau of Prisons, Northeast Regional Office, U.S. Custom
House, Room 700, 2nd & Chestnut Streets, Philadelphia, Pennsylvania
19106.  If the circumstances surrounding this claim change in any
fashion, you should contact me immediately.  Also, should your address
change, you should advise me accordingly.

Sincerely,

Henry J. Sadowski
Regional Counsel