IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,                    )
                                       )
        Plaintiff,                     )
                                       )
                                       )
VS.                                    )     CIVIL ACTION NO. 05-147E
                                       )
                                       )     JUDGE MCLAUGHLIN
UNITED STATES OF AMERICA,              )     MAGISTRATE JUDGE
GOVERNMENT OFFICIALS AT                )     SUSAN PARADIS-BAXTER
FCI-MCKEAN, WARDEN, OFFICER            )
B. WESEMEN, MEDICAL DEPARTMENT         )
                                       )
        Defendants.                    )


PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

AND NOW, comes the Plaintiff, Darryl Orrin Baker (hereinafter
"PLAINTIFF"), and proceeding **pro-se**, respectfully moves this
Honorable Court to **grant** the Plaintiff's Opposition to the
Defendant's Motion to Dismiss Plaintiff's Complaint, or in the
Alternative, for Summary Judgment pursuant to Rule 12(b)(1),(2)
and (6) and 56 of the Fed. R. Civ. P., because the Plaintiff
has set forth facts to state a claim upon which relief can be
granted, and the Plaintiff has also established subject matter
jurisdiction.


## PRO-SE LITIGANT

In **Alvarado v. Litshcer,** 267 F.3d 648 (7th Cir.2001), allegation
of a prose complaint are held "to less stringent standards than
formal pleading drafted by lawyers." **Haines v. Kerner,** 404 U.S.
519, 520, 92, S.Ct. 594, 30 L.Ed.2d 652 91972)(per curiam).

Accordingly pro-se complaints are liberally construed. See
**Wilson v. Civil Town of Clayton, Ind.,** 839 F.2d 375, 378 (7th
Cir.1988). In **McDowell v. Delaware States Police,** 88 F.3d (3rd
Cir.1996); This Court stated we cannot affirm the dismissal unless
we can " say with assurance that under the allegation of the
pro-se complaint, which we hold to less stringent standards than
formal pleadings drafted by lawyers, it appears beyond doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief". haines, 404 U.S. 519
Id. (quoting **Conley v. Gibson,** 355 U.S. 41, 45-56, 78 S.Ct. 99
102 L.Ed.2d 80 (1975)). see also, **Urrutia v. Harrisburg County
Police Dept.,** 91 F.3d 451 (3rd Cir.1996); **Gibbs v. Roman,** 116
F.3d 83 (3rd Cir.1997).

## JURISDICTION STANDARD OF REVIEW 12(b)(6)

This Honorable Court stated in **Evancho v. Fisher,** 423 F.3d 347
(3rd Cir.2005); that we have subject matter jurisdiction pursuant
to 28 U.S.C. § 1291 (2000). Our standard of review of the
district court's dismissal under Rule 12(b)(6) of the Federal
Rules of Civil Procedure is plenary. See **Gallo v. City of
Philadelphia,** 161 F.3d 217, 221 (3rd Cir.1998). When considering
a Rule 12(b)(6) motion, we are required to accept as true all
allegations in the complaint and all reasonable inferences that
can be drawn there from, and view them in the light most favorable
to the plaintiff. **Rocks v. City of Philadelphia** 868 F.2d 644, 645

(3rd Cir.1989); **D.P. Enter, Inc. v. Bucks County Cmty. Coll.,**
725 F.2d 943, 944 (3rd Cir.1984). A Rule 12(b)(6) motion should
be granted "if it appears to a certainty that no relief could be
granted under any set of facts which couls be proved." D.P. Enter
Inc., 725 F.2d at 944; **Richardson v. Pa.Dept of Health,** 561 F.2d
489, 492 93rd Cir.1977). However, a court need not credit either
"bald assertion's" or "legal conclusions" in a complaint when
deciding a  motion to dismiss. **In re Burlington Coat Factory
Sec. Litig.,** 114 F.3d 1410, 1429-30 (3rd Cir.1997)(quoting
**Glassman v. ComputerVision Corp.,** 90 F.3d 617, 628 (1st Cir.1996)).

The Government request that this Honorable Court dismiss the
Plaintiff's complaint pursuant to Rule 12(b)(6). See (Gov. Motion).
The Plaintiff acknowledge, and will show this Honorable Court
that Plaintiff has set forth facts that can be proved.


