(ATTACHMENT 2)

**Document 7**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,               :
              Plaintiff,          :
                                  :
        v.                        :   Civ. Action No. 05-147 (SJM-SPB)
                                  :
UNITED STATES, et al.,            :
              Defendants.         :
                                  :

**DECLARATION OF JAMES F. SHERMAN**

I, James F. Sherman, pursuant to 28 U.S.C. § 1746, declare
as follows:

1.  I am the Warden at the Federal Correctional Institution
(FCI), McKean, Pennsylvania.  I have been employed as the Warden
at FCI McKean since approximately January 26, 2004.

2.  In February 2004, the general population at FCI McKean
consisted of 4 inmate housing units (not including the satellite
prison camp), Unit A, Unit B, Unit C, and Unit D.  Each housing
unit consisted of two sides, A or B.  The Housing Units were
identified by unit and side; for example, Unit AA, Unit AB, Unit
BA, Unit BB, etc.  Each side of each housing unit housed
approximately 150 to 160 inmates.

3.  To my knowledge, on February 27, 2004, there was no BOP
regulation or policy in effect which dictated the number of
correctional officers, the placement of correctional officer
posts within a federal correctional institution, or the specific
duties assigned to correctional officers assigned to posts within

1

a BOP facility.  The authority to determine the number,
placement and specific duties of correctional officers within a
BOP facility was and continues to be a matter within the
discretion of each BOP Warden during normal operations as well as
during emergency situations.

4.  As the Warden at FCI McKean in February 2004, it was my
duty to determine how best to deploy Correctional Officers and
other staff to the various posts within the compound, based upon
the security needs of the institution and the effective use of
limited resources.

5.  In February 2004, it was my determination, based upon
staffing levels, professional experience, and institutional
needs, that one correctional officer would be posted on each side
of each housing unit.  This unit officer would be responsible for
supervising the inmates inside the housing unit by making
frequent rounds through all areas of the housing unit, conducting
safety and sanitation inspections, distributing cleaning
supplies, passes out mail, and conducting cell searches and pat
searches of inmates inside the housing unit.

6.  On February 27, 2004, inmate housing assignments at FCI
McKean was a matter left to the discretion of the Warden, upon
the advice of staff.

7.  In February 2004, the decision as to which inmates
should be separated, placed in administrative detention or

2

recommend be moved to other facilities was also a matter left to the discretion of each BOP Warden that took into consideration numerous factors, including the safety of inmates, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited resources.

8.   In February 2004, the decision to assign an inmate to general population, as opposed to administrative detention was a matter left to the discretion of each BOP Warden based upon available information and the availability of limited resources.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this _____ day of December 2005.

JAMES F. SHERMAN
Warden
Federal Correctional Institution
McKean, Pennsylvania

3

**Document 7**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,                          :
                   Plaintiff,      :

   - v -                                     :        Civil Action No. 05-147 (Erie)
                             :

UNITED STATES, et al.,                        :
                Defendants.      :

<u>DECLARATION OF BRIAN WESEMAN</u>

    I, Brian Weseman, make the following declaration under penalty of perjury:

1.    I am employed as a Senior Officer, United States Department of Justice, Federal Bureau of Prisons, Federal Correctional Institution, McKean, Pennsylvania.  I have been employed by the Federal Bureau of Prisons since approximately January 4, 1999.  I have been employed as a Senior Officer at FCI McKean since approximately January 11, 2004.

2.    On February 27, 2004, I was assigned to the Custody Post of Evening Watch Unit Officer in Unit A at FCI McKean.  This post ran from 4:00 p.m. through 12:00 a.m.  As the Unit A Officer, I was required to be inside Housing Unit A as well as outside of the entrance of Unit A during controlled inmate movements.  As the Unit Officer, I was responsible for making security inspections inside the unit, conducting cell searches, conducting pat searches of inmates entering the housing unit, patrolling the unit, and making rounds through inmate cells, bathrooms and common areas, among other duties.

3.    Unit A is a large, double-tiered, triangular-shaped housing unit, with a capacity of approximately 156 inmates.  One Unit Officer is assigned to this housing unit.

4.    On February 27, 2004, at approximately 8:15 pm, I was standing outside of the entrance to Unit A, monitoring inmates returning to the Unit during the last controlled inmate movement of the day in preparation for the 9:00 p.m count.  During the last inmate controlled movement, inmates are permitted to return from places outside of the housing unit, including, but not limited to, the recreation areas, the education department, the law library, psychology services, or religious services, in order to be present in their cells for the 9:00 p.m. count.  During this controlled movement, I would stand outside the entrance of Unit A, and conduct random checks of inmate identification cards and pat searches of inmates entering the housing unit.  Prior to the announcement of the controlled movement at approximately 8:15 p.m., I would be inside the housing unit doing any of a number of different duties, including, but not limited to making rounds, completing documentation, reviewing the inmate bed book, and inspecting various areas inside

the housing unit.

5.    On February 27, 2004, I did not observe any inmate-on-inmate assaults or fights, and no inmate assaults or fights were reported to me. At no time during my shift did I observe any activity or noise which would lead me to believe that inmate Darryl Orrin Baker, Reg. No. 19613-039, was at risk of assault, or had been injured as a result of an accident or a physical altercation with any other inmate in Unit A.

6.    Had I learned or suspected that inmate Baker, or any other inmate in Unit A was physically injured during my shift, I would have immediately notified the Operations Lieutenant of the injury.

I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this    7th    day of December, 2005.


Brian Weseman
Senior Officer
Federal Correctional Institution
McKean, PA

-2-