# Document 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,
               Plaintiff,

v.                                            Civil Action No. 05-147 (Erie)

UNITED STATES of AMERICA, et al.,
               Defendants.

## DECLARATION OF STEVEN BROWN.

1. I, Steven Brown, do hereby declare that I am employed as a Health Services Administrator (HSA), at the United States Penitentiary (USP), Lewisburg, Pennsylvania. As the HSA at USP Lewisburg, I have access to many records maintained in the ordinary course of business at USP Lewisburg, including inmate medical records. I am familiar with medical terminology, and I can interpret medical records.

2. Attached hereto, please find a true and correct copy of the medical record of inmate Darryl Orrin Baker, Register Number 19613-039, which are maintained in the ordinary course of business at USP Lewisburg. With respect to the medical treatment inmate Baker received an eye injury sustained on February 27, 2004, his medical records indicate the following:

    a. On February 29, 2004, an injury assessment and follow-up form was completed by the Physician's Assistant (PA) at the Federal Correctional Institution (FCI), McKean, Pennsylvania, indicating inmate Baker was injured during an assault by two inmates. Inmate Baker reported face and eye pain associated with an assault by two inmates with no loss of consciousness. He also complained of minor pain, swelling and abrasions on his right chest, back, upper extremities, and both hands. He reported episodic nose bleeding during the 24 hours following the assault. He also reported resolving or decreasing paresthesia (numbness) of his left face and teeth. He denied dizziness, hearing loss, vision loss or loss of consciousness. On examination, he was awake, conscious, and oriented. He was in moderate distress, ambulatory, and he had a flat affect. No blood was observed from his ears. His tympanic membranes were intact without fluid or blood. The left side of his face was mildly tender with some ecchymosis (skin discoloration) and

swelling. No step-off deformity of his nose was observed. His skin was intact with much periorbital ecchymosis, edema and tenderness. His nasotracheal pyramid and nose tip were neutral with mild ecchymosis on the left side. A deviated nasal septum was observed on the right side with bilateral mucosal edema, left greater than right, with dried and fresh blood. On the left side of the nose, no visible rupture was observed. Injuries to his chest, back and upper extremities were diagramed. His cranial nerves II-XII were in tact. His pupils were equally reactive to light and accommodation. Conjunctivitis was observed in his left eye. He was assessed with periorbital soft tissue trauma, ecchymosis, and edema without a fracture, left maxilla/zygoma contusion without a fracture to his mouth, contusion with abrasions (superficial) to his right chest and back, contusions, sprain, and superficial abrasions to his right arm, and nose bleeding and deviated nasal septum without fracture. He was prescribed Epinephrine to control and prevent nose bleeding. He was given instructions regarding use of the Epinephrine. He was given the Snelling visual eye examination, and he scored 20/25 bilaterally. He was educated and counseled regarding trauma. He was told to return as needed. See, Medical Record of Darryl Orrin Baker, Reg. No. 19613-039, at p. 174, attached hereto and labeled **Document 4a**.

b. On March 9, 2004, at the request of an Associate Warden, a PA visited inmate Baker in SHU to advise him of SHU sick call procedures. During this visit, inmate Baker became verbally abusive and belligerent. He was told his behavior was not appropriate, and he was given another chance to discuss his health issues. He continued to be abusive in demeanor and language. The visit was ended. He was advised to sign up for sick call if he needed to be seen. See **Document 4a**, at p. 43.

c. On March 11, 2004, The Medical Officer entered a notation into inmate Baker's medical record indicating that earlier that day, he received a written request from Baker dated March 9, 2004, in which inmate Baker indicated he was assaulted on February 27, 2004, and he was experiencing problems with his left eye. Inmate Baker indicated during the assault, he suffered contusions about his face, back and arm. He stated his left eye was punched and was sore, but cleared up afterwards. Inmate Baker stated that during the previous five days, the eye became sore again with crusting of the lower lid, red with weeping and redness. He denied photophbia, with slight soreness when he looked down extremely. On observation, he looked well. His pupils were equal, and reacted to light and accommodation. He had full extra ocular movement in both eyes. A fundoscopic visual examination was within normal limits for both eyes. The right conjunctiva was not red, and left conjunctiva was slightly red. An abrasion was observed at the lower lid of the left eye, and his left eye was watering. He denied recent injury or trauma. His vision acuity was 20/30 bilaterally, floroscene staining revealed no defect of the left cornea. He was assessed with abraded lower lid of the left eye. The Medical Officer was unsure how this happened, and indicated his belief that the injury was not related to the February 27, 2004 assault. Inmate Baker was educated regarding use of medications. He was prescribed Sufacetamide Ophthalmic Solution, and an optometry consultation was ordered. Id., at pp. 40-

