## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL ORRIN BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIVIL ACTION NO. 05-147E |
| VS. ) | |
| ) | HONORABLE JUDGE MCLAUGHLIN |
| ) | |
| ) | MAGISTRATE JUDGE |
| UNITED STATES OF AMERICA ) | SUSAN PARADISE BAXTER |
| GOVERNMENT OFFICIALS AT ) | |
| FCI-MCKEAN, WARDEN, OFFICER ) | |
| B. WESEMAN, MEDICAL DEPARTMENT ) | |
| ) | |
| Defendant's. ) | |

FILED

'06 APR 17 A11:50

CLERK
U.S. DISTRICT COURT

### PLAINTIFF'S OPPOSITION TO UNITED STATES GOVERNMENT DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

AND NOW come the Plaintiff, DARRYL ORRIN BAKER (hereinafter "PLAINTIFF") and proceeding pro-se, and respectfully request that this Honorable Court GRANT the Plaintiff's Opposition to United States Government Officials Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Pursuant to Rule 12(b)(1) and (2) and 12(b)(6), and also Rule 56(c) of the Federal Rules of Civil Procedure and deny the Defendant's invitation for the reasons that follow. ("The Plaintiff acknowledge, that, most of these contention by the United States, has been addressed in the Plaintiff's Opposition to the Defendant's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment and the Plaintiff will readdress them to prove a material fact exist to establish subject matter jurisdiction in this Honorable Court").

(1) That the record and material facts show that the Defendant's has committed a non-discretionary act pursuant to the FTCA's Discretionary Function Exception.

(2) That subject matter jurisdiction has been established and sovereign emmunity waived when the Defendnat's committed a non-discretionary act by violating the Warden's regulation and policy, and acting negligently in their official duties.

(3) That the record show that Officer Weseman did not use judgment or choice when he left the Unit unattended.

(4) That these negligent acts has caused the Plaintiff present and future health and well-being problems.

(5) The Defendant's owed Plaintiff's a "duty of care".

(6) That the Plaintiff was retaliated against for filing grievances.

(7) Defendant's where the proximate cause of the Plaintiff's injuries.

(8) That the Medical Mepartment, and Doctor's, and Warden and assistant Warden, denied the Plaintiff medical treatment. See ("First and Second Amended Complaint and Plaintiff's First Opposition to United States Motion to Dismiss on Summary Judgment").

PRO-SE LITIGANT

In Alvarado v. Litsher, 267 F.3d 648 (7th Cir.2001), allegation
of a pro-se complaint are held to less stringent standards than
formal pleading drafted by lawyers. Haines v. Kerner, 404 U.S.
519, 520, 92 S.Ct. 594 30 L.Ed.2d 652 (1072)(per curiam). Accordingly
pro-se complaints are liberally construed. See Wilson v. Civil
Town of Clayton, Inc., 839 F.2d 375, 378 (7th Cir.1998). In
Mcdowell v. Delaware States Police,  88 F.3d (3rd Cir.1996); This
Court stated we cannot affirm the dismissal unless we can "say
with assurance that under the allegations of the pro-se complaint
which we hold to less stringent standards than formal pleadings
drafted by lawyers, it appears beyond doubt that the plaintiff
can prove no set of facts in support of his claim which would
entitle him to relief". Haines, 404 U.S. 519 Id. (quoting Conley
v. Gibson, 355 U.S. 41, 45-56, 78 S.Ct. 99 102 L.Ed.2d 80 (1975)).
See also, Utrrutia v. Harrisburg County Police, Dept., 91 F.3d 451
(3rd Cir.1996); Gibbs v. Roman, 116 F.3d 83 (3rd Cir.1997).


RULE 12(b)(1) FED. R. CIV. P. STANDARD

In Cestonaro v. United States, 211 F.3d 749 (3rd Cir.2000); this
Honorable Court stated; Giovanna Cestonara filed a wrongful death
action against the United States under the Federal Tort Claim Act
28 U.S.C. §§ 1346(b), 2671, and  the Virgin Islands Wrongful Death

Statute, V.I.C. § 76. In her complaint, Mrs Cestonaro, alleged
that "[d]efendant was negligent in failing to provide adequate
lighting and correct the know dangerous condition at the hospital
street lot. The United States filed a motion to dismiss under Fed.
R.Civ. P. 12(b)(1) asserting the District Court lacked subject
matter jurisdiction because, the challenged National park Service
actions fell under the discretionary function exception to the
FTCA's waiver of sovereign immunity. The District Court dismissed
the complaint, finding the National Park Service's decisions concerning
the hospital street lot were grounded in its missioin to "safeguard
the natural and historic integrity of national and historic integrity
of national parks" and in its policy to minimally intrude upon the
setting of such parks." Cestonaro, Civ. No. 1995-102, Slip. Op. at
11. We have jurisdiction under 28 U.S.C. § 1291. We excercise plenary
review over the applicability of the discretionary function exception.
See Gotha v. United States, 115 F.3d 176, 179 (3rd Cir.1997);
Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 282 (3rd
Cir.1995)(en banc). Because the government's challenged to the
district court's jurisdiction was a factual one under Fed. R. Civ.
P. 12(b)(1), we are not confined to the allegations in the compaint
(nor was the district court) and can look beyond the pleading to
decide factual matters relating to jurisdiction. In Gotha v. United
States, 115 F.3d 176 (3rd Cir.1997), the Court stated; the
government's motioin to dismiss was based on Federl Rule of Civil
Procedure 12(b)(1), lack of subject matter jurisdiction. Because
the Navy's motion was not merely a facial challenge to the district

Court's jurisdiction, the Court was not confined to allegations in the plaintiff's complaint, but could consider affidavits, depositions and testimony to resolve factual issues bearing on jurisdiction. See Motensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891-92 (3rd Cir.1997) (because a trial Court's very power to hear a case is at issue in a factual 12(b)(1) motion, a Court is free to weigh evidence beyond hte plaintiff's allegations). We exercise plenary review over the applicability of the discretionary function exception. Fisher Bros. Sales. Inc. v. United States, 46 F.3d 279 282 (3rd Cir.1995)(en banc).

## JURISDICTION STANDARD OF REVIEW 12(b)(6)

This Honorable Court stated in Evancho v. Fisher, 432 F.3d 347 (3rd Cir.2005); that we have subject matter jurisdiction pursuant to 28 U.S.C. § 1291 (2000). Our standard of review of the district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is plenary. See Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3rd Cir.1998). When considering a Rule 12(b)(6) motoin, we are required to accept as true all allegaton in the complaint and all resonable inferences that can be drawn there from, and view them in the light most favorable tot the plaintiff. Rock v. City of Philadelphia, 868 F.2d 644, 645 (3rd Cir.1989); D.P. Enter Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3rd Cir.1984).

A Rule 12(b)(6) motion shold be granted under any set of facts which could be proved." D.P. Enter Inc. 725 F.2d at 944; Richardson v. Pa. Dept. of Health, 561 F.2d 489, 492 (3rd Cir.1997). However, a court need not credit either "bald assertion's" or legal conclusions in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3rd Cir.1997) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir.1996)).

## JURISDICTION AND STANDARD OF REVIEW  56(c)

In Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199 (3rd Cir. 2005); this Honorable Court stated; the District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1228(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and employ the same analysis required of the District Court to determine whether there are any issues of material fact that would enable the non-moving party to prevail. Hamilton v. Leavy, 117 F.3d 742, 746 (3rd Cir.1997). Summary judgemnt is appropriate when there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law. " Fed. R. Civ. P. 56(c). At the summary judgment a stage, we view all evidence and

consider all reasonable inferences in a light most favorable to
the non-moving party. Anderson v. Liberty Lobby Inc. 477 U.S. 242
255, 106 S.Ct. 2505 91 L.Ed.2d 202 (1986). Public Interest Research
Group of New Jersey Inc. v. Powell Duffryn Terminals Inc., 913
F.3d 64, 76 (3rd Cir.1990). "[W]e apply the same test as the District
Court shold have used initially," id., at 76, to determine, if there
are any remaining issues giving him the benefit of every favorable
inference that can be drawn from the record. Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d
265 (1986). Reitz v. County of Bucks, 125 F.3d 139 (3rd Cir.1997).

