IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,                              )
                                                 )
            Plaintiff,                           )
                                                 )
VS.                                              )    CIVIL ACTION   NO.# 05-147-ERIE
                                                 )    APPEALS ACTION NO#
UNITED STATES OF AMERICA                         )
GOVERNMENT OFFICIALS   AT                        )    HONORABLE JUDGE MCLAUGHLIN
FCI-MCKEAN, WARDEN, OFFICER      '07  SEP -6  )P 2
B. WESEMAN, MEDICAL  DEPARTMENT                  )
                                                 )
            Defendant's.                         )
                                                 )
                                                 )

THE PLAINTIFF'S OPPOSITION TO THE ANSWER OF
THE FEDERAL DEFENDANT'S TO PLAINTIFF'S
SECOND [SIC] AMENDED COMPLAINT

NOW COMES the Plaintiff DARRYL ORRIN BAKER (hereinafter "PLAINTIFF"), and proceeding

**pro-se**, and respectfully  moves this Honorable Court to **deny** the Government's

Answer of the Federal Defendant's to Plaintiff's Second [sic] Amended Complaint,

because a material fact exist and a non-discretionary act was committed by the

Defendant's negligence and the medical department was the proximate case of the

Plaintiff permanent injury based on their negligence, and for the reasons that

follow.


(1) The  Plaintiff had a Case Management Conference, and the Magistrate Judge on the

16, of  August at this hearing overlooked the Appeals Court Order and did not

mention the FTCA's discretionary function exception and sovereign immunity waiver.


(2) The Government's Answer at 2 cites this Honorable Court's adoption of the

Magistrate's Report and Recommendation which was Order by the Appeals Court for

final judgment on the claims and a certification pursuant to Rule 54(b). Like

the Plaintiff stated supra. the Magistrate Judge overlooked the claims and only

acknowledged the claims of medical negligence that was dismiss without prejudice and the Plaintiff has not abandon these claims but is requesting this Honorable Court to follow the Appeals Court Order and certify the remaining claims for Appellate claims but on the medical mal-practice claim, the Plaintiff request a trial by jury.

(3) The Government's Answer Motion states  at foot note 2 p.3

> The district court correctly stated that only one cause of action survived the motions of the United States, namely a medical mal-practice claim pursuant to the FTCA, despite plaintiff's efforts to raise (4) distinct claims of medical mal-practice against the United States [cause of  Action # 2  (p.15); Cause of Action # 6 (p.30); Cause of Action # 7 (p.33); Cause of Action # 8 (p.33);] Consequently, the United States will respond only to those paragraphs plaintiff's amended complaint concerning the sole remaining issue (medical malpratice) before this Court and  will not respond to either the issues or or paragraphs which were dismissed by this Court on December 14, 2006.

The Government is conceding to the Plaintiff's remaining claims that was brought in the Plaintiff's Second Amended  Complaint. The Appeals Court issued a **Order** and dismissed the Government's Defendant's Summary Action Motion, because the Court lacked subject matter jurisdiction because there was not a final judgment on sovereign immunity and instructed this Honorable Court to make a final judgment on the Plaintiff claims and also sovereign immunity.

(4) The Plaintiff will first address the medical  negligence mal-practice claim and the other causes of action pursuant to the FTCA, and then address the Government's contentions on the other claims.

(5) The Plaintiff is aware that this Honorable Court adopted the Magistrate Judges Report and Recommendation, but the Appeals Court issued a Order denying the

Government's Summary Action Motion because this Honorable Court and the Magistrate Judge did not certify and finalize all of the Plaintiff claims for appellate review.

(6) By the Government conceding to these claims and will not respond the Plaintiff will show that a material fact exist pursuant to 12(b)(1), 12(b)(6), and 56(c) and that subject matter jurisdiction exist and sovereign immunity is waived and these claims are ripe for a trial by jury.

(7) The Plaintiff's record reveals and demonstrate that a non-discretionary act was committed by the Defendant's Officer Weseman, and the Warden James F. Sherman, the Medical Department. The Plaintiff will show once trial begin that a non-discretionary act was committed and that the Medical Department was negligent and the proximate cause of the Plaintiff's present and future injuries and that this delay has made these injuries permanent. See **(Plaintiff First and Second Amended Complaint, Opposition to Government's Motion or in the Alternative for Summary Judgment, Objections to Magistrate Judges Report and Recommendation, Objection to Court's Order, and all of the other motion that has been filed with this Court.)**

(8) The Government's Answer at No.# 6 p.4, para. 1 states:

> The Defendant deny the averments as set forth in unnumbered paragraph titled "short and plain statement Rule 8(a)(p.8) of plaintiff's Second Amended Complaint. By way of further response, the Federal Defendant admit that on February 29, 2004, a correctional officer detected injuries to plaintiff's face and contacted prison medical personnel who subsequently treated plaintiff that same date.

This Court has stated that (because the Federal Rule of Civil Procedure require only **notice of pleading**, the complaint need only contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)). The Plaintiff never denied that he was not seen by the P.A., in fact,

the Plaintiff stated that he was seen by the P.A. but did not receive any medication

for the Plaintiff's pain and suffering. See **Second Amended Complaint)**. At Trial,

the Plaintiff will subpoena (Robert E. Plotrowski P.A.C. FCI-Mckean) and he can

and will testiy to the truth of the matter for the jury, and the record will reveal

that P.A.  Plotrowske, see **(ATTACHMENT 1)**.