### JURISDICTION AND STANDARD OF REVIEW 56(c)

In **Kay Berry, Inc. v. Taylor Gifts, Inc.,** 421 F.3d 199 (3rd Cir.
2005); this Honorable Court stated; the District Court had jurisdiction
pursuant to 28 U.S.C. §§`1331 and 1228(a). This Court has jurisdiction
pursuant 28 U.S.C. § 1291. We excercise plenary review over the
District Court's grant of summary judgement and employ the same
analysis required of the District Court to determine whether there
are any issues of material fact that would enable the non-moving
party to prevail. **Hamilton v. Leavy,** 117 F.3d 742, 746 (3rd Cir. 1997).

Summary judgment is appropriate when there is no genuine issue as
to any material fact and ... the moving party is entitled to a
judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary
judgment stage, we view all evidence and consider all reasonable
inferences in a light most favorable to the non-moving party.
**Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 255, 106 S.Ct. 2505
91 L.Ed.2d 202 (1986). **Public Interest Research Group of New Jersey,
Inc. v. Powell Duffryn Terminals. Inc.**, 913 F.3d 64, 76 (3rd Cir.
1990). "[W]e apply the same test as the district court should have
used initially," id., at 76, to determine, if there are any remaining
issues giving him the benefit of every favorable inference that
can be drawn from the record. **Celotex Corp. v. Catrett,** 477 U.S.
317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
**Reitz v. County of Bucks,** 125 F.3d 139 (3rd Cir.1997).


## RULE 12(b)(1) FED. R. CIV. P. STANDARD


In **Cestonaro v. United States,** 211 F.3d 749 93rd Cir.2000); this
Honorable Court stated; Giovanna Cestonaro filed a wrongful death
action against the United States under the Federal Tort Claim Act,
28 U.S.C. §§ 1346(b), 2671, and the Virgin Islands Wrongful Death
Statute, V.I.C. § 76. In her complaint, Mrs. Cestonaro alleged that
"[d]efendant was negligent in failing to provide adequate lighting
and correct the known dangerous condition and to warn others about
the existence of the dangerous condition" at the hospital street
lot. The United States filed a motion to dismiss under Fed. R.

Civ. P. 12(b)(1) asserting the District Court lacked subject matter jurisdiction because, the challenged National Park Service actions fell under the discretionary function exception to the FTCA's waiver of sovereign immunity. The District Court dismissed the complaint, finding the national Park Service's decisions concerning the hospital Street lot were grounded in its mission to "safeguard the natural and historic integrity of national parks" and in its policy " to minimally intrude upon the setting of such parks." Cestonaro, Civ. no. 1995-102, Slip. op. at 11. We have jurisdiction under 28 U.S.C. § 1291. We excercise plenary review over the applicability of the discretionary function exception. See **Gotha v. United States,** 115 F.3d 176, 179 (3rd Cir.1997) **Fisher Bros. Sales, Inc. v. United States,** 46 F.3d 279, 282 (3rd Cir.1995)(en banc). Because the government's challenged to the District Court's jurisdiction was a factual one under Fed. R. Civ. P. 12(b)(1), we are not confined to the allegations in the complaint (nor was the District court) and can look beyond the pleadings to decide factual matters relating to jurisdiction. See **Mortensen v. First Fed. Sav. & Loan Ass'n** 549 F.2d 884, 891 (3rd Cir.1977).

### A.        BIVENS

The Government request this Honorable Court to dismiss the Plaintiff's complaint pursuant to Bivens. The Government request is incorrect. The Plaintiff filed his complaint pursuant to FTCA, and has exhausted his Administrative Remedies, and the Plaintiff did not allege Bivens, so there was no need to exhaust purusant to PLRA.

B.    <u>FEDERAL TORT CLAIM ACT (FTCA)</u>

The Plaintiff has exhausted under the Federal Tort Claim Act (FTCA),
and the Government concedes that the Plaintiff has . Therefore,
this Honorable Court has jurisdiction to entertain the Plaintiff
complaint. See Government's Brief at 22.

<u>BIVENS LEGAL ARGUMENT</u>

The Government's Brief at 23 states:

> Defendant's Sherman and Wesemen should be
> dismissed from this lawsuit, because
> petitioner's failure to exhaust his
> administrative remedies is a procedural
> bar to the filing of a civil action
> regarding prison condition under the PLRA.