41.

d. On March 25, 2004, a PA conducting sick call appointments in the SHU indicated inmate Baker failed to report for a sick call appointment to check on his left eye due to his March 24, 2004 release from SHU to general population. It was noted that inmate Baker should follow-up with any medical needs at the HSU and through general population sick call procedures. Id., at p. 38.

e. On March 31, 2004, inmate Baker was seen by the Optometrist. It was noted his left eye stopped during an upward gaze. He suspected entrapment of the left superior orbital muscle after the injury of February 27, 2004. He recommended an evaluation by an Ophthalmologist. Upon receipt of the Optometrist's evaluation, the Medical Officer contacted the contract Ophthalmologist. By telephone, the Ophthalmologist recommended ct scans of the orbits including coronal views, and an Ophthalmology follow-up appointment one week after the cat scan. The Ophthalmologist's recommendations were forwarded to the Utilization Review Committee (URC). Id., at pp. 36, 143-144.

f. On April 1, 2004, inmate Baker was seen by the Medical Officer for a follow-up appointment. He reported, "when I look up, I see double since the assault." The Medical Officer observed inmate Baker appeared alright generally. He noted inmate Baker could not look up above the rest point with his left eye. Lateral movements were okay. He noted tenderness of the upper aspect of the orbital rim of the left eye. Inmate Baker was assessed with probable left superior orbital muscle entrapment. He was educated regarding upcoming plans for correction. He was prescribed Ketoconazole. Id., at p. 37.

g. CT Scans of inmate Baker's brain and orbits conducted on April 9, 2004, showed an old fracture at the floor of the left orbit with some mucosal thickening that appeared to be chronic. No obvious muscle entrapment was noted at that time, however, the inferior rectus was very close to the ridge. Id., at pp. 82-83.

h. On April 9, 2004, upon his return from the cat scan procedure, inmate Baker was seen by the Medical Officer. It was noted the ct scans of the orbits were conducted, and the results were not available. He was educated that he probably had entrapment of the extra ocular muscle, and the Medical Officer explained how it could have happened. On observation, inmate Baker appeared okay. It was noted he lacked the ability to look up with his left eye. He was assessed with probable extra ocular muscle entrapment. Id., at p. 34.

I. On April 12, 2004, it was noted inmate Baker did not report to review the cat scan results. Id., at p. 29.

j. On April 13, 2004, the Medical Officer called the Ophthalmologist's office. Another Ophthalmologist from the practice re-read the cat scan, and indicated inmate Baker had an old fracture at the inferior rim. it was noted the cat scan showed an old fracture of the inferior rim. The Medical Officer noted he would

    await the contract Ophthalmologist's recommendation. Id., at p. 35.

k.  On April 15, 2004, inmate Baker was evaluated by the contract Ophthalmologist. It was noted his vision was 20/100 in the right eye and 20/200 in the left eye. The Ophthalmologist stated this could be corrected to 20/20 with an eyeglass prescription. On examination, inmate Baker's eyes were well aligned straight ahead. However, during upward gazing, the left eye did not elevate or look as far up as the right eye. He did not see any signs that the left eye was protruding further out or recessed into the eye more so than the right. The retina was normal. The cat scan suggested some scarring of the floor of the orbit with possible adhesions to the inferior rectus muscle. He noted that typically, in ophthalmology, even with a fracture of the orbital floor, it was preferred to wait at least two weeks to see if it would heal on its own. It was noted inmate Baker was about six to eight weeks post trauma, and he was complaining of symptoms. Because he was well aligned at near, the Ophthalmologist determined it would be preferable to take a conservative approach. He indicated it would be worthwhile to get a second opinion by an orbital plastic specialist. Id., at p. 140.

l.  On April 15, 2004, upon inmate Baker's return from the contract Ophthalmologist's office, the Medical Officer had a brief talk with him, and indicated he (the Medical Officer) would contact the contract Ophthalmologist for an update. Id., at p. 32.

m.  On April 15, 2004, the Medical Officer noted he spoke with the contract Ophthalmologist, who stated inmate Baker had a healed fracture with some entrapment of the inferior rectus. He recommended inmate Baker be rechecked in two months. He indicated the outcome was fairly good in that his gaze was convergent in most portions. Id., at p. 30.

n.  On April 15, 2004, the Medical Officer advised inmate Baker of the information provided by the contract Ophthalmologist. The assessment was healing fracture of the left orbit, inferior rectus muscle entrapment, functional, outcome reasonably good. Inmate Baker was educated regarding the need for eye glasses and a follow-up plan. Id., at p. 30.