## WAIVER OF SOVEREIGN IMMUNITY

This Honorable Court has stated in Dolan v. United States Postal
Service, 377 F.3d 285 (3rd Cir.2004); that it is a fundamental
principle of sovereign immunity that federal courts do not have
jurisdictioin over suits against the United States unleww Congress,
via a statute, espressly and unequivocally waives the united States
immunity to suit. United States v. Bein, 214 F.3d 408, 412 (3rd
Cir.2000) (citing United States v. Mitchell, 463 U.S. 206, 212, 103
S.Ct. 2961, 77 L.Ed.2d 580 (1983)). "[W]hen the Government does
consent to be sued the terms of [the] waiver of sovereign immunity
define the extent of the Court's jurisdiction." id. (quoting
United States v. Mottaz, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.
2d 841 (1986)). "Waivers of the Government's sovereign immunity,
to be effective, must be unequivocally expressed and any such

waiver must be construed strictly in favor of the sovereign. Id.

(quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33-34

112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)) (internal quotation marks

omitted). The FTCA vaives the government's sovereign immunity when

government employees act negligently within the scope of their

official duties. 28 U.S.C. § 1346(b).

The United States, Defendant's Memorandum of Law in Support of

of Defendant's Motion to Dismiss, or in the Alternative, Motion

for Summary Judgment states at 22 A:

> A. Plaintiff's Third Cause of Action should
> be dismissed due to Plaintiff's failure
> to exhaust this allegatoin prior to
> filing the Lawsuit

The United States continues to try to persuade this Honorable Court

to deny the Plaintiff's Third Cause of Action for retaliation against

the Government Officials for not exhausting administrative remidies

pursuant to Federal Tort Claims Act § 1346, and §§ 2675(a)-2680,

by not filing a Form 95.

This contention is misplaced by the United States Defendant's. In

the case of Hines v. Gomez, 108 F.3d 265, 269 (9th Cir.1997); The

Court stated ("[T]he injury asserted is the retaliatory accusation's

chilling effect on Hines First Amendment rights... We hold that Hines

failure to demonstrate a more substantial injury does not nullify

his retaliation claim"). cert. denied, ___U.S.___, 118 S.Ct. 2339,
141 L.Ed.2d 711 (1998): Dixon v. Brown, 38 F.3d 379 (8th Cir.1994)
(because the retaliatory filing of a disciplinary charge strikes
at the heart of an inmates constitutional right to seek redress
of grievances, the injury to this right inheres in the retaliatory
conduct itself."). As explained in Thaddeux v. Blatter, 175 F.3d 378
(6th Cir.1999), the Court explained that a prisoner cannot be retaliated
against for filing grreviances. The Court stated, just what are the
First Amendment rightsretained by prisoner? Plaintiffs here allege
a First Amendment retaliation claim. Specifically, the each claim to
have been punished for exercising their constitutionally protected
ritht to access the Courts, partially grounded in the First Amendment's
protection of the right to "petition the Government for a redress of
grievances." U.S. Const. Amend. I. It is well established that
prisoners have a constitutional right of access to the courts. See,
e.g. Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606
(1996); Bounds v. Smith, 430 U.S. 817, 821-24, 97 S.Ct. 1491, 52
L.Ed.2d 72 (1977)(listing case law supporting the right); Wolff v.
McDonnell, 418 U.S. 539, 577-80 94 S.Ct. 2963, 41 L.Ed.2d. 935 (1974)
(extending johnson, infra, to cover prisoner assistance in civil
right actions.); Johnson v. Avery, 393 U.S. 483, 488-90, 89 S.Ct.
747, 21 L.Ed.2d 718 (1969)(striking down prison prohibition against
inmates aiding one another with appications for habeas corpus);
Ex Parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941)
(striking a prison regulation that essentially screened all prisoner
habeas applications); Berryman v. Rieger, 150 F.3d 561, 567 (6th Cir.

(9)

1998)(It has long been recognized thatthe lawful resort to courts is part of the First Amendment right to petition the government for a redress of grievances") <u>John L. v. Adams,</u> 969 F.2d 228, 231-32 (6th Cir.1992)(listing sources for the right, including First Amendment). This is not a generalized "right to litigate" but a carefully bounded right, as Justice Scalia makes clear in <u>Lewis v. Casey,</u>

> Bounds does not guarnatee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional consequences of conviction and incarceration.

Lewis, 518 at 355, 116 S.Ct. 2174. Thus, a presoner's right to access theCourts extends to direct appeals, habeas corpus application, and civil right claims only. The importance of this right to incarcerated individuals is evident and can hardly be overstated.

> The right to file for legal redress in the Courts is as valuable to a prisoner as to any other citizen. Indeed, for the prisoner it is more valuable. Inasmuch as one convicted of a serious crime and imprisoned usually is divested of the franchise, the right to file a court action stands....as his must "fundamental political right, because preservative of all rights."

<u>Hudson v. McMillian,</u> 503 U.S. 1, 15, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)(Blackmun, J., concurring in the judgment).

The Plaintiff asserted and alleged in the Plaintiff's First Complaint and Second Amendmended Complaint that the Plaintiff was retaliated against for filing grievance. See (Plaintiff First and Second Amended Complaint).

The record show and demonstrate that the Plaintiff was ("Plaintiff was transfered from FCI-Mckean, institution and was relocated at FSL-Elkton where retaliation continued). Also, the record show that the ("Plaintiff has been at FCI-Mckean in 2002 and had not filed any grievance, until the assault incident on February 27, 2004). The record show that while at FSL-Elkton the Plaintiff was still having excruciating pain in my left eye and continued to seek medical attention and received none). The record show that :

        medical staff Ms. Barnes, Doctor Quinn, Doctor
        Keller, and the Eye Doctor, all participated
        in retaliating against the Plaintiff for filing
        grievances. The record show that the Plaintiff
        on numerous occasion requested that Plaintiff's
        left eye was still causing him pain and that
        surgery was needed. The record show that the
        eye surgions wanted to perform surgery but
        medical staff at FSL-Elkton refused to provide
        the Plaintiff with such treatment. The record
        show that Warden T.R. Sniezek, also denied
        the Plaintiff request to receive medical treatment
        and as a result, the Plaintiff os continuing to
        have present and future harm as a result of this
        negligence by medical staff for refusing to
        provide medical assistance to Plaintiff.


See, ("Plaintiff's First and Second Amended Complaint")

The Plaintiff as of this Day of April 12, 2006, is still having excruciateing pain, in my left eye, and my left eye will not elevate equally with my right eye, and my left eye is still entraped and has a fracture. See ("Plaintiff's First and Second Amended Complaint, and also, see Opposition to United States First Summary Judgment Motion, and attachments of the Orbital Specialist").

It is obvious that, the record show that the Plaintiff went to see a Orbital Specialist, and a Plastic Surgeon, and that the documents show that I was still having pain and that the happen on February 27, 2004, and after 5 months of pain that the Doctors wanted to perform surjury to release the entrapment of the blow-out fracture. The record show that the Orbital Doctors left the decision up to the Mckean Medical Staff, and they denied the Plaintiff Mecical Care. See (attachment 1). And as of this Day April 12, 2006, the Plaintiff is still having pain and my left eye will not elevate evenly with the right eye, and this negligence by FCI Mckean Medical Department was the cause of the Plaintiff present and future damages, and Plaintiff was retaliated by being transfered as a result.