> (a) did not take e-rays of the Plaintiff's left eye
>
> (b) did not know that the Plaintiff had double vision
>
> (c) did not request to see a eye specialist of the
>      eye doctor at FCI Mckean
>
> (d) did  not notice that the plaintiff left eye was off-
>      centered and did not elevate up like the right eye
>
> (e) did not recommend a CAT SCAN
>
> (f) did not know that plaintiff's had nerve damage from
>      the injury and that plaintiff face was numb
>
> (g) did not know that the plaintiff had a Orbital Fracture
>      with Entrapment
>
> (h) did not recommend any pain medication

and the Plaintiff was placed in Administrative Detention. These facts will  be

revealed to the jury at trial.

(9) The Government's Brief at No.# 6 para. 2  states:

> It is important to note that Plaintiff failed to disclose to
> prison personnel the actual cause of his injuries; rather, he
> initially claimed a dumbbell had fallen  upon hime  two days
> prior.

At trial the Plaintiff will demonstrate from the record of this case there is a

plethora of evidence and documentation and witness, affidavits from staff, that

Officer weseman admitted from his on self supportive  affidavit that he was

standing outside for one hour when the Plaintiff was being assualted and that Staff
was unaware what took place until two (2) days later. In fact, Ms. Mcninch, FCI
Mckean Counselor submitted documentation stating a inmate gave information of
what took place on February 27, 2004. See **(ATTACHMENT 2)**. The Plaintiff acknowledge
that, at trial the jury will here evidence from February 29, 2004, from Officer
Zerowitzs, and he will testify to the statement the Plaintiff made that a dumbell
fell on my face, but the jury will also here from Officer Zerowitiz, and six (6)
other Officer's and Lieutenants, and affidavits form inmate witness, that the
Plaintiff was assaulted by Two Latin.King Gang Members on the night of February
27, 2004. The jury will here from Officer Zerowizts, and the Plaintiff will testify
and the medical personnel will testify. The Plaintiff was in the ten man cell with
nine other inmates when Officer and Lieutenants came to get the Plaintiff and when
Officer Zirowitiz, asked the Plaintiff what happen the Plaintiff responded that a
dumbell fell on my face because the Plaintiff received word that if the Plaintiff
told what happen that the Latin King Gang would "KILL" the Plaintiff because the
prison system has Latin King Gang Members, throughout the Federal System and the
Plaintiff did not know out of the nine cell mates on February 29, 2004 who where
Latin King Gang Members, thats why the Plaintiff made that statement. The record
is replete that the Plaintiff was assaulted by two (2) Latin King Gang Members.
Once trial begin,the Plaintiff will subpoena these witness to show that the Plaintiff
was assaulted and the record shows from prison documentation that they where Latin
King Gang members, and FCI-Mckean Staff members will be subpoena to testify, and
the Plaintiff's affidavits of the witnesses that the Plaintiff submitted will
testify to what happen on February 27, 2004.

(10) The Government's Brief at No.# 6 para. 3 states:

> In a subsequent interview with investigating officials, Plaintiff
> admitted he had been in a fight with other inmates over the use of
> a microwave.

At trial the Plaintiff facts of the record will show the jury that the Plaintiff

was assaulted by the Latin King Gang Members inside the ten man cell where the

Plaintiff was attacked and Staff was unaware of what happen. Officer Weseman,

was not in the Housing Unit and **outside** conducting pat-down searches, and checking

for identifications and violated the Wardens, regulation and policy, because the

Warden instructed that, pat-down searches, and identification checks are to be made

**inside** the Housing Unit. See **(ATTACHMENT 3)**; This was a non-discretionary act by

Officer Weseman, and at trial the the Plaintiff will show the jury from record

evidence and Staff at FCI-Mckean will admit under oath that the Plaintiff was

assaulted by two (2) Latin King Gang Members. See **(ATTACHMENT 4)**; Attachment 4

is a document by Counselor Ms. McNinch, which states that the Latin King Gang Members

had been drinking and was looking for someone to assault. Ms. McNinch, will testify

in front of the jury to verify these statement at trial under oath.

(11) Governments Brief at p.4 para. 4 states:

> Plaintiff prevented any health examinations untile the
> discovery of his injuries by failing to seek medical
> attention immediately after receiving his injuries, in
> a attempt to conceal the true cause of his injuries.
> Once his injuries were discovered, the Federal Defendant's
> aver that plaintiff received adequate medical treatment
> for his condition.

This statement by the Government is incorrect. Like the Plaintiff stated supra.,

these facts will be revealed once trial start and can be determined by the jury.