The Government misconstrues the Plaintiff as the ("petitioner")
but for the sake of argument, it is the Plaintiff. The Plaintiff
acknowledge that in his first complaint, the Plaintiff filed his
action as a FTCA violation for negligence against the United
States Government Officials. See Government's Brief at 22
acknowledging exhaustion. And see also, the Plaintiff's Second
Amended Complaint. The statute states:

> An action shall not be instituted upon a
> claim against the United States for money
> damages for injury or loss of property or
> personal injury...caused by the negligent
> or wrongful act or omission of any employee
> of the Government unless the claimant shall
> have first presented the claim to the
> appropriate federal agency and his claim shall
> have been finally denied by the agency in writing
> the failure of an agency to make final disposition
> of a claim within six months after it is filed

> shall, at the option of the claimant any time
> thereafter, be deemed a final denial of the
> claim for purposes of his section.

See 28 U.S.C. § 2675(a)(emphasis added).

> This requirement extends to all suits, including
> those begun in State Court. [A]ny action...
> [removed from State Court under the FTCA] shall
> proceed in the same manner as any action against
> the United States... and shall be subject to the
> limitations and exceptions applicable to those
> action." 28 U.S.C. § 2675(d)(4).

The Plaintiff has not filed anything against any of the Government

Officials that pertain to prison conditions. Therefore the

Government contentions on this argument is misplaced.

The Government Brief at 25 states:

> Defendant Sherman, as a supervisory official,
> may not be held personally liable under the
> theory of respondeat superior.

This argument by the Government is also misplaced. The Plaintiff

filed in his complaint that the Warden and the Assistant Warden

where negligent concerning the Plaintiff's medical needs under the

FTCA. The Plaintiff has shown throught documentation in the

Plaintiff's Second Amended Complaint that the Warden James F.

Sherman, was negligent to Plaintiff medical needs because he

stated in his memorandum, that (" no other injuries were found

concerning your left eye "), when the record clearly states that

Plaintiff sustained an injury, and the Plaintiff acknowledged that

while in SHU the Plaintiff brought this to the Warden and Assistant

and nothing was done. See **(attachment 1)** the Plaintiff ("COP OUTS"),
that was sent to the Warden and the Medical Department. Also, the
Plaintiff asserted negligence on these Defendant's for denying
medical treatment to the Plaintiff pursuant to the FTCA, and not
Bivens.

The Government's Brief at 27 states:

> Defendant's Wesemen and Sherman are entitled
> to dismissal on the basis of qualified immunity
> because the allegations of the complaint do not
> amount to the violation of a clearly established
> constitutional right.

The Government request that this Defendant's are entitled to
Qualified Immunity pursuant to the Plaintiff's complaint. The
Plaintiff complaint alleges negligence on the Defendant's Government
Officials pursuant to FTCA, and the discretionary functional
exception which the Plaintiff must overcome in order to establish
a negligence violation. Therefore, Qualified Immunity is inapplicable
in this action.

The Government's Brief at 31 and D states:

> Defendants Sherman and Wesemen should be dismissed
> from this lawsuit, because plaintiff has failed to
> allege his Eighth Amendment rights were violated.

Throughout the Government's Brief, the Government continues to
allege that the Plaintiff has filed a complaint pursuant to Bivens,
and the Eighth Amendment. The Plaintiff did not allege a Eighth
Amendment violation for an assault. The Plaintiff alleged that

in his complaint and in the Plaintiff's Second Amended Complaint
that the Medical Department owed Plaintiff duty of care and also
that Officer Wesemen, and the Warden Sherman where negligent
Pursuant  to the FTCA, and not the Eighth Amendment. See Plaintiff's
Complaint and Second Amended Complaint. So the Plaintiff did raise
negligence, but not under the Eighth Amendment, but under the FTCA.
Therefore, the Government misconstrues the the Plaintiff's complaint,
because no where in the Plaintiff's complaint has the Plaintiff
asserted a Eighth Amendment violation when Plaintiff filed all
Cause of Action Pursuant to the FTCA, and the Plaintiff request
that this Honorable Court deny the Government's invitation on this
argument.

The Government contends that, this Honorable Court should dimiss
the Plaintiff's complaint because.