o.  On April 21, 2004, the Medical Officer noted another Ophthalmologist from the contract Ophthalmologist's office left a message indicating he would see inmate Baker. The Medical Officer indicated he would arrange for this appointment for one to two weeks later. He noted he spoke with inmate Baker to explain the plan. Id., at p. 31.

p.  On April 30, 2004, inmate Baker was transported to the contract Ophthalmologist's office for a second opinion. Id., t p. 31.

q.  On May 3, 2004, it was noted that the second Ophthalmologist reported inmate Baker was quite functional with some degree of impairment as is. He recommended an Ophthalmology follow up in six weeks. He stated if inmate

Baker had diplopia while looking straight ahead, he would need a repair. Id., at p. 28.

r. On May 6, 2004, inmate Baker was seen by the Medical Officer for a re-check of his left eye. During an examination of the extra ocular movements, inmate Baker reported he felt better. He stated he experienced pain looking up and to the right. He stated he felt like he was making progress. On examination, the Medical Officer felt inmate Baker was doing much better with elevation of the left eye. There was slight diplopia when he looked up the right. He was assessed with improving function of the left inferior rectus, healing blow-out fracture of the left orbit. He was educated regarding wearing glasses, and a follow-up with the second Ophthalmologist was scheduled for six weeks. Id., at p. 29.

s. On June 4, 2004, inmate Baker was checked by the Medical Officer. He reported he still saw double when looking up and to the right side. He complained of pain in his left upper eye and nasal area. During an examination, it was noted his left eye appeared to be improving. It was noted inmate Baker still complained of diplopia in certain situations. He was assessed with diplopia, blowout fracture and left inferior rectus dysfunction. He was educated regarding his condition. He was told that follow-up appointments had been scheduled, and he would be placed on the call out. Id., at p. 26.

t. On June 9, 2004, inmate Baker was seen by the second contract Ophthalmologist. It was noted that at five months after the injury, he still had entrapment. He could not look up with his left eye without experiencing a form of diplopia that gave him extreme imbalance. He told the Ophthalmologist he did not think he could function that way. The Ophthalmologist noted his acuity was 20/20 in both eyes with glasses. The Ophthalmologist recommended repair of the blowout fracture to release the entrapment under general anaesthesia. He explained to inmate Baker that one of the risks of this procedure was the risk that he may develop diplopia in down gaze. The Ophthalmologist could not guarantee this outcome would not result. Id., at p. 142.

u. On June 16, 2004, the Medical Officer noted he reviewed the report from the second contract Ophthalmologist. The report was forwarded to the Utilization Review Committee (URC). Id., at p. 27.

v. On July 1, 2004, inmate Baker was transferred from FCI McKean. Id., at p. 22.

w. On July 7, 2004, during an intake screening at the Metropolitan Detention Center (MDC), Brooklyn, New York, it was noted inmate Baker had a history of orbital fracture, and needed an ophthalmology follow-up. He was instructed to follow-up at sick call for further evaluation. Id., at p. 18.

x. On August 12, 2004, inmate Baker was transferred from MDC Brooklyn to FCI Elkton, Ohio. Id., at 16.

y.  On August 13, 2004, he reported he had a terrible sore throat for three days with fever, chills and aches. It was noted he did not have a fever at the time he reported to the Health Services Unit (HSU). After an examination, he was assessed with tonsilitis. He was prescribed Amoxicillin and Motrin. He was instructed to gargle and rest, and to follow-up in sick call. Id., at p. 12.

z.  On September 20, 2004, he complained of continued pain and diplopia in this left eye. On examination of his eyes, mild decreased superior movement of his left eye was noted. He did not have eyeglasses. He indicated he experienced pain with lateral movement. His medical consultations and ct scans were reviewed. He was assessed with status post left orbital fracture with impingement/entrapment. A cat scan of his orbits was ordered. An ophthalmologist referral was forwarded to the Utilization Review Committee (URC) to determine the need for surgery. He was scheduled to see an Optometrist. Id., at p. 13.

aa. On December 16, 2004, inmate Baker complained of continued pain in his left eye. He asked when he would have the cat scan and an appointment with an outside specialist. He also had medical complaints not related to his eyes. He was examined, and the cat scan schedule was checked. He was assessed with history of left orbital fracture. It was noted he was on the schedule for a cat scan, but it was cancelled due to fog and inclement weather. It was noted he was re-scheduled for a cat scan. He was educated, and it was noted his eye had become a chronic situation, but was not urgent. Id., at pp. 8, 11.