The United States Brief at 24 states:

> B. The Individual Defendant's should be Dismissed from this Civil Action, because, United States Employees in their Official Capacities have not Waived Sovereign Emmunity from Suit under the Federal Tort Claim Act.

The Plaintff acknowledged supra., that the United States and the

Government Officials, ("Defendants") was reasserting the same
contention that sovereign immunity has not been waived by the United
States. The Plaintiff is aware, that in order to establish subject
matter jurisdiction, the Plaintiff must first overcome the discretionary
function exception, and show that the Defendant's negligence acts
sets froth a non-discretionary standard. First, the Plaintiff will
cite this Courts law, and then once again show the facts to waive
the United States sovereign immunity and establish subject matter
jurisdiction. This Honorable Court has set the standard based on
the Supreme Court's Law to overcome sovereign immunity. Also, see
("Plaintiff's First and Second Amended Complaint and Plaintiff's
Opposition to the United States First Motion for Summary Judgment")

In Gotha v. United States, 115 F.3d 176 (3rd Cir.1997); This Honorable
Court stated; the Federal Tort Claim Act is a ½artoa; abrogation of
the federal government's sovereign immunity that permits suits for
torts against the united States. The Act, however, imposes a significant
limitaition by providing that no liability may be asserted for a claim
"based upon the exercise or performance or the failure to exercise
or perfrom a discretionary fuction or duty on the part of a federal
agency or an employee of the Government, whether or not the discretionary
involved be abused." 28 U.S.C. § 2680(a). The statute does not define
"discretionary function or duty" and these terms have led to extensive
litigation over the scope of the government's liability to tort
claimants. It is clear that if the word "discretinary" is given a
broad construction, it could almost completely nullify the goal of
the Act. United States v. S.A. Empresa De Viacao Aerea Rio Grandense

(Vrig Airlines), 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984)(exception marks the boundary between Congress willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals"). The statutory language does not apply to every situation in which there is an actual option to choose between courses of action or inaction. Tather, as the Supreme Court has stated, the discretion that is immunized from "second-guessing" in the tort suit context applies to "legislative and administrative decisions grounded in social, economic, and political policy." id. at 814, 104 S.Ct. at 2765. In Berkovitz v. United States,486 U.S. 531, 537, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988), the Court explained: "The exception properly construed... protects only governmental actions and decisions based on consideration of public policy." The reason for "fashioning an exception for discretionary governmental functions" was to "protect the government from liability that would seriously handicap efficient government operation." Varig Airlines, 467 U.S. at 814, 104 S.Ct. at 2765. In Berkovitz, the Court adopted a two-state inquiry:

> First, a Court must consider if "a federal statute
> regulation, or policy specifically prescribes a
> course of action for an employee to follow". If
> so, "the employee has no rightful uption but to
> adhere to the directive." Id. consequently, there
> can be no lawful discretionary act.

If circumstance imposing compulsion do not exist, a Court must

then consider whether the challenged action or inaction "is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1959. Again, the Court emphasized taht the discretionary function exception insulates the government from liability if teh action ... involves the permissible exercise of policy judgment." Id. at 537, 108 S.Ct. at 1959. In the United States v. Gaubert, 499 U.S. 315, 325, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991), the Court explained that for a plaintiff's claim to survive, the challenged actions cannot "be grounded in the ploicy of the regulatory regime." The Court stressed that the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. see also Ochran v. United States, 117 F.3d 495 (11th Cir.1997); where the Court stated that AUSA Daltuva, violated a mandatory course of actiion to follow: The Court stated, Ochran, contends that the Attorney General Guidelines for victim and witness assistance (1991) [hereinafter Guidelines] imposed on AUSA Daltuva a mandatory coures of action. The relevantprovisions of the Guidelines states:

> consistent with the provisions of 18 U.S.C.
> [§§] 3521-3528, the responsive official
> shall make the necessary and approriate
> arrangements.

The Plaintiff alleged and asserted that when the Plaintiff was assaulted on February 27, 2004, that the Government Official Officer Weseman, was not in the Unit at the time of the attacks taken place. See ("First and Second Amended Complaint and Plaintiff's Opposition to Defendant's First Motion for Summary Judgment").

The record show that the Warden at FCI-Mckean james F. Sherman, stated in his Declaration that:

> 3. To my knowledge, on February 27, 2004, there was no BOP regulation, or policy, in effect which dictated the number of correctional officers, <u>the placement of correctional officer posts within a federal correctional or the specific duites assigned to correctional officers assigned to post within a BOP facility. The authority to determine the number, placement and specific duties of correctional officers BOP facility was and continues to be a matter within the discretion of each BOP Warden during normal operaton as well as during emergency situations.</u> See (attachment 2)

It is obvious that, the BOP did not have a regulatoin or policy to discribe a paticular duties for a correctional officer to follow and that discretion was left solely to the Warden at every BOP facility, and that the Warden at FCI-Mckean could implement the duties and responsibilities for officer's to follow during normal and emergency situations at FCI-Mckean.

The Declaration of the Warden continues to state that:

4. As the Warden at FCI-Mckean in February 2004,
it was my duty to determine how best to deploy
correctional officers and other staff to the
various posts within the compound, based upon
the sucurity needs of the institution and the
effective use of limited resources.

From the above statement from the Warden, james F. Sherman, which

states how ("best to deploy correctional officers and other staff

to the various posts within the compound") that the Warden was

placing officers based upon security needs and limited resources

to each housing Unit one officer and discribed the duites and

responsibilities that the officer was to follow because of limited

resources he had avaliable. Plaintiff note that this Declaration

states taht, this was implemented  and still enforced on February

27, 2004, before and after the assault.

The Wardens, James F. Sherman, Declaration also states at para. 5:

5. In February 2004, it was my determination, based
upon staffing levels, professional experience,
and institutional needs, that one correctional
officer would be posted on each side of each
housing unit. This Unit Officer would be
resonsible for supervising the inmates inside
the housing Unit by making frequent rounds
through all areas of the Housing Unit, conducting
safety and sanitation inspections, distributing
cleaning supplies, passes out mail, and conducting
cell searches and pat searches of inmates inside
the Housing Unit.

The record show through the Warden James F. Sherman that the

responsibility of Officer's at each Unit was to conduct and supervise the inmates inside the Housing Unit, by faking frequent rounds through all areas of the Housing Unit, conduct safety and sanitation inspections, distributing cleaning supplies, passess out mail, and conduct cell searvhes and pat searches of inmates, <u>inside</u> the Housing Unit. This responsibility was for the Officers to adhere and was to be followed by the Officers in each Unit at FCI-Mckean.

The Supreme Court states in Berkovitz, and Gaubert, that:

> In order forthe excepton to apply, two requirements must be met. <u>First</u>, as its label suggest, this exception shields the government from suit only when the complained-or act is discretionary, in the sense that it "involves an elemet of judgment or choice". Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273, quoting <u>Berkovitz v. United States</u>, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). Thus, where a "federal statute, regulation or policy prescribes a course of action for an employee to follow" and the employee devieates from that course, his/her acts are not immune from suit. Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273, quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958.

The Warden, James F. Sherman, gave all Officers at FCI-Mckean a regulation and policy for Officer's to follow and if they do not hadhere to the directive or deviates  from that regulation or policy, the Supreme Court states that employees are not immune from suit.