The jury will here, the Plaintiff feared for his life of being killed by the threats

of the Latin King Gang Members, if Plaintiff came forth about the assault. Based

on FCI-Mckean Staff negligence and Officer Weseman not being in the Unit and Staff failure to protect the Plaintiff a non-discretionary act was committed when Officer Weseman did not follow, the Wardens regulation and policy, after the assault, and injuries months and years of delay from surgery and as of this day, the Plaintiff's left eye is not centered and drops down and is off centered, and will not elevate up, the Plaintiff has double vision when the Plaintiff looks to the right and the left. When the Plaintiff looks up, the Plaintiff see double vision and have excruciating pain in my left eye. The Plaintiff face is still numb from nerve branches not being repaired. The Plaintiff note, that, this injury occurred on February 27, 2007, and it's September ___, 2007, nearly 3½ years since the injury and the Plaintiff still has not received surgery to repair the Blow-Out Fracture and Orbital Structure that needed to be repaired and the nerve branches that is still causing the Plaintiff excruciating pain. At Trial, the jury can make a determination on these facts and why has there been a 3½ year delay from treatment from Staff. And the Plaintiff has a permanent disability from Medical Staff negligence. The jury will here at trial from the record that the Orbital Specialist, Plastic Eye Specialist, instructed Staff at FCI-Mckean that the Plaintiff had a Blow-Out Fracture with Entrapment and damage nerves structures in the Plaintiff face, and left it up to Staff to give the ok for the Plaintiff to have surgery and the Medical Staff denied the Plaintiff surgery, and also, the Warden refused and rejected treatment and instead they transferred the Plaintiff. See **(ATTACHMENT 5 MEDICAL RECORDS OF ORBITAL SPECIALIST).**

The record will show to the jury that while the Plaintiff was in SHU the Plaintiff made request to the Warden and Assistant Warden about the Plaintiff's left eye injury and the WArden denied the Plaintiff Medical Treatment by stating.

A sick call request was received from you on March 9, 2004, and you where seen by a doctor on March 11, 2004, the exam revealed a **left eyelide abrasion only. No other injuries were found concerning your left eye.** See (ATTACHMENT 6)

At trial the jury will here from the Warden James F. Sherman, that based on his negligence and the Medical Department negligence, that the Plaintiff was denied medical treatment. The jury at trial will here that FCI-Mckean CEO Warden James F. Sherman, refused the Plaintiff medical treatment and this Chef of Command denial of medical treatment has cause the Plaintiff present and future and permanent disablities to Plaintiff's left eye, because as of this day the Plaintiff sill has excruciating pain, double vision, numb face from nerve branches, orbital fracture with entrapment, left eye will not elevate up, and is off centered. At trial this will be revealed to the jury.

(12) The Government's Brief at p.5 No.# 8 states:

> To the extent the averments set forth in the unnumbered paragraph titled Second Cause of Action and future health and well-being (pp. 15 top of 16) of plaintiff's Second Amended Complaint are read as part of his medical malparctice claim and interpreted to contain statements of fact; the Defendants deny the averments and strict proof at trial.

The Plaintiff is aware that, in order the meet the malpractice claim, the Plaintiff must meet the five (5) standards set out in a malpractice case. The Plaintiff records shows that:

(1) The physician owed a duty to the patient.

(i) The record show, that, the United States owed a duty of care to Plaintiff. See 18 U.S.C. 4042.

(2) The physician breached that duty.

(ii) The record show that the Plaintiff has been complaining about the Blow-Out Fracture with Entrapment, for approximately 14 months and still is having

3½ years now and is still having pain today, and the Orbital Specialist wanted to perform surgery to release the entrapment but the United States Government Officials denied the request.

(3) The breach of duty was the proximate cause of or a substantial factor in, bringing about the harm suffered by the patient.

    (iii) The record show that the Plaintiff has provided this Honorable Court documentation when the Plaintiff was in SHU and when the Plaintiff was out of SHU that this delay from not performing surgery as the Orbital Specialist instructed has caused the Plaintiff present and future injuries. See **(ATTACHMENT 7)**

(4) The damage suffered by the patient were a direct result of that harm.

    (vi) By the Defendant's Government Officials at FCI-Mckean delaying to do surgery on the Plaintiff Orbital Fracture with Entrapment, is has cause Plaintiff present and future disabilities and injuries.

(5) Moreover, the patient must offer an expert witness who will testify to a reasonable degree of Medical Certainty, that the acts of the physician deviated from good and acceptable standards and that such deviation was the proximate cause of the harm suffered. See also, **(THE PLAINTIFF'S OPPOSITION TO UNITED STATES GOVERNMENT DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT)** which outlines this facts.

At trial the Plaintiff sill show through medical evidence and show the jury that the Orbital Specialist and testimony from these specialist that the Plaintiff was seen by these Orbital Eye Specialist on April 15, 2004 and the Orbital Eye Specialist stated that the Plaintiff suffered a Orbital Floor Fracture w/Entrapment and has been this way for 3½ years because of the negligence of the Medical Department. The record shows:

    The eyes were well aligned straight ahead. However, with with up gaze the left eye did not elevate or look as far up as the right eye. I did not see an y signs that the left

eye was protruding further out or recessed into the eye
more so than the right. The report of the CT did suggest
that there was some scarring of the floor orbit with possible
adhensions to the inferior rectus muscle. Typically in opthamlology
even with a fracture of the orbital floor, we like to wait at
least two weeks to see that it heals on its won and the muscle
entrapment is resolved. he is about **six to eight weeks out** and
complaining of symptoms. Because he is well aligned at near,
I think it would be better to take a conservative approach
as the scarring is adherent to the muscle. However, it may be
worhtwhile to get a secondary opinion from an orbital plastic
specialist who deals with these on a regular basis. See **(ATTACHMENT 5)**

At trial the jury will hear testimony from the records that the orbital specialist

stated ("we like to wait at least two weeks to see that it heals on its won and

the muscle entrapment is resolved"). ("he is about six to eight weeks out and

complaining of symptoms"). the orbital specialist sent the Plaintiff to a orbital

plastic specialist. On May 3, 2004, the Plaintiff was seen by the orbital plastic

specialist and the record states:

On examination at this time, his acuity is 20/20 OU. There
is definitely no propotosis and there is no enopthalmos.
He does get diplopia. It is worse especially when he looks
to the right and upwards. He does not get this looking straight
ahead or down. Se, he is really quite functional. I watched
him walk around and he does not have to close the eye to walk.