> The failure to protect allegation should be
> dismissed for lack of subject matter
> jurisdiction because the United States has
> not waived sovereign immunity in matter
> involving the discretionary function of
> Government Actors.

Before, the Plaintiff dives off into this argument by the Government
the Plaintiff will cite this Circuits and the Supreme courts
standard to the Discretionary Function Exception. This Honorable
Court stated in **Gotha v. United States,** 115 F.3d 176 (3 rd Cir.1997);
The Federal Torts Claims Act is a partial abrogation of the

federal government's sovereign immunity that permits suits for torts
against the United States. The Act, however, imposes a significant
limitation by providing that no liability may be asserted for a
claim "based upon the exercise or performance or the failure to
exercise or perform a discretionary function or duty on the part
of a federal agency or an employee of the Government, whether or
not the discretion involved be abused." 28 U.S.C § 2680(a). The
statute does not define "discretionary function or duty" and these
terms have led to extensive litigation over the scope of the
government's liability to tort claimants. It is clear that if the
word "discretionary" is given a broad construction, it could almost
completely nullify the goal of the Act. **United State v. S.A. Empresa
de Viacao Aerea Rio Grandense (Varig Airlines),** 467 U.S. 797, 808
104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984) (exception "marks the
boundary between Congress Willingness to impose tort liability upon
the United States and its desire to protect certain governmental
activities from exposure to suit by private individuals"). The
statutory language does not apply to every situation in which there
is an actual option to choose between courses of action or inaction.
Rather, as the Supreme Court has stated, the discretion that is
immunized from "second-guessing" in the tort suit context applies
to "legislative and administrative decisions grounded in social,
economic, and political policy." Id. at 814, 104 S.Ct. at 2765.
In **Berkovitz v. United States,** 486 U.S. 531, 537, 108 S.Ct. 1954
1959, 100 L.Ed.2d 531 (1988), the Court explained: "The exception
properly construed...protects only governmental actions and decisions
based on consideration of public policy." The reason for "fashioning

an exception for discretionary governmental functions" was to
"protect the government from liability that would seriously handicap
efficient government operations." Varig Airlines, 467 U.S. at
814, 104 S.Ct. at 2765. In Berkovitz, the Court adopted a two-stage
inquiry: First, a court must consider if "a federal statute,
regulation or policy specifically prescribes a courts of action
for an employee to follow." 486 U.S. at 536, 108 S.Ct. at 1958. If
so, "the employee has no rightful option but to adhere to the
directive." Id. Consequently, there can be no lawful discretionary
act. If circumstances imposing complusion do not exist, a court
must then consider whether the challenged action or inaction "is
of the kind that the discretionary function exception was designed
to shield." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1959. Again,
the Court emphasized that the "Discretionary function exception
insulates the Government from liability if the action...involves
the permissible exercise of policy judgment." Id. at 537, 108 S.Ct.
at 1959. In **United States v. Gaubert,** 499 U.S. 315, 325, 111 S.Ct.
1267, 1275, 113 L.Ed.2d 335 (1991), the Court explained that for
a plaintiff's claim to survive, the challenged actions cannot be
grounded in the policy of the regulatory regime." The Court stressed
that the "focus of the inquiry is not on the agent's subjective
intent in exercising the discretion conferred by statute or regulations,
but on the nature of the actions taken and on whether they are
susceptible to policy analysis."¨Id. Gaubert noted another limitation
on the exception, citing the hypothetical situation where an agency

employee negligently drives an automobile in the course of his employment. Such action, although within the scope of employment, "cannot be said to be based on the purposed that the regulatory regime seeks to accomplish." 499 U.S. at 325 n. 7, 111 S.Ct. at 1275 n. 7. An examination of some of the situations where the discretionary function exception was applied may be helpful in understanding its scope. A federal agency decision to use a spot-checking process in inspecting aircraft was an exercise of policy discretion. Varig Airlines, 467 U.S. at 814-16, 104 S.Ct. at 2764-66. The supervision of day-to-day activities of a failing thrift institution was based on the public policy considerations of protecting the federal savings and loan insurance fund and federal oversight of the thrift industry. Gaubert, 499 U.S. at 332, 111 S.Ct. at 1278-79. The decision of the Food and Drug Administration to refuse entry to suspected contaminated fruit was a discretionary action. Fisher Bros., 46 F.3d at 285. See also **Sea-Lan Serv. V. United States,** 919 F.2d 888 (3rd Cir.1990)(decision to use asbestos in construction of ships was a discretionary decision); **General Public Utils. Corp. v. United States,** 745 F.2d 239 (3d Cir.1984)(action of Nuclear Regulatory commission in not reporting safety information was discretionary).