bb. On January 19, 2005, he was seen in the Chronic Care Clinic. He stated he had a history of diplopia, dizziness, headaches, and left eye muscle entrapment, secondary to an assault at FCI McKean. It was noted he was transferred to FCI Elkton before he could have surgery on his orbit. It was noted he had many years left to serve on his sentence and the case was not urgent. After an examination, he was assessed with diplopia, dizziness and headaches. It was noted that after receiving results from the cat scan a surgical referral could be forwarded to the URC. Id., at pp. 8-9.

cc. On March 28, 2005, a cat scan was conducted. His paranasal sinuses appeared clear. There was some nasal septal deviation towards the left. The left frontal sinus was hypoplastic. The globes and the optic nerve appeared fairly symmetric. There appeared to be a fracture involving the left orbital floor. Absence of bone was noted involving the posterior aspect of the orbital floor and lateral aspect. The inferior rectus muscle extended to this defect but did not definitely appear to be entrapped. Minimal left maxillary sinus mucosal thickening was present. The radiologist suspected this was not an acute fracture. He saw minimal, if any, soft tissue swelling. An artifact from dental hardware limited his evaluation slightly. The uncinate process appeared intact bilaterally. Osteomeatal units appeared to be intact. The axial images indicated questionable possibly healed fracture involving the left lateral orbital wall. The impression of the radiologist was bony defect involving the posterior lateral aspect of the left orbital floor. He suspected this

represented an area of previous fracture. A small amount of orbital fat extended into this area. The left inferior rectus muscle extended to this defect but not through the defect. It did not appear to be entrapped. Minimal mucosal thickening of the left maxillary sinuses. The remainder of the paranasal sinuses appeared clear. No air fluid levels were identified. The left frontal sinus was hypoplastic. Id., at p. 85.

dd. On April 6, 2005, he was seen in the Chronic Care Clinic at FCI Elkton. He complained of pain in the left eye when he looked up or to the side. He also complained of some numbness to the left side of the face. He denied dizziness or drooling. He was examined. He was assessed with diplopia, history of orbit fracture and folliculitis. He was educated about the care of his skin. It was noted the institution was awaiting a cat scan and review of the URC for a surgical referral. Id., at pp. 6-7.

ee. On May 6, 2005, inmate Baker asked about the plan of action in regards to the left orbit fracture. He stated he had pain in the left eye. After an examination and review of previous records, he was assessed with history of orbit fracture and folliculitis. He was scheduled to be seen by the Clinical Director. Id., at p. 4.

ff. On May 18, 2005, he was seen by the Clinical Director regarding the cat scan of his left eye. He stated he was still having gaze problems and pain. His vision was stable. He was assessed with left orbital fracture with mild entrapment of the left inferior rectus muscle. An Ophthalmology/surgical consultation referral was forwarded to the URC with the cat scan. Id., at p. 5.

gg. On July 6, 2005, inmate Baker was seen in the Chronic Care Clinic. He complained of left eye pain. He stated he felt pain when looking up, also some swelling of the upper lid of the right eye. He also complained of allergy symptoms for two weeks. On examination he was alert and oriented. No redness was observed at his right eye. His pupil was round and reactive. Mild swelling of the upper lid was observed. No swelling or redness of the conjunctiva was observed at the left eye. Tenderness was evident at the medial side of the upper side of the orbit. He was assessed with history of orbit fracture, diplopia and allergy. He was educated regarding the URC's decision to send him to the Ophthalmologist for a surgical consultation. He was also told to purchase allergy pills at the commissary. Id., at p. 5.

hh. On August 11, 2005, inmate Baker was scheduled to see the contract Ophthalmologist for a surgical consultation. However, the appointment had to be cancelled because he refused to permit staff to apply handcuffs to his wrists in order for Officers to transport him to the Ophthalmologist's office. It was noted he continued to have a decrease in vision. He complained of pain in his left eye. He complained of diplopia when reading. On examination, his visual acuity was 20/25 in his left eye and 20/20 in his left eye. The eye fundoscopic examination was negative. He had a slight decreased lateral range of motion. He was assessed with history of left orbit fracture, no entrapment on examination. He refused to

sign the medical treatment refusal form. He was offered pain medications, and he refused them. He stated Motrin and Naprosen were no help. He and good vision acuity. It was noted his refusal to submit to standard cuffing procedures resulted in the cancellation of the Ophthalmology appointment. He was told that if he needed pain medication, he should report to sick call. Id., at p. 2.

Pursuant to the provisions of 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __9__ day of December, 2005.

Steven Brown
Health Services Administrator
United States Penitentiary
Lewisburg, Pennsylvania