The record show from the Declaration of Brian Weseman, beginning
at para. 2, which states:

> 2. On February 27, 2004, I was assigned to the Custody
>    Post of Evening Watch Unit Officer in Unit A at
>    FCI McKean. This post ran form 4:00 p.m. through
>    12:00 a.m. As the Unit Officer, I was required to
>    be inside Housing Unit A <u>as well as outside of
>    the entrance of Unit A during controlled inmate
>    movements</u>. As the Unit Officer, I was responsible
>    for making security inspections inside the unit,
>    conducting cell searches, conducting pat searches
>    of inmates entering the housing unit, patrolling
>    the unit, and making rounds through inmate cells,
>    bathrooms and common areas, among other duties.

At the beginning of Officer Weseman, Declaration, it states a

contradiction from the responsibilities of the Wardens, regulation

and policy, because the Warden, never stated in his Declaration

that ("as well as outside of Unit entrance of Unit A during controlled

inmate movement"). The regulation and policy, by the Warden at

FCI Mckean, did not state the above and this is a non-discretionary

act and the Defendant's are not shielded from suit.

Also, the Declaration of Officer Weseman states at 4 that;

> 4. <u>On February 27, 2004, at approximately 8:15 p.m.
>    I was standing outside of the entrance to Unit A
>    monitoring inmates returning to the Unit during
>    the last controlled inmate movement of the day
>    in preparation for the 9:00 p.m. count.</u> During
>    the last inmate controlled movement inmates are
>    permitted to return from places outside of the
>    hosing Unit, including but not limited to, the

> recreation areas, the education department, the
> education department, the law library, psychology
> serivice, or religious service, in order to be
> present in their cells for the 9:00 p.m. count.
> <u>During this controlled movement, I would stand
> outside the entrance of Unit A, and conduct
> random checks of inmate identification cards
> and pat searches of inmates entering the housing
> Unit.</u>

It is obvious from the record and Declaration of Officer Weseman,
that the responsibilities and descretion was abused from the
regulation and policies, that the Warden, instructed Officer's to
follow, and the action taken by Officer Weseman, is not grounded
in the policy of the regulatory regime. Officer Weseman, concedes
to the Plaintiff Complaint and Second Amended Complaint, because
he states that he was standing outside at the time of the attacks
by Latin King Gang Members. See (Plaintiff's First, and Second
Amended Complaint, and the Plaintiff's Opposition to United States
request for Summary Judgment).

The record show that the Warden, James F. Sherman, specifically
prescribed a particular course of action and responsibility for
Officer's to follow and officer's had no right of deviating from
that course. See Berkovitz, which states:

> The Court adopted a two-stage inquiry" <u>First,</u>
> a court must consider must consider if " a
> federal statute, regulation or policy,
> specifically prescribes a course of action for
> an employee to follow." 486 U.S. at 536, 108
> S.Ct. at 1958. <u>If so, " the employee has no
> rightful option but to the employee has no
> option but to adhere to the directive.</u>

Therefore, this negligence by Officer Weseman, leaving the Unit unprotected and standing outside is a non-discretionary act and violated the Wardens, regulation, and policy, and sovereign immunity is waived because the Defendant's profromed duties was a non-discretionary act by not following the responsibilities which the Warden instructed Officer's to follow, and the Plaintiff has sustained present and future injuries as a result of this non-discretionary act by the defendant's. See (Plaintiff First and Second Amended Complaint and Opposition to United States Motion for Summary Judgment).

Also, by the Defendant Officer Weseman, negligence carelessness by leaving the Unit unprotected, the law states in Coulthurst v. United States, 214 F.3d 106 (3rd Cir.2000); under various fair readings of the complaint, this case similarly involves negligence unrelated to any plausible policy objectives. An inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent minded or lazy failure to notify the approriate authorities upon noticing the damaged cable, are examplesof negligence fairly encompassed by the allegation of the complaint that do not involve "considerations of public policy. ♥Gaubert, 499 U.S. at 323, 111 S.Ct. 1267. Such actions do not reflect the kind of consideration judgment "grounded in social, economic, and political policy" which the DFE is intended to shield from "judicial second-guessing." United States v. Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). If the Plaintiff can establish that negligence of this sort occurred, his claims are not barred by the DFE, and he is entitled to recover under the FTCA.

In Palay v. United States, 349 F.3d 418 (7th Cir.2003); the Court
stated; as in Coulthurst, it is easy to imagine a scenario in which
MCC Officials behaved in a negligent fashion, but without making
the types of discretionary judgment that the statutory exception
was intended to exempt from liability. Perhaps the correctional
officer monitoring the holdover Unit at the time that the gang
altercation broke out was simply asleep, for example. Or perhaps he
left the Unit unattended in order to injoy a cigarette or a snack.
That typ of carelessness would not covered by the discretionary
function exception, as it involves no element of choice or judgment
grounded in public policy consideration. Coulthurst, 214 F.3d at 109-.
10; Santana-Rosa, supra, 335 F.3d U.S. at 45 (discussing United States
Muñiz, supra, 374 U.S. at 152, 83 S.Ct. at 1852); see also Gaubert,
499 U.S. at 325 n. 7, 111 S. Ct. at 1275 n. 7.


At para. 5 Officer Weseman, Declaration it states:


> 5. On February 27, 2004, I did not observe any
> inmate-on-inmate assaults or fights, and no
> inmate assault or fights were reported to me
> at no time during my shift did I observe any
> activity or noise which would lead me to
> believe that inmate Darryl Orrin Baker Reg.
> 19613-039, was at risk of assault, or had been
> injured as a result of an accident or a
> physical altercation with any other inmate in
> Unit A.


If this Honorable Court will examine this Declaration, this Court
will agree that the Declaration is contradicting because, there
is no way Officer Weseman, could have seen the Plainitff assaulted

If he admittes that he is outside of the housing Unit conducting
pat downs, and searches which the Warden stated that these responsibilities
should be done inside the houseing Unit. Therefore, sovereign immunity
is waive because Officer Weseman, actions are non-discretionary,
because these acts violated the responsibilities the Warden istructed.
See (Painitff's First, and Second Amended Complaint and Plaintiff's
Opposition to Unites Staets request for Summary Judgment).

The United States and Government Officials Brief at 25 states:


      C. Punitive Damges are Barred Under the FTCA


The Plaintiff is aware that the Plaintiff raised a request for relief
for:

        A. Negligence of the Medical Department Defendant's
           and being the proximate cause of the Plaintiff's
           injuries.

        B. Plaintiff's demand for a Trial by Jury, or Bench
           Trial.

        C. Award the Plaintiff money damages against the
           Federal Agency or the Defendant's United States
           and Government Officials.

        D. Award the Plaintiff compensatory damages against
           the Defendant's Government officials.


The Plaintiff is aware that for negligence, actual damages must be
proved. These actual damages are called compensatory damages because

they compensate the Plaintiff and attempt to make the Plaintiff whole.
Compansatory damgaes include pain and suffering, lost wages and
medical bills. If the Defendant's conduct is seen as reckless and
outrageous, then punitive damages can be awarded also. Punitive
damages don't compensate, but punish and deter extremeld bad conduct.

Wherefore, the Plaintiff acknowledged that if this Honorable Court
puniative damages for the negligent act of the Defendant's and
against the United Staets and the Federal Agency or whatever relief
deemed fair and just.

The United States Brief at 26 states:

           D. Plaintiff's Request for a Jury Trial Must be Denied

The United States Brief states, that, the Plaintiff requested for
a trial by jury which is correct, but the United States overlooked
the fact that, the Plaintiff also requested a bench trial for this
Honorable Court to determine first whether the Plaintiff established
subject matter jurisdiction and whether the facts prove that the
discretionary function exception does not apply. The Plaintiff is
aware that this Honorable Court can demand for a jury trial if the
Plaintiff has proved facts that could go to a jury for a determination
of those facts. Also, the United Staets has cited the case of Statland
v. United States, 178 F.3d 465 (7th Cir.1998); which is a Tax Court
case, and is inopposit to the FTCA standard for factual determination,

(24)

and this case cannot be trusted for a FTCA decision of the facts. See (United Staets Summary Judgment Brief at 26)

Also, the United States brief at 26 states:

> E. The Failure to Protect Allegation should be Dismissed for Lack of Subject Matter Jurisidction because the United Staets has not Waived Sovereign Immunity in Matter Involving the Discretionary Function of Government.