He had a small calcium deposit in his meibomian gland in his
lower lid. I removed it with tweezers. On examination of the
retina he has no evidence of papilledema or compromise of any
of the other structures.

I went over the CT scan. That is a very pretty picture of a
floor fracture. At this point in time in the absence of diplopia
in a straight ahead gaze, I still think that six more weeks of
time is the answer. **If at three months he definitely still has
diplopia and it is causing him some serious problems it should
be <u>repaired</u>.** He still may completely clear. Fortunately despite
the nastiness of this injury he sustained no obvious damage to
his human lens, the anterior chamber angle or the retina.

The jury at trial will hear from the records and testimony that this specialist

stated that ("if at three months he definitely still has diplopia and it is causing

him some serious problems it should be repaired").

On June 11, 2004, the Plaintiff again was seen by the same orbital plastic specialist and he stated:

> As you know we have been following Mr. Baker's clinical diplopia related to a punch that gave him a blow out fracture. He also has a little bit of anesthesia involving the **infraorbital nerve branches**. We have given it plenty of time now, almost **five months**. He still has entrapment; he can not look up with his left eye without experiencing a form of diplopia that gives him extreme imbalance. He does not think that he can function this was.
>
> He acuity is 20/20 in both eyes when he wars his glasses. **My advice at this point is to do a repair of blowout fracture, release the entrapment under general anesthesia. I will leave the final decision up to you** . See **(ATTACHMENT 5)**

The orbital plastic specialist stated that the Plaintiff should undergo surgery with anesthesia, to repair the blowout fracture, because the Plaintiff was now five (5) months out and Plaintiff's left eye was still causing the Plaintiff pain, and the infraorbital nerve branches was causing pain also. Instead, the Staff and Medical Department at FCI-Mckean elected to transfer the Plaintiff instead of allowing the Plaintiff to have surgery, to repair the injury to the left eye. The jury at trial can assess and evaluate that this two (2) month delay before the Plaintiff saw the orbital specialist, and when the Plaintiff was five (5) months out and the plastic orbital specialist recommend surgery the Staff and Medical Department at FCI-Mckean denied surgery and ship the Plaintiff to FSL Elkton where the Plaintiff continued to complain about the orbital fracture for the nine (9) months that the Plaintiff was there, and the Plaintiff was ship to Lewisburg Camp, and the Plaintiff continued to complain about the orbital fracture with entrapment, double vision, numbness in my face, and the infraorbital nerve branches, pain when the Plaintiff looks up, and the Plaintiff was again transferred back behind the fence to FCI Sandstone. The Plaintiff is now **three (3½) years out** and still

has not had surgery and still has double vision and pain when Plaintiff looks up

and to the right and left. At trial the jury will here this testimony from witnesses

and medical evidence that the Plaintiff has present and future injuries and a

permanent disability. It is obvious that the Plaintiff injury became severe because

of this negligence and delay. The Supreme Court stated:

> A federal Court has determined that "[a] serious medical need
> is one that has been diagnosed by a physician as mandating
> treatment or one that is so obvious that even a lay person
> would easily recognize the necessity for a doctor's attention".

(13) The Government's Brief at No.# 9 states:

> to the extent that the averments set forth in the unnumered
> paragraph titled proximate cause (pp. 30-top of 33) of
> plaintiff Second Amended Complaint are read as part of his
> medical malpractice claim and interpreted to contain statement
> of fact.

At trial the jury will here evidence from the medical record from orbital specialist

orbital plastic specialist, documents of CT scan, and MIR, delay in treatment, that

by the negligence and delay by the Staff, and medical Department at FCI-Mckean,

Warden denying medical treatment, Doctor Olsen stating that on 3/31/04 when the

Plaintiff was a month out he stated:

> on upward gaze left eye stops trama to eye socket possible
> left superior oblique entrapment. See **(ATTACHMENT 8)**

At trial the jury will here from Doctor Olsen, that he was aware that the Plaintiff

had a superior oblique entrapment and brought it the attention of the Warden James

F. Sherman, and the Medical Department that the Plaintiff sustain injury and needed

to be repaired. The Plaintiff acknowledge that at trial the record will reveal

to the jury that this delay and negligence by Staff and the Medical Department

at FCI-Mckean are the proximate cause of the Plaintiff's injury and future and

present eye disability. See also, **(SECOND AMENDED COMPLAINT SHOWING THIS HONORABLE**

**COURT A MATERIAL FACT EXIST FOR TRIAL)** and supra.

(14) The Government's Brief at p.6 No.# 10 states:

> to the extent the averments set forth in the unnumbered
> paragraphs titled "Seventh Cause of Action" and "Duty of
> Care" (p.33) of Plaintiff's Second Amended Complaint are
> part of his medical malpractice claim and interpreted to
> contain statement of fact.

At trial the jury will here evidence from the law of 18 U.S.C. § 4042 which states:

> Title 18 U.S.C. § 4042(a)(2), 3 provides
>
> The Bureau of prisons, shall provide for the
> safe keeping "care" and subsistence of all
> persons charges all or convicted of offenses
> against the United States, [and] provide for
> the protection of all persons charged with or
> convicted of offenses against the United States.