The Government's Brief states at 33-34 that the Plaintiff:

> Specifically, he contends that the United States
> failed to take reasonable measures to protect
> inmates, because the staff member assigned to
> the inmate either did not prevent the assault or
> failed to stop the fight promptly. Thus, Plaintiff
> seems to posit two arguments. (1) FCI Mckean failed
> to post sufficient staff in the housing units and,
> (2) staff at FCI Mckean failed to seperate him form
> assailants prior to the assault.

The Government's Brief states that Plaintiff raised (2) issues,
this is incorrect. The Plaintiff asserted that Officer Wesemen was
negligent for leaving the unit unmonitored and that, Officer Wesemen
and Warden Sherman was not shielded by the discretionary function
exception because there was no policy or regulation to shield
the, from immunity. The question is, did Officer Wesemen, and the
Warden use judgment or choice when Officer Wesemen, left the unit
unmonitored, as is stated by the Supreme Court in **Berkovitz v.
United States,** 486 U.S. 531, 537, 108 S.Ct. 1954, 1959, 100 L.Ed.2d
531 (1988), and the **United States v. Gaubert,** 499 U.S. 315, 325,
111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991).

The Government's Brief at 39, states that the Warden James Sherman
submitted an Declaration stating the procedures for Government
Officials to follow. Government's Brief at 39 states:

> 18 U.S.C. § 4042 vests the BOP with the general
> duty to protect inmates in its custody. There
> is not statute or regulation requiring prisons
> to post officers in each inmate room or in
> common areas within each housing unit. Nor is
> there a statute or regulation  requiring specific

(13)

inmate housing assignments. At FCI Mckean, during
the time in question, one correctional officer was
assigned to each side of an inmate housing unit.
Each side of a housing unit holds approximately
150-160 inmates. See Document 6, Declaration of
James F. Sherman.

The correctional officer assigned to Plaintiff's
side of the housing unit was responsible for
monitoring that side of the housing unit and for
supervising all inmates assigned to that unit.
Among the monitoring and supervision duties was
the requirement that the officer assigned to
Plaintiff's side of the housing unit supervis all
movement into the housing unit during the final
institutional movement.  See Document 6.

The Government  states that the Warden Sherman's Declaration states

that (" supervise inmate movement into the housing unit during the

final institutional movement "). There is **no** statement in the

Wardens Declaration stating the above statement by the Government,

and this statement cannot be trusted. The Wardens Declaration

states at 2 and 5:

In February 2004, it was my determination, based
upon staffing levels, professional experience, and
institutional needs, that one correctional officer
would be posted on each side of each housing unit.
This unit officer would be responsible for supervising
the inmates **inside** the housing unit by making frequent
rounds through all areas of the housing unit, conducting
safety and sanitation inspections, distributing cleaning
supplies, passes out mail, and conducting cell searches
and pat searches of inmates **inside** the housing unit.

There is nothing in the Wardens Declaration to state what the

Government alleged in it's brief. Therefore, this statement is

fabricated by the Government and cannot be trusted.

(14)

The record show that the Warden concedes that there is no regulation
or policy. Therefore, the Government is not shielded by the discretionary
functional exception and jurisdiction is established. See Berkovitz,
and Gaubert. Secondly, did the Warden and Officer Wesemen use
judgment of choice. The record show that the Plaintiff raised in
his complaint that Officer Wesemen was not in the unit when the
Plaintiff was assaulted by the Latin King Gang Member's. In fact,
the Government's Brief provides an Declaration from Officer Brain
Weseman, which states at 40:

> Because FCI Mckean assigned one correctional
> Officer to each side of each inmate housing
> Unit, and because FCI Mckean require each
> housing Officer to supervise inmate ingress
> during final inmate movement  at 8:30 p.m.
> each night, it was a discretionary matter left
> to the Warden and Unit Officer to determine the
> priority of duties within the housing Unit at
> at a given time.