For The proposition of this contention by the United States, the Plainitff well reyl on hte Plaintiff Oppositon to the Defendant's Motion to Dismess Plaintiff's Complaint, or in the Alternative, for Summary Judgment because the above contention is the same contention that was raised in the First Motion for Summary Judgment. But the Plaintiff will address these contention again and show this Honorable Court that, 18 U.S.C. 4042 applies because the Defendant, Officer Weseman did not use a judgment or choice based on his carelessness for leaving the Unit unportected when the Plaintiff was assaulted by the two Latin King Gang Members.

The United States, states, that, the Plaintiff posit two agruments:

> {1} FCI-Mckean failed to post sufficient staff in the housing unit.
>
> {2} Staff at FCI Mckean failed to seperate hem from his assailants prior to the assault.

The United States seems to protest and contend that the Plaintiff raised the above arguments but this is not what the Plaintiff raised in his First and Second Amended Complaint, and Opposition to the United Staets Motion for Summary Judgment.

The Plaintiff did not raise that, {"FCI Mckean Failed to Post Sufficient Staff in the Housing Unit"}. The Plaintiff raised that Officer Weseman, was negligent for leaving the Housing Unit for one hour and was outside of the Unit, when the Plaintiff was assaulted by the two Latin King Gang Members. Also, the Plaintiff did not raise nowhere in the Plaintff's First and Second Amended Complaint that, {"Staff at FCI Mckean failed to Separate him from his Assailants Prior to the Assault"}. The Plaintiff did not raised any of this contention by the United Staes, and this Honorable Court should not address them because they have no relevancey to what the Plaintiff raised and is misleading to this Honorable Court based on the facts. See {"Plaintff Opposition to the United States Defendant's Motion to Dismiss Plaintiff's Complaint or in the Alternative, for Summary Judgment"}.

In this same contention by the United States at 30, cites the Statute 18 U.S.C. 4042, which states:

> The duty of care owed by the Bureau of Prisons to the inmate population is set forth at 18 U.S.C. 4042(a)(2)-(3) states, in pertinent part, the BOP must provide "suitable quarters and provide for the safekeeping, care, and subsistence of all (Federal inmates while it is true that the statute sets forth a mandatory duty of care, it does not,

however, direct the manner by which the BOP personnel
should engage in or avoid while attepting to fullfill
their duty to protect inmates. " Calderon v. United
States, 123 F.3d 947, 950 {7th Cir.1997}. The Statute
assesses only the general responsibilities of BOP
to ensure the Safekeeping, care, and protection of
inmates. The absence of specific guidelines of
appropriate conduct by BOP Officials in Administering
these duties. therefore, leaves judgment or choice
to BOP Officials.

The Plaintiff is aware that the Statute 18 U.S.C. 4042 did not

set forth any manner by which the BOP must fullfill this duty,

and the statute sets fro not particular conduct the BOP personnel

should engage in or avoid while attempting to fullfill their duty

to protect inmates. But, the Wardern's James F. Sherman's Declaration

gave the Orricers at FCI Mckean responsibilities to follow and

these regulations and policies was in affect on February 27, 2004,

at the tiem of the assault, and this carelessness by Officer

Weseman, leaving the Unit unportected was not based on judgment or

choice because he did not follow the instruction by the Warden

and is not shielded by the discretionary function exception because

his negligence. The Warden's Declaration specifically gave Officer's

responsibilities and the Wasrden was aware that there was no BOP

Regulation or Policy in effect. In fact, the Warden's Declaration

at page 1 and 3 states:

        to my knowledge, on February 27, 2004, there was
        no BOP Regulation or Policy om effect which dictated
        the number of correctional officers, the placement of
        correctional officer's posts within a federal
        correctional institution, or the specific duties
        assigned to posts within BOP Facility. The authority

to determine the number, placement and specific
duties of correctional officers within a BOP
Facility was and continues to be a matter within
the discretion of each BOP Warden during normal
operatoins as well as during emergency situations.

See {"Plaintiff's Second Amended Complaint and Opposition to
United States Motion for Summary Judgment"}.

The above states that it was the Warden who determines howto deploy
Officer's and where to place them in the housing unit, and also,
the responsibilities to follow. Therefore, the Warden was aware
that 18 U.S.C. 4042 did not provide a direct manner in which the
BOP Staff was to carry out there duties, so, the Warden James F.
Sherman, implememted his own regulation and policies, and gave
responsibilities, for officers to follow and they had no alternative
but to follow that directive, and adhre to it. See Gaubert, 499 U.S.
315, 325, 111 S.Ct. 1267. Officer Weseman, violated these regulations
and policies when he was outside from 8:15 p.m. to 9:00 p.m., when
the Plaintiff was assaulted and Officer Weseman, performed a non-
discretionary act and is not shielded from suit by the Plaintiff,
because it was not based on a element of judgment of choice. See
{"Plaintiff First and Second Amended Complaint and Plaintiff's
Opposition to United States First Motion for Summary Judgment"},
see also, {"Warden's and Officer Weseman Declaration attachment 2"}

The United States Brief states at 30 that:

> Plaintiff cites no Statutes, Regulation, or BOP
> Policies that Remove the Discretion from Prison
> Administrators in Determining Staff Duties and
> Patterns within Housing Units or Determining
> which inmates to place in the same Housing Units
> General Population.

This in incorrect by United States, because the Warden stated {"

It was and continued to be at the BOP within the discretion of the

Warden during normal operation as well as during emergency situation.

The record show that the Warden implemented his on Regulation and

Policy, and discribed the responsibilities that officer's where to

follow inside the housing units. the Declaration of the Warden states,

> In February 2004, it was my determination, based
> upon staffing levels, professional experience, and
> institutional needs, that one correctonal officer
> would be posted on each side of each housing unit.
> This Officer would be responsible for supervising
> the inmate inside the housing unit by making the
> frequent rounds through all areas of the housing
> unit, conducting safety and sanitations inspections,
> distributing cleaning supplies, passes out mail,
> and conducting cell searches and pat searches of
> inmates inside the housing unit.

It is obvious from the record that there has been a breach of duty

by Officer Weseman, leaving the Unit and conducting pat down searches

and checking identification cards of inmates, outside the housing

unit. See {"Warden's Declaration and Officer Weseman's Declaration

because they both contradict one another"}.

The Plaintiff has set forth facts from witnesses that saw that

that Officer Weseman, was not in the housing unit at the time of the
assault and that the record showform Officer Seseman own addmission
that, he concedes that, he was not in the housing unit from 8:15 p.m.
to 9:00 p.m., when Plaintiff was assaulted by the Latin King Gang
Members. This negligent act and breach of the Warden's Regulation,
and Policy does not shield this Government Official from suit by
the Plaintiff because a non-discretoinary act has been committed by
the Defendant by Officer Weseman, leaving the unit and not following
the responsibilities that the Warden implemented. The United States
seems to overlook the fact, that, these responsibilities was submitted
in the Warden's Declaration and was in afffect on February 27, 2004,
at the time of the assault and instructed Officer's and gave them
responsibilities to follow, and Officer Weseman did not adhere to
the directives when he did pat dwon searches, and checked indentification
cards outside the unit, when the Warden's Declaration stated that
hish: repsonsibilities where to be conducted inside the housing unit.