This will convience the jury at trial that the Staff at FCI-Mckean owe the Plaintiff

a duty of care based on a material fact.

(15) Government's Brief at p.6 No.# 11 states:

The Plaintiff will request this Honorable Court to look **supra.** at nos. 1-14 and

this Court will agree that a material fact exist for trial by jury. And that the

record will show that the Defendant's negligence and delay in treatment cause the

Plaintiff present nd future and permanent disabilities. See **PLAINTIFF SECOND AMENDED**

**COMPLAINT AND ALL OTHER OPPOSITION TO GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT)**

(16) The Government's Brief at p.6 No.# 12 states

> to the extent that the averments contain statements of fact

the Defendant deny the averments and demand strict proof
at trial. Further, the Defendants state that plaintiff is
not entitled to relief in the amounts of $15 million or
$20 million dollars, is not entitled to any award of any
kind and/or is not entitled to any type of relief whatsoever
and demand strict proof at trial.

At trial based on a  material fact, the jury will be able to assess the facts

and make a determination based on the negligence, delay in treatment and that a

non-discretionary act was committed, by the Defendant's, and that the Medical

Department based on this delay in treatment through medical evidence will show

the jury that these Defendant's are the proximate cause of the Plaintiff present

and future injuries and permanent disabilities by denying the Plaintiff surgery.

(17) At p.6, in the Government's Brief states in Second Affirmative Defense

that:

Plaintiff Second Amended Complaint fails to state a claim
upon which relief can be granted.

The Plaintiff records shows that a material fact exist for trial by a jury and the

facts, files and affidavits, documents, medical evidence, medical records, eye

specialist, orbital specialist, documents shows that the delay and negligence,

shows that the Plaintiff can be determined by a jury.

(18) The Government's Brief at p.7 Third Affirmative Defense states:

This Court lacks subject matter jurisdiction over Plaintiff's
Second Amended Complaint.

The Plaintiff is aware that in order to establish subject matter jurisdiction the

Plaintiff must show that  the Defendant's committed a non-discretionary act and

these acts where not the result of judgment or choice. At trial, the jury can assess

the facts of this case. The records shows that, the Warden implemented a regulation and policy for all Staff to follow while performing there duties in the Housing Unit. The Plaintiff alleged in his First and Second Amended Complaint, Plaintiff's Opposition to United States Government Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment Objection to Magistrate Report and Reommendation. The Plaintiff addressed all of these contention by the Government. But the Plaintiff will show this Court subject matter jurisdiction exist. The warden's Declaration states at 3:

> To my knowledge, on February 27, 2004, there was no BOP Regulation or Policy in effect which dictated the number of correctional officers the placement of correctional officer posts within a Federal Correctional Institution, or the specific duties assigned to correctional officers assigned to posts within a BOP Facility. The authority to determine the number placement and specific duties of correctional officers within a BOP Facility was and continues to be a matter within the discretion of each BOP WArden during normal operations as well as during emergency situations.

The Warden James F. Sherman, was aware that there was no Regulation of Policy for Staff to follow so James F. Sherman implemneted his own. The Warden was also aware that 18 U.S.C § 4042 did not give instruction for Staff to follow.

At No.# 4 the Warden continues to state:

> As the Warden at FCI-Mckean in February 2004, it was my duty to determine how best to deploy correctional officers and other Staff the various posts within the compound, based upon the security needs of the institution and the effective use of limited resources.

The Warden states it was his duty to in February 2004, to deploy correctional officer to various post within the compound, and below the Warden states the responsibilities for correctional officers to follow. At No.# 5 the Warden James F. Sherman, states the responsibilities for correctional officers to follow:

5. In February 2004, it was my determination based upon staffing levels proffessional experience, and institutional needs, that **one** correctional officer would be posted on each side of each Housing Unit, this Unit Officer would be re;ponsible for supervising the inmates **inside** the Housing Unit by making frequent rounds through all all areas of the Housing Unit, conducting safety and sanitation inspections distributing cleaning supplies, passes out mail, and conducting cell searches and pat searches of inmates **inside** the Housing Unit.

The record shows that the Warden James F. Sherman implemented these responsibilities for Staff to follow.

The record show a complete contradiction and fabrication in Officer Weseman Declaration which was made under the penalty of perjury. Officer Weseman Declaration at 2. states:

> On February 27, 2004, I was assigned to the Custody Post of evening watch Unit Officer in Unit A at FCI Mckean. This Post ran from 4:00 p.m. through 12:00 a.m. as the Unit A Officer, I was required to be **inside** Housing Unit A **as well as outside of the entrance of Unit A During controlled inmate movements.** As the Unit Officer I was responsible for making security inspections inside the Unit, conducting cell searches, conducting pat searches of inmates entering the Housing Unit, patrolling the Unit and making rounds through inmates cells, bathrooms and common areas, among other duties.

It is obvious from the record that in the second para. of Officer Weseman's Declaration that it is fabricated and is contradicted from the WArden's Declaration because **no ware** in the Warden's Declaration does it gives responsibilities to Staff to be **outside the Unit** when Officer;s are on shift. This is a non-discretionary act because it is not following the responsibilities of the Wardens Regulation and Policy and not a judgment of choice on part of Officer Weseman grounded public policy, and that Officer Weseman know that these responsibilities that that the Warden implemented was in effect.