The Government  states that ("  and because FCI Mckean required
each housing Officer to supervise inmate ingress during final
inmate movement at 8:30 p.m. each night "); The Warden's Declaration
does not state that. See Warden's Declaration. The Warden's
Declaration states that (" all conduct by Officers are done **inside**
the housing unit not outside. Officer Brain Weseman Declaration
states at 4 that:

> On February 27, 2004, at approximately 8:15 p.m.
> **I was standing outside of the entrance to Unit A,**

Officer Brain Weseman, <u>concedes that he was not in the housing</u>
<u>Unit when the Plaintiff was assaulted by the Latin king Gang</u>
<u>Member's, and this issue was raised in the Plaintiff Complaint</u>
<u>and also in Plaintiff's Second Amended Complaint</u>. There is nothing
in the Warden's Declaration that states Officer's are to stand
outside of the Unit to monitor it. The Warden states that all
officer's conduct is to be done in the **inside** the housing unit
not outside. Therefore, Officer Brain Weseman, and the Warden
did not use judgment or choice by the Officer leaving the unit
unmonitored and unprotected. See Government's Brief, and also
**(attachment 2)**

The Government's Brief states at 42:

> Alternatively, punitive damage are barred
> under the FTCA.

The Government request that this Honorable Court should deny
punitive damages because the Plaintiff requested this in his
complaint, but the Plaintiff also requested:

> (1) medical negligence under FTCA
> (2) compensatory  damages
> (3) federal agency claim

See Plaintiff's Second Amended Complaint, and **(attachment 3)**
The Federal Tort Claim Act states:

> Passed in 1946, the FTCA offers a limited waiver

of the federal government's sovereign immunity
as to negligent acts of government employees
acting within the scope of their employment.
It provides that "[t]he United States shall
be liable...in the same manner and to the same
extent as a private individual under like
circumstances. [...]" 28 U.S.C. § 2674. In
proper circumstances, prisoner such as the
appellant here may invoke the FTCA to seek
damages for injuries received while in
confinement. **United States v. Muniz**, 374 U.S.
150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

Therefore, if this Honorable Court agrees with this invitation

by the Government, the Plaintiff request relief under the FTCA

for damages.

The Government Brief states that the Government has not waived

sovereign immunity. See Gov. Brief at 43:

The individual Defendant's should be dismissed
from this Civil Action, because United States
Employees in their Official Capacities have
not waived  sovereign immunity from suit under
Federal Tort Claims Act.

The Plaintiff is aware that, in **Gotha v. United States** , 115 F.3d

176 (3rd Cir.1997); this honorable Court stated; the Federal Tort

Claims Act is a partial abrogation of the federal government's

sovereign immunity that permits suits for torts against the United

States. The Act, however, imposes a significant limitation by

providing that no liability may be asserted for a claim "based upon

the excercise or performance or the failure to excercise or perform

a discretionary function or duty on the part of a federal agency

or an employee of the Government, whether or not the discretion

involved be abused. " 28 U.S.C. § 2680(a).

(17)

From the above reading the Plaintiff must show this Honorable
Court that, in order for sovereign immunity to be waived the
Defendant';s failed to excercise or perform a discretionary function
or duty on the part of a federal agency or an employee of the
Government. The Plaintiff acknowledge and the facts show that
the Defendant Officer Weseman was not in the Unit at the time of
the assault took place. In fact, in **Palay v. United States,** 349
F.3d 418 (7th Cir.2003); which cites **Coulthurst, v. United States,**
214, F.3d 106 (2nd Cir.2000); and states, as in Coulthurst, it
is easy to imagine a scenario in which MCC Officials behaved in
a negligent fashion, but without making the types of discretionary
judgments that the statutory exception was intended to exempt
from liability. <u>Perhaps the corrections officer monitoring the</u>
<u>holder over unit at the time that the gang altercatioin broke</u>
<u>out was simply asleep, for example.</u> **<u>Or perhaps he left the unit</u>**
**<u>unattended in order to injoy a cigarette or a snack.</u> <u>This type</u>**
**<u>of carelessness would not be covered by the discretionary function</u>**
**<u>exception, as it involves no element of choice or judgment grounded</u>**
**<u>in public policy consideration.</u>**