The United States Brief staes at 35 that:

> F. Plaintiff Failed to Establish that Staff at
> FCI Mckean failed to Protect Him form Danger
> because the Act of His Assailants was an
> Unforeseeable Intervening and Superceding
> Act.

United States once again miscontutes the facts ofthis case. The
record show that Officer Weseman, was not in the Housing Unit at
the time of the assault on Plaintiff, and Office Weseman, concedes

that he was not in the Unit at the time of the assaut and he was
out of the unit from 8:15 to 9:00 p.m., see {"Officer Weseman,
Declaration"}. The record show that the Warden, was aware of 18
U.S.C. 4204 and that there was no regulation or policy to discribe
the specific duties of correctional officers within a BOP Facility
and that his negligent acts cause the Plaintiff the protection,because
the Warden specifically instructed Officers to {make frequent rounds
around the unit}. this negligent acts caused the Plaintiff present
and future harm because the Plaintiff assailants had committed the
assaulted acts and Officer Weseman was unaware of what took place,
because he states in his own self serving Declaration that he did not
know that the Plaintiff has been assaulted or what took place in the
housing unit. See {attachment 2}

The United States, states at 38 that:

        Though neither Plaintiff nor his cellmates may
        have seen officer Weseman in the Unit at the
        time of the assault, it does not necessarily
        follow that Officer Weseman was not in or at
        the door of the housing unit.

This statement by the United States is contradicted by Officer
Weseman, Declaration, because he speceffically stated that he was
outside the housing unit. It is obvious that Officer Weseman, acts
could be foreseen based on his nebligence by leaving the Unit
unprotected and not following the Warden's Regulation and Policy.
The fact remains that, based on the negligent acts of a federal

employee that they have violated a federal statute, regulation or policy, they are not immune from suit. See Gaubert, 499, 315, 325, 111 S.Ct. 1267.

The record show that from Officer Weseman's own admission that he conceded that from 8:15 p.m. to 9:00 p.m., he was not in the Housing Unit of Unit A. It show that it Officer Weseman, would have been in the unit for the responsibility instructed by the Warden, these unforeseen acts by the Latin King Gang Member's possibly this assault by the Latin King Gang Members would not have taken place, because they would have been aware of the officer 's presence in the unit. See {"Plaintiff's First and Second Amended Complaint"} See (attachment 8 witness affidavit)
The United States Brief at 42 states.


      G. Plaintiff was not Subjected Medical Malpractice

          With respect to Plaintiff's allegation of
          Medical Malpratice by Bureau of Prisons
          Medeal Ctaff, he has failed to allege
          facts establishing a causal link between
          the medical care provided by Bureau of
          Prison Staff, the alleged injuries and
          and futute injuries caused from the
          assault.


The United States protestations are incorrect. The Plaintiff has set forth facts from the record that show, that the Medical Department at FCI Mckean was the proximate cause of Plaintiff present and future injuries from the delay of the Plaintiff having

surgery from the Blow-Out Fracture with Entrapment that was recommended by the Orbital Specialist because even unit this Day April — 12 —, 2006, the Plaintiff is still having severe and excruciateing pain in the left eye as a result of this negligence to allow surgery to be perfromed. See {"Plaintiff's First and Second Amended Complaint and the Orbital Specialist Document attachment 3"}.

The law states that, in order for a Plaintiff to sustain a cause of action for Medical Malpractice, five {5} critera's must be met. The Plaintiff has met this critera's based on the facts of this case.

{1} The physician owed a duty to the patient.

{i} The record show, that, the United States owed aduty of care to Plaintiff. See 18 U.S.C. 4042.

{2} The physician breached that duty.

{ii} The record show that the Plaintiff has been complaining about the Blow-Out Fracture with Entrapment, for approximately 14 months and still is having pain today, and the Orbital Specialist wanted to perform surgery to release the entrapment but the United States Government Officials denied the request. See {"Plaintiff's First and Second Amended Complaint and attachment 3"}.

{3} The breach of duty was the proximate cause of or a substantial factor in, bringing about the harm suffered by the patient.

{iii} The record show that the Plaintiff has provided this Honorable Court documentation when the Plaintiff was in SHU and when the Plaintiff was out of SHU that this delay from not perfroming surgery as the Orbital Specialist

instructed has causedthe Plaintiff present
and future injuries. See {"First and Second
Amended Complaint and the Plaintiff's Opposition
to United States First Motion for Summary
Judgment"}

{4} The damage suffered by the patient were a direct
result of that harm.

{vi} By the Defendant' Government Official at
FCI-Mckean delaying to do surjury on the
Plaintiff' Orbital Fracture with Entrapment
it has cause Plaintiff present and future
injuries.

{5} Moreover, the patient must offer an expert witness
who will testify to a reasonable degree of Medical
Certainty, that the acts of teh physcian deviated
from good and acceptable standards, and that such
deviation was the proximate cause of the harm
suffered.

The Plaintiff record show that,the Plaintiff went out of FCI

Mckean on several occasions to see a Orbital Specialist and

Plastic Surgeon, and they indicated that they usually would wait

a certain amount of time and weeks to see if the injury would heal

on it's own. But, it did not, and surjury was recommended. See

{"Plaintiff's First and Second Amended Complaint and attachment 3"}.

The Plaintiff is certain, that, if the Orbital Specialist and

Plastic Surgeon, was called to testify the will to testify to the

facts will prove that the Plaintiff has sustained present and

future injuries from the Orbital Fracture and Blow-Out Fracture with

Entrarpment.

The United States Brief at 44 states:

> The Evidence reveals Medical Staff made rounds
> through the Special Housing Unit {SHU} twice
> each day, however, Plaintiff did not report
> any Medical Issues to Staff during these
> rounds.

These statements and protestation by the United States is incorrect,

and contradicted by the record. See {"Plaintiff's First and Second

Amended Complaint and attachment 4 SHU Ducument's"},

These documents show that while in SHU that the Plaintiff continued

to complain of the injuries that was sustained to the Warden and

Assistant Warden while in SHU dated march 12, 2004, because the

Plaintiff was released from SHU on March 26, 2004. See {attachment 5}

Plaintiff's facts are clear and is substantiated by the record

thatthe Plaintiff is still even until this Day April $\frac{12}{}$, 2006,

having pain in my left eye and my left eye will not go up evenly

with the right eye. The record show that the Plaintiff has not

received surjury from the Blow-Out Fracture to release the Entrapment

and the Plaintiff is still having excriciating pain in my left eye.

The Plaintiff acknowledge that, I have been here at Lewisburg Camp

and has not seen a Eye Doctor or a Orbital Specialist, or had surjury

on my left eye to release teh Entrapment. See {"attachment 6"}

See also, {"Plaintiff's First and Second Amended Complaint and

Plaintiff Oppostion to United States First Motion for Summary

Judgment.

The United States Brief at 54 states:

>       Even Assuming Arguendo that Bureau Staff
>       Negligently Failed to Protect Plaintiff
>       and Subjected Plaintiff to Medecal
>       Malpractice any Recovery by Plaintiff
>       in this case should be Barred by his own
>       Comparative Negligence.

>       In this case, Plaintiff shold be barred
>       from recovery, because his failure to
>       report to Staff that he was at risk of
>       harm by other inmates and by failing to
>       report physical injuries to Staff immediately
>       after the incident is greater than the
>       negligence if any, of the Prison Medical
>       Staff

The record reveal that, there was no immediate risk to Plaintiff

because the record show that the two Latin King Gang Members came

and assaulted Plaintiff after they got intoxicated and came and

assaulted the Plaintiff. See ("attachment 7")

Also, at page 55 of the United States Brief it states:

>       To the extent Plaintiff alleges his injuries
>       were exacerbated by a delay or lack of medical
>       care, the evidence further show unequivocally
>       that after the assault, Plaintiff failed to
>       report to Staff.