Officer Weseman, Declaration at No.# 4 states:

> On February 27, 2004, at approximately 8:15p.m. I
> was **standing outside** of the entrance to Unit A
> monitoring inmates returning to the Unit during the
> last controlled inmate movement of the day in
> preparation for the 9:00p.m. count. during the last
> inmate controlled movement, inmates are permitted to
> return from places outside of the Housing Unit,
> including, but limited to, the recreation areas,
> the education department, the law library, psychology
> services, or religious services, in order to be
> present in their cells for the 9:00p.m. count, during
> this controlled movement, I would **stand outside the
> entrance of Unit A, and conduct random checks of
> inmate identification cards and pat searches of
> inmates entering the Housing Unit.**

Officer Weseman, concedes, and **admits** that he committed a non-discretionary act

by not following the regulation and policy that was implemented by Warden James F.

Sherman, which stated in his regulation and policy that instructed correctional

officers to do identification checks and pat down checks inside the Housing Unit

not outside the Housing Unit. Officer Weseman, concedes that he was outside when

the Plaintiff was assaulted by the Latin King Gang Members.  See **(ATTACHMENT 3)**

Officer Weseman, Declaration at No.# 5 states:

> On February 27, 2004, I did not observe any inmate on inmate
> assaults or fights, and no inmate assaults or rights were
> reported to me. At not time during my shift did I observe
> any activity or noise which would lead me to believe that
> inmate Darryl Orrin Baker, Reg. 19613-039  was at risk
> of assault, or had been injured as a result of an
> accident or a physical altercation with any other inmate
> in Unit A.

It is obvious from these statements by Officer Weseman, that he was unaware what

took place at 8:15 to 9:00 p.m. because Officer Weseman, was not in the Housing

Unit A at the time of the attacks and did not follow the Warden's responsibilities.

Officer Weseman, did not use judgment or choice when he left the Unit unmonitored for one (1) hour. This non-discretionary act violated the Warden regulation and policy and these Government Official are not immune from suit, and sovereign immunity is waived and subject matter jurisdiction has been established in cases like this one. See **(SECOND AMENDED COMPLAINT AND ALL MOTION FILED IN THIS HONORABLE COURT IN OPPOSITION TO SUMMARY JUDGMENT)**. The law is clear, that in Coulthurst, is easy to imagine a scenario in which MCC officials behaved in a negligent fashion but without making the types of discretionary judgments that the statutory exception was intended to exempt from liability. Perhaps the corrections officer monitoring the hldover unit at the time that the gang altercation broke out was simply asleep, for example. Or perhaps he left the unit unattended in order to enjoy a cigarette or a snack. **That type of carelessness would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations. <u>Coulthusrt</u>,** 214 F.3d at 109-10; <u>Santana-Rosa,</u> 335 F.3d at 45(discussing **<u>United States v. Muniz,</u>** supra, 374 U.S. at 152, 83 S.Ct. at 1852); see also Gaubert, 499 U.S. at 325 n. 7, 111 S.Ct. at 1275 n. 7. The Plaintiff records shows that on February 27, 2004, I inmate Baker, was assaulted by two (2) Latin King Gang Members at FCI Mckean. At the time of this attackes, I was assigned to the ten (10) man cell where I shared my living quarters with (9) other inmates, and several of these inmates saw the attack being administered to me by these Latin King Gang Members. The assaulted lasted approximately between 7 to 10 minutes leaving the Plaintiff battered and bruised very badly and in need of serious medical attention. I was in the ten (10) man cell setting in a chair listening to the radio with my head phones on with my eyes closed, and two (2) Latin King Gang Members entered the ten (10) man cell and started assaulting me. I suffered a bleeding and bruised nose, swollen left eye, swollen head, cuts

blurred vision, contusion, at the time of this attacks by the Latin King Gang Members and Officer, B. Weseman, was on duty working the evening shift and was not present in the Unit A at the time this assault took place. Perhaps Officer Weseman was asleep, or perhaps he left for a cigarette, or a snack, but he was not in the Housing Unit when the Plaintiff was assaulted by the two (2) Latin King Gang Members and Officer Weseman, was unaware what took place. Two (2) days later on February 29, 2004, at approximately 9:10 a.m. I was awoke by Officer Zerowitz, the morning shift Officer, and he requested to see my face for bruises. I was then immediately taken to the Lieutenant Office, and while I was there, pictures was taken of my face, left eye, back, hands, chest, where the two (2) Latin King Gang Members assaulted me. The I was immediately taken to the Medical Department where I was seen by a physician assistant. The Physician Assistant, denied me any medication for my pain and suffering. The Physician Assistant, denied me medical attention to my left eye. The Physician Assistant, was unaware that I had double vision, blurred vision, and that my left eye was off centered. The Physician Assistant, denied me to see a Eye Doctor or Eye Specialist, and did not recommend me to see one. Then I was immediately placed in Administrative Detention. While I was there, I made numerous complaints, to the Warden James F. Sherman, the Assistant Warden, about my left eye and my pain and suffering and was denied any treatment, and I still was denied medical attention for my left eye and pain and suffering. As a result, of the Defendant's negligence at FCI-Mckean, I am suffering future aliments included, but are limited to:

> (a) The left eye will not elevate up as far as the right eye.
> (b) Some scarring on the floor of the orbit with possible adhensions to the inferior rectus muscle.
> (c) Orbital floor fracture.
> (d) Orbital floor fracture w/entrapment.
> (e) Blow-out fracture

(f) Can not look up with my left eye without experiencing a form of diplopia and pain.