The record show in the Warden's Declaration that the Officer's
ǀǀ" would be responsible for supervising the inmates inside the
housing unit, conducting safety and sanitation inspections, distributing
cleaning supplies, passes out mail, and conducting cell searches
and pat searches of inmates inside the housing unit "). No where
in this Declaration does it states that Officers are to be outside

the unit. see (**attachment 2**); Also, the Declaration by Officer
Weseman, states at 4: (" On February 27, 2004 at approximately
8:15 p.m., I was standing outside of the entrance of Unit A ").
see (**attachment 2**); By the Warden's Declaration stating that all
conduct of Officer's are to be conducted inside the Unit, and Officer
Weseman, conceding in his Declaration that he was not in the Unit,
sovereign immunity is waived in this complaint.

The Government's Brief at 44 states:

> Plaintiff failed to establish that staff at FCI
> Mckean failed to protect him from danger, because
> the act of his assailants was an unforeseeable
> intervening and superceding act.

The Plaintiff alleged in the Plaintiff complaint that 4042 was
violated. The Plaintiff is aware that in **Cohen v. United States,**
151 F.3d 1338 (11th Cir.1998), that 18 U.S.C. § 4042 states:

> 18 U.S.C. § 4042, which provides in relevant part
> that "[t]he Bureau of Prisons, under the direction
> of the Attorney General, shall...provide for the
> safekeeping, care, and protection of all person
> charged with or convicted of offenses against the
> United States.

The Plaintiff is aware that § 4042 does not give direction for the
BOP to follow, and is discretionary. But, the record show that
the Warden's Declaration gave the Officers at FCI Mckean specific
instructions to follow and Officer Weseman did not follow those

instruction. By leaving the unit unattended, because the Wardens
Declaration states all Officer's are to perform duties inside the
housing units and not outside, there is no where in the Wardens
Declaration is the words "outside the unit". Therefore, this
regulation by the Warden is non-discretionary because Officer Weseman
did not follow it. See **United States v. Gaubert,** 499 U.S. 315, 322,
111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991), **Berkovitz v. United
States,** 486 U.S. 531, 536, 108 s.Ct. 1954, 1958, 100 L.Ed.2d
531 (1988). The record show that the Plaintiff alleged that Officer
Weseman was not in the unit at the time of the assault, and the
record is substantiated by Officer Weseman Declaration where he
states at 4:

> On February 27, 2004 at approximately 8:15 p.m. I
> was standing outside of the entrance to Unit A,
> monitoring inmates returning to the unit during the
> last controlled inmate movement of the day in
> preparation for the 9:00p.m. count. During, the
> last inmate controlled movement, inmates are permitted
> to return from places outside of the housing unit,
> including, but not limited to, the recreation  areas
> the education department, the law library, psychology
> services, or religious services, in order to be present
> in their cells for 9:00 p.m. count. During this controlled
> movement, I would stand outside the entrance of Unit A,
> and conduct random checks of inmate indentification cards
> and pat searches of inmates entering the housing unit.

Officer Weseman, concedes that he was standing outside of the
housing unit and not inside as Warden Smith instructed the Officer's
to do. Therefore, this violation of the Warden regulation is non-
discretionary and is not protected, and free's the Government of
it's sovereign immunity, and can be sued under the Federal Tort
Claims Act.

The Government's Brief at 49, states that the Plaintiff was not
subjected to Medical malpractice. This protestation by the Government
is incorrect. The record show from the Orbital Specialist and Plastic
Surgeon that, the Plaintiff has a fracture of the orbital floor
with entrapment. The Plaintiff is now (11) months out, and still
has not been treated. The Plaintiff's left eye is still causing
the Plaintiff pain, and the Plaintiff's left eye is still off-centered.
The Plaintiff's left eye will not go up without causing som discomfort,
and the entrapment has not been released. The record show that
surgery was needed to correct this problem and the staff at FCI
Mckean' was negligent for postponing and delaying the Plaintiff's
treatment when the Plaintiff was complaining of pain and, that the
Plaintiff left eye would not go up as far as the right, show that
the medical Department was the proximate cause of the Plaintiff
injuries. The record show that the Physician Assistant (PA) did
not do a eye examination or prescribe one for the Plaintiff to
see a eye specialist. The PA, did not know that the Plaintiff left
eye was not going up as far as the right eye and was off-centered,
after the Plaintiff told him that it wouldn't.