The record show that based on teh negligence act of the Officer

Weseman, at FCI Mckean not knowing that the Plaintiff has been

assaulted by two Latin King Gang Miember's this was a continual

pattern of Statt Member not knowing what was going on at the

FCI Facility. The law states that if any Officer leave the Unit

unprotected they are not immune from suit. Staff was unaware that

a assault had taken place and any injury was sustained to Plaintiff.

> Perhaps the correctional officer monitoring the
> hold over Unit at the tiem that the gang altercation
> broke out was simply asleep, for example, or perhaps
> he left the Unit Unattended in order to enjoy a
> cigarette or a snack. That type of carelessness would
> would not be covered by the discretionary function
> exception, as it involves no element of choice or
> judgment grounded in public policy consideration.
> See Coulthurst, 214 F.3d at 109-10.

This two day delay still would not have excerbated the injury like

the United States contends because the injury was already sustained

after the assault, and was excerbated after the Medical Department

refused to give the order forthe Plaintiff to have surjury like

the Orbital Specialist and Plastic Surgeon indicated that it was

needed. See ("attachment 3 Orbital Specialist letter to the Mckean

Staff")

The United States Brief at 56 states that:

> The Evidence shows that while in SHU, Plaintiff
> Failed to request Medical Help for nearly two
> weeks.

This is a fabrication by the United States and ia a contradiction

from the record, becuase hthe record show that while in SHU, the

Plaintiff began to complain about my left eye problem immediately

and the first request was on Monday March 1, 2004. See ("attachment 4")

And while the record is unequivocally correct that while in SHU, the Plaintiff was denied Medical Treatment to my left eye and was exacerbated by the negligence by medical Staff not letting the Plaintiff see a Eye Doctor or a Eye Specialist.

The United States protest taht the Plaintiff was the contributor of his injury but if this Honorable Court will examine the record, this Court will agree that the United States is showing from the record the dates on this contention because record show that while in SHU the Plaintiff requested on numerous occasion that the Plaintiff was requesting medical attention for my left eye and received non. See ("attachment 4").

The Plaintiff is now 14 months out, and still has not had surjury for the injury to my left eye like the Orbital Specialist instructed and the Plaintiff is still having excruciating pain and the Plaintiff left eye will not elevate up as far as the right eye.

## CONCLUSION

Based on the facts and documents, and affidavits, of this case, the Plaintiff has established subject matter jurisdiction and the United States and the Government Officals sovereign immunity is waived because the facts show that a non-discretionary act was committed by the Defendant's and the Discretionary Function exception does not appy and a material fact exist in this case. Also, the record show and reveal that, the Medical Department negligence was the proximate cause of the Plaintiff injuries, based on the documents by the Orbital Specialist and the Plastic Surgeon, and the Plaintiff has not receive any surjury for my left eye and now I am 14 months out, and is still having present and future harm.

**Wherefore,** the Plaintiff request compensatory damages, and all damages in the Fist and Second Amended Complaint, and all negligence damages from the Defendant's and all damages against the Federal Agency pursuant to the FTCA, or any relief that deemed fair and just.

Respectfully submitted

BY: _Darryl Baker_
Darryl Orrin Baker
  **(PRO-SE)**
Reg. No.# 19613-039
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA
17837

EXECUTED: APRIL _12_, 2006

(39)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Plaintiff's Opposition to United States Government Officeals Defendant Memorandum of Law in Support of Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment was sent United States First Class Mail on this Day April _12_, 2006, to and upon the following.

Paul E. Skirtch
Assistant United States Attorney
Western District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburgh, PA.
15219

Respectfully submitted

BY: _Darryl Baker_
Darryl Orrin Baker
**(PRO-SE)**
Reg. No.# 19613-039
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA.
17837

**EXECUTED: APRIL** _12_, **2006**

(ATTACHMENT 1)

# SENECA EYE SURGEONS

Robert J. Weiss, M.D.          Timothy J. O'Brien, M.D.          Nicholas A. Stathopoulos, M.D.

April 16, 2004

*# 19613 - 039*

| | |
|---|---|
| Dr. H. Beam | Re:  Darryl O. Baker |
| Health Center | DOB:  6/30/1962 |
| FCI McKean | DX:  Orbital Floor Fracture w/Entrapment |
| PO Box 5000 | DATE OF EVAL:  <u>4/15/04</u> |
| Bradford, PA 16701 | |

Mr. Baker was seen April 15th. He had been struck in the left eye February 27th with a fist. He was complaining of blurred vision in both eyes. He does note that he gets double vision when he looks up. This is especially noticeable when he is weight lifting and doing, I believe, bent over rows and is looking straight ahead with his head tilted down.

His vision was 20/100 in the right eye and 20/200 on the left. This was easily correctable to 20/20 in either eye with an eyeglass prescription. The eyes were well aligned straight ahead. However, with up gaze the left eye did not elevate or look as far up as the right eye. I did not see any signs that the left eye was protruding further out or recessed into the eye more so than the right. The retina was normal.

The reports of the CT did suggest that there was some scarring of the floor of the orbit with possible adhesions to the inferior rectus muscle. Typically, in ophthalmology even with a fracture of the orbital floor, we like to wait at least two weeks to see that it heals on its own and the muscle entrapment is resolved. He is about six to eight weeks out and complaining of symptoms. Because he is well aligned at near, I think it would be better to take a conservative approach as the scarring is adherent to the muscle. However, it may be worthwhile to get a secondary opinion from an orbital plastic specialist who deals with these on a regular basis.

Thank you for allowing me to participate in Darryl's care. If you do not pursue an orbital evaluation, have him see me again in another three months.

Best regards,

Nicholas A. Stathopoulos, M.D.

NAS/js

Cc   Darryl C. Baker

REVIEWED BY: *Beam 4/21/04*  H. BEAM, MD FCI MCKEAN

| | | |
|---|---|---|
| 103 West St. Clair Street | 27 Porter Avenue | 2 Main Street |
| Warren, PA 16365 | Jamestown, NY 14701 | Bradford, PA 16701 |
| (814)726-2020 | (716)483-2020 | (814)362-7477 |
| 1-877-MD4-EYES | 1-866-716-EYES | 1-866-814-EYES |
| Fax (814)726-1215 | Fax (716)488-9295 | Fax (814)362-4975 |

# SENECA EYE SURGEONS

Robert J. Weiss, M.D.          Timothy J. O'Brien, M.D.          Nicholas A. Stathopoulos, M.D.

May 3, 2004

Dr. Nicholas Stathopoulos
Seneca Eye Surgeons, Inc.
2 Main Street
Bradford, PA 16701

RE: BAKER, DARRYL O.                    # 19613-039

Dear Dr. Stathopoulos:

I saw Mr. Baker, your 41 year old who was struck in his left eye approximately two months ago. He is complaining at this point in time that his acuity although it has returned to normal he does get a feeling of double when he looks to the right. He also has a sensation of a foreign body in it.

On examination at this time, his acuity is 20/20 OU. There is definitely no proptosis and there is no enopthalmos. He does get diplopia. It is worse especially when he looks to the right and upwards. He does not get this looking straight ahead or down. So, he is really quite functional. I watched him walk around and he does not have to close the eye to walk.

He had a small calcium deposit in his meibomian gland in his lower lid. I removed it with tweezers. On examination of the retina he has no evidence of papilledema or compromise of any of the other structures.

I went over the CT scan. That is a very pretty picture of a floor fracture. At this point in time in the absence of diplopia in a straight ahead gaze, I still think that six more weeks of time is the answer. If at three months he definitely still has diplopia and it is causing him some serious problems it should be repaired. He still may completely clear. Fortunately despite the nastiness of this injury he sustained no obvious damage to his human lens, the anterior chamber angle or the retina.