(g) Anesthesia involving the infraorbital nerve branches.

Plaintiff alleges that the named Defendant's negligence subjected the Plaintiff to unusual punishment as a result of unreasonable risk of harm to Plaintiff's present and future general health, and well-being.

At trial the jury can assess the material facts and make a determination of the facts that these Defendant's negligence cause the Plaintiff's injuries, and that a non-discretionary act was committed, and subject matter jurisdiction has been established and sovereign immunity waived. By the Government Officials committing a non-discretionary act subject matter jurisdiction is established, and sovereign immunity is waived because these Government Official violated the Warden's regulation and policy.

(19) The Government's Brief at p.7 Fourth Affirmative Defense:

> Defendant's Government Officials at FCI-Mckean Warden; Officer B. Weseman, and the Medical Department are improper party-defendant's in this action filed pursuant to the Federal Tort Claims, Act, and thus, this action should be dismissed as to them.

These Government Officials where action within the scope of the employment and by these Defendant's violating the Wardens regulation and policy sovereign immunity is waived. See **(Plaintiff First and Second Amended Complaint, and Plaintiff's Opposition to the Governments Motion for Summary Judgment, and all other motion filed in this Honorable Court)**

(20) Government's Brief at p.7 Fifth Affirmative Defense States:

> The acts of any and all medical personnel associated with the Bureau of Prison who gave medical care to Plaintiff during the course of events germane to this case met the standards of care, and therefore Plaintiff is barred from recovery.

Like the Plaintiff stated **supra.** these facts will be presented at trial and can assess by the jury.

(21) The Governments Brief at p.7 Sixth Affirmative Defense states:

> Plaintiff has no evidence and /or medical expert who can opine that any medical personnel associated with the Bureau of Prison gave care to Plaintiff which within a degree of medical certainty failed to meet the applicable standard of care, and therefore, Plaintiff is barred from recovery.

At trial this evidence will be revealed to the jury like the Plaintiff stated supra. And the jury will here medical evidence from the record that the medical Staff are the proximate cause of Plaintiff injuries, and the Orbital Specialist Plastic Orbital Specialist, that stated the Plaintiff was 5 months out and these Staff members transferred the Plaintiff which caused the Plaintiff future and permanent disabilities because the Plaintiff as of this day August 31, 2007, still has kiplioma, a Orbital Fracture, with Entrapment, double Vision, excruciating pain when the Plaintiff looks up, and medical Staff told the Plaintiff that I had a permanent disability to my left eye. These documents and evidence will be proved at trial, and this Honorable Court stated at the Case Management Conference that it will retain counsel for the Plaintiff and the Plaintiff can subpoena these Orbital Specialist to testify to a medical certainty because they are experts on Orbital Fractures. See **(ATTACHMENT 5 ORBITAL SPECIALIST DOCUMENTS).**

(22) Government's Seventh Affirmative Defense states:

> The acts of medical personnel associated with Bureau of Prisons were not the proximate cause of the occurrence giving rise to the instant lawsuit, and Plaintiff is therefore barred from recovery.

At trial the jury can assess record of this case. Like the Plaintiff material facts stated as attachments and record of statement stated **supra.**, these medical facts will be proved at trial by jury and the record will show that based on a $3\frac{1}{2}$ year delay in treatment from Staff negligence and Orbital Specialist and Plastic Specialist stating that surgery was needed and left it up to Staff and Staff tranferring the Plaintiff and elected the Plaintiff to suffer a $3\frac{1}{2}$ year period of pain and suffering and a present and permanent disability this facts will show the jury that the medical Staff are the proximate cause of the Plaintiff injuries. See **(Plaintiff's Opposition Brief for Summary Judgment, and the Plaintiff's First and Second Amended Complaint, and all other Motion and Briefs).**

(23) The Government's Brief at p.8 Eighth Affirmative Defense states:

> The acts of others, specifically federal inmates and not those of the Defendant's were the sole and proximate intervening and /or superseding cause of the occurrence giving rise to the instant lawsuit, and Plaintiff is therefore barred from recovery.

These statement by the Government is misplaced. The Government continues to overlook the facts that after the Plaintiff was injured from the assault the Plaintiff sought medical attention from Staff at FCI-Mckean, and was denied treatment, from being denied treatment from the Warden the Medical Department, Doctor Olson, Doctor BEam, and the delay of $3\frac{1}{2}$ years from having surgery when he Orbital Plastic Specialist told the Staff that it was there decision and Staff neglected and refused the diagnosis of the physician as mandating treatment and the Plaintiff's condition has became worse because the Plaintiff has a permanent disability after being $3\frac{1}{2}$ years out without surgery. At trial, these facts will be presented to the jury for consideration.

(24) Government's Brief at p.8 Ninth Affirmative Defense states:

> Plaintiff's negligence was greater than any negligence, if any,
> of Defendant, and Plaintiff is therefore barred from recovery.