The Government's Brief states at 51 that:

> It was noted that Plaintiff's vision was 20/25 in
> both eyes. Id. There is no indication Plaintiff
> reported double vision and blurred vision. Id. The
> Physical examination did not indicate Plaintiff's left
> eye was off-centered. Id.

Theses statement by the Government is contradicted by the record
of the Orbital Specialist and Plastic Surgeon.

The Government's Brief at 50 states:

> The evidence shows that plaintiff reported to the
> PA left face and eye pain secondary to an assault
> by two inmates.

From these statements in the Government's brief, they are contradicted and cannot be trusted. The above statements by the Government would indicate that the negligence by the medical department for the PA not knowing and checking the Plaintiff left eye or both eyes after the Plaintiff told the PA that the left eye was causing the Plaintiff pain shows that the medical department was the proximate cause of the Plaintiff's injuries.

If this Honorable Court would examine the Documents 2b and 2c this Honorable Court will agree that the statements above are not substantiated by record and are fabricated by the Government, and therefore cannot be trusted, because the PA has not made any statements from the document's the Government cites in it's brief. See (attachment 3)

The Government states that the Plaintiff while in special Housing Unit did not report any medical issues. This is incorrect, because the record show that while in (SHU) the Plaintiff was complaining regularly. The Government states at 51.

> The evidence reveals medical staff made rounds through
> the special housing unit (SHU) twice each day; however
> Plaintiff did not report any medical issues to staff
> during these rounds.

These statements are also fabricated by the Government because when the Plaintiff was in SHU on February 29, 2004, the Plaintiff complained regularly. See **(attachment 1)**; The Government states, that the plaintiff stated that the injury the Plaintiff sustained cleared up. The Plaintiff continued even until this day. The record show that the Plaintiff complained about the left eye injury the Plaintiff sustained all the way up until the Plaintiff release and did not get no results and did not see a eye doctor while in SHU. See **(attachment 1)**

## CONCLUSION

The Plaintiff request that this Honorable Court dismiss the Government's Memorandum of law in Support of Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment, because the Plaintiff has set forth facts that the United States Government officials where negligent and where the proximate cause of the plaintiff's injury, and that a non-discretionary standard apply to the Plaintiff's Complaint.

**Therefore,** the Plaintiff request that this Honorable Court deny the Motion for Summary Judgment because is a material fact that the Plaintiff has shown and also, this Court has subject matter jurisdiction because the Plaintiff has proved through facts that a non-discretionary standard applies to this Complaint.

Respectfully submitted

BY: _Darryl Baker_

Darryl Orrin Baker
(PRO-SE)
Reg. No.# 19613-039
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA
17837

**EXECUTED: JANUARY 23, 2006**

(24)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Plaintiff's Opposition to the Defendant's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment was served postage-paid United States mail on this day 23, January, 2006 to and upon the following:

Paul E. Skirtich
Assistant United States Attorney
Western District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburgh, PA. 15219

Respectfully submitted

BY: _Darryl Baker_
    Darryl Orrin Baker
    (PRO-SE)
    Reg. No.# 19613-039
    Federal Prison Camp
    P.O. Box 2000
    Lewisburg, PA
    17837

EXECUTED: JANUARY 23, 2006

(25)

January 23, 2006

Clerk of the Court
Honorable Judge Mclaughlin
Susan Paradise Baxter
Chief United States Magistrate Judge
United States District Court
Western District of Pennsylvania
17 South Park Row, Room A280
Erie, PA 16501

**RE: CIVIL ACTION NO. 05-147E**

Dear Clerk of the Court :

    Please find inside Plaintiff's Opposition to the Defendant's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment.

    The Plaintiff acknowledge that the Plaintiff has sent the same to the Assistant United States Attorney Paul E. Skitich Western District of Pennsylvania U.S. Post Office Courthouse 700 Grant Street, Suite 4000 Pittsburgh, Pennsylvania 15219.

Respectfully submitted

BY: _Darryl Baker_
Darryl Orrin Baker
Reg. No.# 19613-039
Federal Prison Camp
P.O. Box 2000
Lewisburg, Pa.
17837

**encl:**
**cc: AUSA PAUL E. SKIRTICH**