Yours truly,

*Robert J. Weiss md*

Robert J. Weiss, M.D.

Reviewed by D. Olson, MD
Date 5/5/04                    **COPY**

Cc: Dr. Beam

RJW/lab

103 West St. Clair Street          27 Porter Avenue          2 Main Street
Warren, PA 16365          Jamestown, NY 14701          Bradford, PA 16701
(814)726-2020          (716)483-2020          (814)362-7477
1-877-MD4-EYES          1-866-716-EYES          1-866-814-EYES
Fax (814)726-1215          Fax (716)488-9295          Fax (814)362-4975

www.senecaeye.com

# SENeCA ⬥ SURGEONS

Robert J. Weiss, M.D.            Timothy J. O'Brien, M.D.            Nicholas A. Stathopoulos, M.D.

June 11, 2004

\# /9613-039

Dennis Olson, M.D.
FCI McKean
P.O. Box 5000
Bradford, PA 16701

RE: BAKER, DARRYL

Dear Dr. Olson:

As you know we have been following Mr. Baker's clinical diplopia related to a punch that gave him a blow out fracture. He also has a little bit of anesthesia involving the infraorbital nerve branches. We have given it plenty of time now, almost five months. He still has entrapment; he can not look up with his left eye without experiencing a form of diplopia that gives him extreme imbalance. He does not think that he can function this way.

His acuity is 20/20 in both eyes when he wears his glasses. My advice at this point is to do a repair of blowout fracture, release the entrapment under general anesthesia. I will leave the final decision up to you.

Yours truly,

*Robert J Weiss md*

Robert J. Weiss, M.D.

p.s. The patient understand that one of the side effects of doing the operation when he does not have diplopia in down gaze, only up gaze would be that he might develop diplopia in down gaze. There is no way that I can promise him that that couldn't happen.

RJW/lab

*H. BEAM, MD*
*FCI MCKEAN*
*6/16/04*

103 West St. Clair Street          27 Porter Avenue          2 Main Street
Warren, PA 16365          Jamestown, NY 14701          Bradford, PA 16701
(814)726-2020          (716)483-2020          (814)362-7477
1-877-MD4-EYES          1-866-716-EYES          1-866-814-EYES
Fax (814)726-1215          Fax (716)488-9295          Fax (814)362-4975

www.senecaeye.com

(ATTACHMENT 2)

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,        :
           Plaintiff,    :
                         :

   - v -               :     Civil Action No. 05-147 (Erie)
                         :

UNITED STATES, et al.,       :
           Defendants. :

DECLARATION OF BRIAN WESEMAN

I, Brian Weseman, make the following declaration under penalty of perjury:

1.     I am employed as a Senior Officer, United States Department of Justice, Federal Bureau of Prisons, Federal Correctional Institution, McKean, Pennsylvania. I have been employed by the Federal Bureau of Prisons since approximately January 4, 1999. I have been employed as a Senior Officer at FCI McKean since approximately January 11, 2004.

2.     On February 27, 2004, I was assigned to the Custody Post of Evening Watch Unit Officer in Unit A at FCI McKean. This post ran from 4:00 p.m. through 12:00 a.m. As the Unit A Officer, I was required to be inside Housing Unit A as well as outside of the entrance of Unit A during controlled inmate movements. As the Unit Officer, I was responsible for making security inspections inside the unit, conducting cell searches, conducting pat searches of inmates entering the housing unit, patrolling the unit, and making rounds through inmate cells, bathrooms and common areas, among other duties.

3.     Unit A is a large, double-tiered, triangular-shaped housing unit, with a capacity of approximately 156 inmates. One Unit Officer is assigned to this housing unit.

4.     On February 27, 2004, at approximately 8:15 pm, I was standing outside of the entrance to Unit A, monitoring inmates returning to the Unit during the last controlled inmate movement of the day in preparation for the 9:00 p.m count. During the last inmate controlled movement, inmates are permitted to return from places outside of the housing unit, including, but not limited to, the recreation areas, the education department, the law library, psychology services, or religious services, in order to be present in their cells for the 9:00 p.m. count. During this controlled movement, I would stand outside the entrance of Unit A, and conduct random checks of inmate identification cards and pat searches of inmates entering the housing unit. Prior to the announcement of the controlled movement at approximately 8:15 p.m., I would be inside the housing unit doing any of a number of different duties, including, but not limited to making rounds, completing documentation, reviewing the inmate bed book, and inspecting various areas inside

the housing unit.

5. On February 27, 2004, I did not observe any inmate-on-inmate assaults or fights, and no inmate assaults or fights were reported to me. At no time during my shift did I observe any activity or noise which would lead me to believe that inmate Darryl Orrin Baker, Reg. No. 19613-039, was at risk of assault, or had been injured as a result of an accident or a physical altercation with any other inmate in Unit A.

6. Had I learned or suspected that inmate Baker, or any other inmate in Unit A was physically injured during my shift, I would have immediately notified the Operations Lieutenant of the injury.

I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this    7+h    day of December, 2005.


Brian Weseman
Senior Officer
Federal Correctional Institution
McKean, PA

-2-

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,           :
            Plaintiff,         :
                              :
    v.                         :    Civ. Action No. 05-147 (SJM-SPB)
                              :
UNITED STATES, et al.,         :
            Defendants.        :
                              :

**DECLARATION OF JAMES F. SHERMAN**

I, James F. Sherman, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am the Warden at the Federal Correctional Institution (FCI), McKean, Pennsylvania.  I have been employed as the Warden at FCI McKean since approximately January 26, 2004.

2.  In February 2004, the general population at FCI McKean consisted of 4 inmate housing units (not including the satellite prison camp), Unit A, Unit B, Unit C, and Unit D.  Each housing unit consisted of two sides, A or B.  The Housing Units were identified by unit and side; for example, Unit AA, Unit AB, Unit BA, Unit BB, etc.  Each side of each housing unit housed approximately 150 to 160 inmates.

3.  To my knowledge, on February 27, 2004, there was no BOP regulation or policy in effect which dictated the number of correctional officers, the placement of correctional officer posts within a federal correctional institution, or the specific duties assigned to correctional officers assigned to posts within

1

a BOP facility. The authority to determine the number,
placement and specific duties of correctional officers within a
BOP facility was and continues to be a matter within the
discretion of each BOP Warden during normal operations as well as
during emergency situations.

4.  As the Warden at FCI McKean in February 2004, it was my
duty to determine how best to deploy Correctional Officers and
other staff to the various posts within the compound, based upon
the security needs of the institution and the effective use of
limited resources.

5.  In February 2004, it was my determination, based upon
staffing levels, professional experience, and institutional
needs, that one correctional officer would be posted on each side
of each housing unit. This unit officer would be responsible for
supervising the inmates inside the housing unit by making
frequent rounds through all areas of the housing unit, conducting
safety and sanitation inspections, distributing cleaning
supplies, passes out mail, and conducting cell searches and pat
searches of inmates inside the housing unit.

6.  On February 27, 2004, inmate housing assignments at FCI
McKean was a matter left to the discretion of the Warden, upon
the advice of staff.

7.  In February 2004, the decision as to which inmates
should be separated, placed in administrative detention or

2

~~recommend be moved to other facilities was also a matter left to~~ the discretion of each BOP Warden that took into consideration numerous factors, including the safety of inmates, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited resources.

8.    In February 2004, the decision to assign an inmate to general population, as opposed to administrative detention was a matter left to the discretion of each BOP Warden based upon available information and the availability of limited resources.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this ___8___ day of December 2005.

JAMES F. SHERMAN
Warden
Federal Correctional Institution
McKean, Pennsylvania