The record of this case shows that Staff was unaware of what occurred on February

27, 2004, and as the Plaintiff stated **supra.**, the Plaintiff got ward that the

Latin King Gang Members sent threats that if the Plaintiff revealed what happen

they where going to kill the Plaintiff, by Officer Weseman, not following the

Wardens James F. Sherman, regulation and policy instructing the Correctional Officers

to follow and the responsibilities implemented, this Staff negligence of not knowing

what's going on at the institution and failure to protect the Plaintiff is greater

based on the negligence of the Defendant's and a non-discretionary act was committed

by these Defendant's. At trial, the Plaintiff will show the jury through documentation

and affidavits, medical evidence, expert testimony, that these Defendant's where

the cause of the Plaintiff injuries from the $3\frac{1}{2}$ year delay from surgery.

(25) The Government's Brief at p. 8 Tenth Affirmative Defense states:

> In the event that any individuals who are employees or agents
> of either the United States or the Bureau of Prison are
> determined to still be parties to this Action, those Defendant's
> are immune from Civil Liability by reason of Qualified Immunity

The Plaintiff acknowledge that his claims Pursuant to FTCA based on negligence and

not Bivens, and a Eighth Amendment. **Therefore,** qualified immunity is inapplicable

in Tort Claims.

## CONCLUSION

(1) At trial the Plaintiff record will show the jury that Medical Staff at FCI-Mckean

are the proximate cause of the Plaintiff present, future, and permanent disabilities

based on medical evidence, testimony, affidavits, and medical documents, and expert

testimony, witnesses.

> **PROXIMATE CAUSE** states:
>
>> Whether or not the defendant's conduct proximately
>> cause the plaintiff's injury ordinarily is a question
>> for the finder of fact to decide; only rarely are the
>> facts so clear that the Court can resolve the issue
>> as a matter or law.
>
>> Such intervening causes do not relieve a defendant of
>> liability for its own negligence if the intervening
>> cause itself was foreseeable.

(2) At trial the jury will here and see evidence that these Defendant's acts are

foreseeable to Plaintiff injuries.

(3) In a medical malpractice case five (5) critera's must be met: See p. 8 N.# 12

**supra.** The record at trial will show the jury that these Defendant's negligence

cause the Plaintiff injuries.

(4) The records shows that subject matter jurisdiction has been established

when Officer Weseman, did not follow the Wardens regulation and policy, and did

not use judgment or choice when he left the Unit Unattended.

> In Coulthust 214 F.3d at 109; the law is clear that, as in
> Coulthurst, it is easy to imagine a scenario in which MCC
> Officials behaved in a negligent fashion, but without
> making the types of discretionary judgment's that the
> statutory exception was intended to exempt from liability.
> Perhaps the corrections officer monitoring the holdover
> Unit at the time that the gang altercation broke out was
> simply asleet, for example, or perhaps he left the Unit
> unattended in order to enjoy a cigarette or a snack. **That
> type of carelessness would not be covered by the discretionary
> function exception, as it involves no element of choice or**

**judgment grounded in public policy consideration.**

**Therefore,** subject matter jurisdiction has been established based on Officer
Weseman, admitting and conceding in his Declaration that he was not in Unit A
and violated the Warden's regulation and policy.

(5) At trial the record will show the jury that the Defendant's owe the Plaintiff
a "duty of care".

**Therefore,** the Plaintiff records, files, facts, affidavits, medical documents,
Staff records, and with testimony will show the jury at trial that the Defendant's
where negligent, and the proximate cause of Plaintiff injuries and there acts
where foreseeable, that medical malpractice negligence was violated and was committed
by the Defendant's. Also, the Plaintiff request that this Court deny all contention
by the Government. The Plaintiff request that this Honorable Court examine all of
these facts, and this Honorable Court will agree that a material fact exist for
trial, and subject matter jurisdiction has been established and the Plaintiff request
all liability, and damages, that was set forth in the Plaintiff First and Second
Amended complaint. The Plaintiff will also rely on all motion and briefs that was
filed in this Honorable Court.

Respectfully submitted

BY: _Darryl Baker_
Darryl Orrin Baker
Reg. No.# 19613-039
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN
55072

EXECUTED: SEPTEMBER 4, 2007

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that I have sent a true and exact copy of the Plaintiff's Opposition to the Answer of the Federal Defendant's to Plaintiff's Second [sic] Amended Complaint this day September 4, 2007 United States First Class Mail to the following.

        Assistant United States Attorney
        Paul E. Skirtich
        Western District of Pennsylvania
        700 Grant Street, Suite 4000
        Pittsburgh, PA.
        51219

        Respectfully submitted

BY: _____
        Darryl Orrin Baker
        Reg. No.# 19613-039
        Federal correctional Institution
        P.O. Box 1000
        Sandstone, MN
        55072

**EXECUTED: SEPTEMBER 4, 2007**

September 4, 2007


Clerk of the Court
United States District Court
Western District of Pennsylvania
Sean J. Mclaughlin Judge
U.S. Courthouse, Room A250
17 South Park Row
Eire, PA
16501


        RE: CIVIL ACTION NO.# 05-147-ERIE
            DARRYL ORRIN BAKER v. UNITED STATES OF AMERICA, ET.AL.


Dear Clerk of the Court:

    Please find inside the Plaintiff's Opposition to the Answer of the Federal Defendant's to Plaintiff's Second [sic] Amended Complaint.

Thank you very much.




                              Respectfully submitted

                    BY: _____
                       Darryl Orrin Baker
                       Reg. No # 19613 039
                       Federal Correctional Institution
                       P.O. Box 1000
                       Sandstone, MN
                       55072


ENCL:

cc: AUSA PAUL E. SKIRTICH