(ATTACHMENT 1)

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**INMATE INJURY ASSESSMENT AND FOLLOWUP**
*(Medical)*

| | | |
|---|---|---|
| 1. Institution<br>FCI McKean | 2. Name of Injured<br>BAKER, DARRYL | 3. Register Number<br>19613-039 |
| 4. Injured's Duty Assignment<br>Unicor | 5. Housing Assignment<br>AA | 6. Date and Time of Injury<br>2/27/04    2000 hr |
| 7. Where Did Injury Happen *(Be specific as to location)*<br>Housing AA    Cell #129 | Work Related?<br>☐ Yes   ☒ No | 8. Date and Time Reported for Treatment<br>2/29/04    0950 hr |

9. Subjective: *(Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)*

4/1/0 PA ② c/o LT Face ② Eye Pain 2° assault by 2-I'm's c̄ ⊖ LOC. Also c/o ② Minor Pain swelling & Abrasion on ② Rt Chest & Back, RUE, Bil. Hands. ③ Reports Episodic Epistaxis, 1st 24h S/P ⊗    *Darryl Baker* ·Denies/Dizzy HA VISION chgs ④ c/o Resolving (↓) Anesthesia LT Face & Maxilla Dentition    LOC —
Signature of Patient

10. Objective: *(Observations or Findings from Examination)*    X-Rays Taken ____ Not Indicated ✓
X-Ray Results ____

CAOx3, Mod distress, Ambulatory, Flat affect HEAD ⇒ ⊖ C/AT; EARS ⇒ ⊖ BLD, TM's intact & fld. filld.; FACE ⇒ LT mild Tender c̄ ecchymosis + Swelling ⊗ Step-off/Deformity; ⊗ intact c̄ ⊕ Periorbital ecchymosis // Edema ⊗ Tend ⊗ Step-off; NOSE → neutral att Pyramid & Tip - mild ecchymosis ⊗ NOSE ⇒ ⊖ Dis-RT; Bilat. mucosal edema LT ≥ RT c̄ dried ⊖ Fresh BLD, LT⊗ ⊗ Visible Rupture; Chest/Back + UE's (See Diagram); Neuro CN's II-XII intact; PERRLA, LT, Conjunctivitis; EOMI

11. Assessment: *(Analysis of Facts Based on Subjective and Objective Data)*
1) Periorbital soft tissue Trauma Ecchymosis/Edema ⊗ Fx    7) Epistaxis ⊗ Fx
2) LT maxillal zygoma Contusion ⊗ Fx    4, 5) Contusions, Sprain
3, 6) Contusion ⊕ Abrasion (Superficial)    + superficial Abrasions

12. Plan: *(Diagnostic Procedures with Results, Treatment and Recommended Follow-up)*
1) Epinephrine 3cc Topical LT Nose x 1    2) Epistaxis Prophylaxis Instructions
2) Swelling Eye Exam acuity @ 20/25 Bilat    ·1:1000·
3) Educate Counsel re: Trauma c̄ RTC - PRN
4) Understands

13. This Injury Required:

☐ a. No Medical Attention
☒ b. Minor First Aid
☐ c. Hospitalization
☐ d. Other *(explain)*

_____

☐ e. Medically Unassigned
☐ f. Civilian First Aid Only
☐ g. Civilian Referred to Community Physician

Signature of Physician or Physician Assistant

Robert E. Piotrowski, PA-C
FCI McKean



Nose
⑦ Epistaxis ⊗ Fx
⑧ Denies

Ridge
⑤ mild swelling From ⊗ene
⑥ Hand abrasion #495 MCP c̄ ⊕ from mild tender
④ From E. mild tender mild swelling
3, 6 mild Ecchymotic swelling Skin intact very superficial abrasion

Neutral Occlusion

Original – Medical File
Canary – Safety
Pink – Work Supervisor *(Work related only)*
Goldenrod – Correctional Supervisor

*Self Carboned Form – If ballpoint pen is used, PRESS HARD*

2/29/07
03

FCI—ELKTON

NAME:          DARRYL BAKER
PATIENT #:     19613-039
PHYSICIAN:     QUINN
D.O.S.:        3-28-05

## CT SCAN OF THE ORBITS

HISTORY:  Left orbital fracture.

TECHNIQUE:  Axial and coronal sections are obtained through the orbits.

FINDINGS:   The patient's history states left orbital fracture.  On today's exam visualized portions of the paranasal sinuses appear clear.  There is some nasal septal deviation towards the left.  The left frontal sinus is hypoplastic.  The globes and the optic nerve appear fairly symmetric.  There appears to be a fracture involving the left orbital floor. Absence of bone is noted involving the posterior aspect of the orbital floor and lateral aspect.  This is near but does not extend to the apex.  The inferior rectus muscle extends to this defect but does not definitely appear to be entrapped.  Minimal left maxillary sinus mucosal thickening is present.  I suspect this is not an acute fracture.   I see minimal if any soft tissue swelling.   Artifact from dental hardware limits our evaluation slightly.  The uncinate process appears intact bilaterally.  Osteomeatal units appear to be intact.  On axial images there is a question of a subtle possibly healed fracture involving the left lateral orbital wall.

Impression:   1. There is a bony defect involving the posterior lateral aspect of the left
              orbital floor.  I suspect this represents an area of previous fracture.  A small
              amount of orbital fat extends into this area.  The left inferior rectus muscle
              extends to this defect but not through the defect.  It does not appear to be
              entrapped.
              2. Minimal mucosal thickening, left maxillary sinuses.  The remainder of the
              paranasal sinuses appear clear.  No air fluid levels are identified.
              3. Left frontal sinus is hypoplastic.

CHARLES MUCHNOK, M.D.

CM:dk

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 8-11-05 | (S) Seen because pt wont let cuff up (for custody) to take him eye doctor for exam + evaluation for previous eye probs. He continues to have a decrease in vision. Continues pain © eye. Complain diplopia when reading |
| | (O) VS → 124/80 @ BP – P 80 |
| | 20/25   20/20 (L) vis acuity |
| | Eye fundescopic exam negative nous. Lungs CTAB  heart RRR⊽m  slight ↓ lateral (CT scan orbit @ prev. fx)  (no endpoint) no exam common lid gaze |
| | (A) – Hx ⊕ orbit fracture; orbital muscle entrapment; © eye pain |
| | (P) pt refused to sign medical treatment refusal sheet. |
| | Offered pain meds. to prescribe – He refused any; said Motrm Naprosyn no help |
| | Vision acuity good – |
| | Pt refused to cuffing procedures – ophthalmology exam cancelled. |
| | If any pain med – or probs (let nurse know sick call). |
| | Refused to go to opthamology [signature] |

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: (For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)

| REGISTER NO. | WARD NO. |
|---|---|

Baker Darryl
19613-039

**CHRONOLOGICAL RECORD OF MEDICAL CARE**
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

000002

February 10, 2005.

RECEIVED

2005 FEB 14 P 12: 20

FCI ELKTON
WARDEN'S OFFICE

WARDEN:

(1) I inmate Baker, has been to the FSL Medical Department on several occassion seeking treatment for a injury I sustain on February 27, 2004.

(2) I have been seeking treatment to a Orbital Fracture that occurred on February 27, 2004, and have been denied treatment by Ms. Barnes, Dr. Quinn, and the Eye Specialist, here at FSL Elkton Medical Department.

(3) I have been having excruciating pain in my left eye, and see double vision when I look up and to the left and right sides.

(4) As a result of the injury I sustained to my left eye on February 27, 2004, and I have been Retaliated against, received Deliberate Indifference, and denied my Eighth Amendment Rights.

COPY

(5) Warden, would you please look into the matter because, I am still having excruciating pain in my left eye and I am still seeing double and having double vision.

Sincerely,

/s/ Darryl Baker

INMATE BAKER
REG. NO.# 19613-039

(ATTACHMENT 2)



# UNITED STATES GOVERNMENT
# M E M O R A N D U M

### FEDERAL CORRECTIONAL INSTITUTION
### MCKEAN COUNTY, PENNSYLVANIA
### 16701-5000

**DATE:** February 29, 2004

**REPLY TO**
**ATTN OF:** *Ellen McNinch* Ellen McNinch, Correctional Counselor

**SUBJECT:** Inmate Baker, Darryl #19613-039

**TO:** Douglas Bailey, Operations Lieutenant

On 2-29-04 at approximately 1245 an inmate came to my office and told me that on Friday night (2-27-04) inmate Baker #19613-039 went into the microwave room to use one of the microwaves. At that time inmate        #:        was using one and saving the other one for a friend.       told Baker he could not use the microwave. Apparently they had words. Then inmate       #:        came into the room, held inmate Baker down while inmate       beat him up.

I was also informed that inmate        and        were intoxicated at that time.

I then asked him what had happened to his face and he replied that a dumb bell up in the weight room fell on him.

I immediately notified the Operations Lieutenant.

*"Sensitive-Limited Official Use Only"*



U.S. Department of Justice

# MEMORANDUM

## Federal Bureau of Prisons
### FCI MCKEAN

DATE: 2-29-04

REPLY TO: L. CARLSON S.O.S.

SUBJECT: POSSIBLE ASSAULT

TO:  INVESTIGATING LT.

ON 2-29-04 AT APPROX. 9:30AM, WHILE ASSIGNED AS THE COMPOUND #2 OFFICER, I REPORTED TO UNIT A-A FOR A POSSIBLE ASSAULT, AT THAT TIME I ESCORTED INMATE BAKER #19613-039 TO THE LT. OFFICE, THEN TO THE INSTITUTIONAL HOSPITAL, THEN TO SHU. AFTER THE 10:00AM COUNT I REPORTED TO UNIT A-A, AND ESCORTED INMATE #          TO THE LT. OFFICE, THEN TO THE INSTITUTIONAL HOSPITAL, THEN TO SHU.

## AFFIDAVIT

**SWORN UNDER THE PENALTIES OF PERJURY:**

(1) I inmate Thurman Johnson, was assigned to the ten (10) man cell on February 27, 2004.

(2) That inmate Baker, was assaulted by to inmates in the ten man cell on February 27, 2004.

(3) That Officer Weseman, was not patrolling the Unit when this assault took place on inmate Baker.

(4) That Officer Weseman, was not in the Unit when the assault took place.

(5) That Officer Weseman, was unaware what took place on February 27, 2004.

(6) That inmate Baker, was bleeding profusely and suffered a injury to his left eye.

Respectfully submitted

/s/ *Thurman Johnson*
INMATE THURMAN JOHNSON
REG. NO.# 11073-055
P.O. BOX 8000
F.C.I. MCKEAN
BRADFORD, P.A. 16701

**DATED APRIL 15, 2004.**

**THAT THESE STATEMENTS FROM 1 THRU 6 ARE TRUE UNDER THE PENALTIES OF PERJURY:**

**AFFIDAVIT**

**SWORN AFFIDAVIT UNDER THE PENALTIES OF PERJURY:**

(1) I inmate Tim, was assigned to the ten (10) man cell on February 27, 2004.

(2) That on February 27, 2004, at approximately 8:05p.m. I was asleep in the ten (10) man cell.

(3) That when I awoke, I saw inmate Baker, being assaulted by two (2) other inmates.

(4) Inmate Baker, was bleeding profusely and he had a injury to his left eye.

Respectfully submitted

/s/ _____
INMATE TIMOTHY BRADLEY
REG. NO.#03098-049
P.O. BOX 8000
F.C.I. MCKEAN
BRADFORD, P.A. 16701

DATED APRIL 10, 2004.

THAT THESE STATEMENTS FROM 1 THRU 4 ARE TRUE UNDER THE PENALTIES OF PERJURY:

(ATTACHMENT 3)

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,                    :
              Plaintiff,               :
                                       :
      v.                               :   Civ. Action No. 05-147 (SJM-SPB)
                                       :
UNITED STATES, et al.,                 :
              Defendants.              :
                                       :

**DECLARATION OF JAMES F. SHERMAN**

I, James F. Sherman, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am the Warden at the Federal Correctional Institution (FCI), McKean, Pennsylvania.  I have been employed as the Warden at FCI McKean since approximately January 26, 2004.

2.  In February 2004, the general population at FCI McKean consisted of 4 inmate housing units (not including the satellite prison camp), Unit A, Unit B, Unit C, and Unit D.  Each housing unit consisted of two sides, A or B.  The Housing Units were identified by unit and side; for example, Unit AA, Unit AB, Unit BA, Unit BB, etc.  Each side of each housing unit housed approximately 150 to 160 inmates.

3.  To my knowledge, on February 27, 2004, there was no BOP regulation or policy in effect which dictated the number of correctional officers, the placement of correctional officer posts within a federal correctional institution, or the specific duties assigned to correctional officers assigned to posts within

1

a BOP facility.  ~~The authority to determine the number,~~
placement and specific duties of correctional officers within a
BOP facility was and continues to be a matter within the
discretion of each BOP Warden during normal operations as well as
during emergency situations.

4.  As the Warden at FCI McKean in February 2004, it was my
duty to determine how best to deploy Correctional Officers and
other staff to the various posts within the compound, based upon
the security needs of the institution and the effective use of
limited resources.

5.  In February 2004, it was my determination, based upon
staffing levels, professional experience, and institutional
needs, that one correctional officer would be posted on each side
of each housing unit.  This unit officer would be responsible for
supervising the inmates inside the housing unit by making
frequent rounds through all areas of the housing unit, conducting
safety and sanitation inspections, distributing cleaning
supplies, passes out mail, and conducting cell searches and pat
searches of inmates inside the housing unit.

6.  On February 27, 2004, inmate housing assignments at FCI
McKean was a matter left to the discretion of the Warden, upon
the advice of staff.

7.  In February 2004, the decision as to which inmates
should be separated, placed in administrative detention or

recommend be moved to other facilities was also a matter left to

the discretion of each BOP Warden that took into consideration

numerous factors, including the safety of inmates, the ability of

inmates to move about the facility, general concerns for prison

security, and the effective use of limited resources.

8.   In February 2004, the decision to assign an inmate to

general population, as opposed to administrative detention was a

matter left to the discretion of each BOP Warden based upon

available information and the availability of limited resources.

I declare under penalty of perjury, that the foregoing is
true and correct to the best of my knowledge.

Executed this ___8___ day of December 2005.

James F. Sherman

JAMES F. SHERMAN
Warden
Federal Correctional Institution
McKean, Pennsylvania

3

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,                          :
                        Plaintiff,           :
                                             :
       - v -                                 :        Civil Action No. 05-147 (Erie)
                                             :
UNITED STATES, et al.,                       :
                        Defendants.          :

DECLARATION OF BRIAN WESEMAN

I, Brian Weseman, make the following declaration under penalty of perjury:

1.     I am employed as a Senior Officer, United States Department of Justice, Federal
       Bureau of Prisons, Federal Correctional Institution, McKean, Pennsylvania. I have
       been employed by the Federal Bureau of Prisons since approximately January 4,
       1999. I have been employed as a Senior Officer at FCI McKean since
       approximately January 11, 2004.

2.     On February 27, 2004, I was assigned to the Custody Post of Evening Watch Unit
       Officer in Unit A at FCI McKean. This post ran from 4:00 p.m. through 12:00 a.m.
       As the Unit A Officer, I was required to be inside Housing Unit A as well as
       outside of the entrance of Unit A during controlled inmate movements. As the Unit
       Officer, I was responsible for making security inspections inside the unit,
       conducting cell searches, conducting pat searches of inmates entering the housing
       unit, patrolling the unit, and making rounds through inmate cells, bathrooms and
       common areas, among other duties.

3.     Unit A is a large, double-tiered, triangular-shaped housing unit, with a capacity of
       approximately 156 inmates. One Unit Officer is assigned to this housing unit.

4.     On February 27, 2004, at approximately 8:15 pm, I was standing outside of the
       entrance to Unit A, monitoring inmates returning to the Unit during the last
       controlled inmate movement of the day in preparation for the 9:00 p.m count.
       During the last inmate controlled movement, inmates are permitted to return from
       places outside of the housing unit, including, but not limited to, the recreation
       areas, the education department, the law library, psychology services, or religious
       services, in order to be present in their cells for the 9:00 p.m. count. During this
       controlled movement, I would stand outside the entrance of Unit A, and conduct
       random checks of inmate identification cards and pat searches of inmates entering
       the housing unit. Prior to the announcement of the controlled movement at
       approximately 8:15 p.m., I would be inside the housing unit doing any of a number
       of different duties, including, but not limited to making rounds, completing
       documentation, reviewing the inmate bed book, and inspecting various areas inside

the housing unit.

5.    On February 27, 2004, I did not observe any inmate-on-inmate assaults or fights, and no inmate assaults or fights were reported to me.  At no time during my shift did I observe any activity or noise which would lead me to believe that inmate Darryl Orrin Baker, Reg. No. 19613-039, was at risk of assault, or had been injured as a result of an accident or a physical altercation with any other inmate in Unit A.

6.    Had I learned or suspected that inmate Baker, or any other inmate in Unit A was physically injured during my shift, I would have immediately notified the Operations Lieutenant of the injury.

I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this    7th    day of December, 2005.


_Brian S Weseman_
Brian Weseman
Senior Officer
Federal Correctional Institution
McKean, PA

-2-

(ATTACHMENT 4)

**(ATTACHMENT 5)**

# SENECA EYE SURGEONS

Robert J. Weiss, M.D.          Timothy J. O'Brien, M.D.          Nicholas A. Stathopoulos, M.D.

April 16, 2004

*#19613-039*

Dr. H. Beam                     Re:      Darryl O. Baker
Health Center                   DOB:    6/30/1962
FCI McKean                      DX:      Orbital Floor Fracture w/Entrapment
PO Box 5000                     DATE OF EVAL:    4/15/04
Bradford, PA 16701

Mr. Baker was seen April 15th. He had been struck in the left eye February 27th with a fist. He was complaining of blurred vision in both eyes. He does note that he gets double vision when he looks up. This is especially noticeable when he is weight lifting and doing, I believe, bent over rows and is looking straight ahead with his head tilted down.

His vision was 20/100 in the right eye and 20/200 on the left. This was easily correctable to 20/20 in either eye with an eyeglass prescription. The eyes were well aligned straight ahead. However, with up gaze the left eye did not elevate or look as far up as the right eye. I did not see any signs that the left eye was protruding further out or recessed into the eye more so than the right. The retina was normal.

The reports of the CT did suggest that there was some scarring of the floor of the orbit with possible adhesions to the inferior rectus muscle. Typically, in ophthalmology even with a fracture of the orbital floor, we like to wait at least two weeks to see that it heals on its own and the muscle entrapment is resolved. He is about six to eight weeks out and complaining of symptoms. Because he is well aligned at near, I think it would be better to take a conservative approach as the scarring is adherent to the muscle. However, it may be worthwhile to get a secondary opinion from an orbital plastic specialist who deals with these on a regular basis.

Thank you for allowing me to participate in Darryl's care. If you do not pursue an orbital evaluation, have him see me again in another three months.

Best regards,

Nicholas A. Stathopoulos, M.D.

NAS/js

Cc   Darryl C. Baker

REVIEWED BY
*Beam
4/21/04*
H. BEAM, MD
FCI MCKEAN

103 West St. Clair Street          27 Porter Avenue              2 Main Street
Warren, PA 16365                 Jamestown, NY 14701           Bradford, PA 16701
(814)726-2020                      (716)483-2020                 (814)362-7477
1-877-MD4-EYES                     1-866-716-EYES                1-866-814-EYES
Fax (814)726-1215                  Fax (716)488-9295             Fax (814)362-4975

# SENECA **EYE** SURGEONS

Robert J. Weiss, M.D.          Timothy J. O'Brien, M.D.          Nicholas A. Stathopoulos, M.D.

May 3, 2004

Dr. Nicholas Stathopoulos
Seneca Eye Surgeons, Inc.
2 Main Street
Bradford, PA 16701

RE: BAKER, DARRYL O.          #— 19613- 039

Dear Dr. Stathopoulos:

I saw Mr. Baker, your 41 year old who was struck in his left eye approximately two months ago. He is complaining at this point in time that his acuity although it has returned to normal he does get a feeling of double when he looks to the right. He also has a sensation of a foreign body in it.

On examination at this time, his acuity is 20/20 OU. There is definitely no proptosis and there is no enopthalmos. He does get diplopia. It is worse especially when he looks to the right and upwards. He does not get this looking straight ahead or down. So, he is really quite functional. I watched him walk around and he does not have to close the eye to walk.

He had a small calcium deposit in his meibomian gland in his lower lid. I removed it with tweezers. On examination of the retina he has no evidence of papilledema or compromise of any of the other structures.

I went over the CT scan. That is a very pretty picture of a floor fracture. At this point in time in the absence of diplopia in a straight ahead gaze, I still think that six more weeks of time is the answer. If at three months he definitely still has diplopia and it is causing him some serious problems it should be repaired. He still may completely clear. Fortunately despite the nastiness of this injury he sustained no obvious damage to his human lens, the anterior chamber angle or the retina.

Yours truly,

*Robert J Weiss md*

Robert J. Weiss, M.D.

Reviewed by D. Olson, MD
Date 5/5/04

**COPY**

Cc: Dr. Beam

RJW/lab

103 West St. Clair Street
Warren, PA 16365
(814)726-2020
1-877-MD4-EYES
Fax (814)726-1215

27 Porter Avenue
Jamestown, NY 14701
(716)483-2020
1-866-716-EYES
Fax (716)488-9295

2 Main Street
Bradford, PA 16701
(814)362-7477
1-866-814-EYES
Fax (814)362-4975

www.senecaeye.com

# SENECA [M] SURGEONS

Robert J. Weiss, M.D.         Timothy J. O'Brien, M.D.         Nicholas A. Stathopoulos, M.D.

June 11, 2004

*# 19613-039*

Dennis Olson, M.D.
FCI McKean
P.O. Box 5000
Bradford, PA 16701

RE: BAKER, DARRYL

Dear Dr. Olson:

As you know we have been following Mr. Baker's clinical diplopia related to a punch that gave him a blow out fracture. He also has a little bit of anesthesia involving the infraorbital nerve branches. We have given it plenty of time now, almost five months. He still has entrapment; he can not look up with his left eye without experiencing a form of diplopia that gives him extreme imbalance. He does not think that he can function this way.

His acuity is 20/20 in both eyes when he wears his glasses. My advice at this point is to do a repair of blowout fracture, release the entrapment under general anesthesia. I will leave the final decision up to you.

Yours truly,

*Robert J Weiss md*

Robert J. Weiss, M.D.

p.s. The patient understand that one of the side effects of doing the operation when he does not have diplopia in down gaze, only up gaze, would be that he might develop diplopia in down gaze. There is no way that I can promise him that that couldn't happen.

RJW/lab

*H. BEAM, MD*
*FCI McKEAN*
*6/16/04*

103 West St. Clair Street
Warren, PA 16365
(814)726-2020
1-877-MD4-EYES
Fax (814)726-1215

27 Porter Avenue
Jamestown, NY 14701
(716)483-2020
1-866-716-EYES
Fax (716)488-9295

2 Main Street
Bradford, PA 16701
(814)362-7477
1 866-814-EYES
Fax (814)362-4975

www.senecaeye.com

(ATTACHMENT 6)



# FEDERAL BUREAU OF PRISONS
# m e m o r a n d u m
**FCI McKean, Pennsylvania**

DATE: March 23, 2004

REPLY TO
ATTN. OF: James F. Sherman, Warden

SUBJECT: **INMATE REQUEST TO STAFF MEMBER**

TO: BAKER, Darryl
Reg. No. 19613-039

This is in response to your letter receipted in my office on March 12, 2004, in which you state that you suffered an eye injury on February 29, 2004 and have not received medical treatment for it.

Records indicate you were medically assessed immediately following the injury. You were instructed to follow up with sick call as needed following that assessment. A sick call slip was never received by health services from you; however, on March 9, 2004, at the request of the Associate Warden, a PA stopped by to examine you. You became verbally abusive and belligerent with the PA. You were given an order to stop your abusive behavior which you refused to do. The PA was not able to conduct an exam at that time due to your behavior. You were instructed of the proper way to sign up for sick call at that time. A sick call request was received from you on March 9, 2004, and you were seen by a doctor on March 11, 2004. The exam revealed a left eyelid abrasion only. No other injuries were found concerning your left eye.

I trust your concerns have been addressed.

## REQUEST FOR ADMINISTRATIVE REMEDY
## PART B - RESPONSE

**BAKER, Darryl Orrin**
Reg. No.: 19613-039
Remedy I.D.: 366343-F7
Qtr: Unit G/A

This is in response to your Request for Administrative Remedy receipted March 3, 2005, in which you request to be seen by an orbital specialist. In addition, you allege "retaliation, deliberate indifference, and violation of your Fifth Amendment right."

Investigation into this matter reveals you suffered an orbital floor fracture when you were assaulted on February 27, 2004, at FCI McKean but you did not seek treatment until February 29, 2004. On August 12, 2004, you were transferred to FCI Elkton. Since that time, you have been evaluated on numerous occasions by the physician assistant, the staff physician, and the Clinical Director for eye pain. You were scheduled to undergo a CT Scan of your head; however, due to technical difficulties the test was unable to be performed. The medical staff is in the process of rescheduling your test and you are tentatively scheduled March 28, 2005. A medical determination will be made pending the results of this test, and if it is clincally indicated you will be scheduled to see an orbital specialist. In addition, your medical record reveals you have received well-documented care and appropriate medical treatment. As a result, you have provided no viable evidence that staff have retaliated, shown deliberate indifference, or violated your Fifth Amendment Rights.

Based on these findings, your Request for Administrative Remedy is neither granted nor denied, but for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Northeast Region, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106, within 20 calendar days of the date of this response.

T. R. Sniezek, Warden                    3/25/05
                                          Date

(ATTACHMENT 7)

# DOCTOR BEAM, M.D.

MARCH 9, 2004.

1. I DARRYL BAKER, EMERGE IN ADMINISTRATIVE SEGREGATION ON SUNDAY FEBRUARY 29, 2004.

2. I WAS SEEN BY A DOCTOR IN MEDICAL AND RECEIVED NO MEDICATION FOR MY EYE INJURY.

MONDAY MARCH 1, 2004, NURSE NELSON, CAME TO ADMINISTRATED SEGREGATION AND, I INFORM HERE OF MY INJURY AND SHE REFUSED TO GIVE ME MEDICAL ATTENTION.

BOTH ASSISTANT WARDENS CAME TO MAKE THEIR ROUNDS UNDER BOP POLICY AND I INMATE BAKER BROUGHT MY MEDICAL NEED TO BOTH OF THE AND I WAS STILL DENIED ATTENTION.

IT'S BEEN TWO (2) WEEKS UNTIL THIS DAY AND, A MALE FROM MEDICAL CAME TO ADMINISTRATIVE SEGREGATION AND MARCH 9, 2004, AND I INMATE BAKER STILL AGAIN WAS DENIED MEDICAL TREATMENT FROM STAFF HERE AT F.C.I. McKEAN.

DOCTOR BEAM, M.D., I INMATE BAKER, STILL HAVE A EYE INJURY DO TO THE FACT I WAS ASSULTED BY TO INMATES. I AM STILL REQUESTING MEDICAL TREATMENT, PLEASE LOOK IN THE MATTER.

ALSO, I BROUGHT MY INJURY TO THE A— CHIEF IN ADMINISTRATIVE SEGREGATION,

000187

2. UNDER THE EIGHT AMENDMENT FOR CRUEL AND UNUSUAL PUNISHMENT WHEN STAFF DENY AN INMATE MEDICAL ASSISTANCES IT VIOLATES THIS AMENDMENT BECAUSE STAFF IS BEING DELIBERATELY INDIFFERENT TOWARD A INMATE MEDICAL NEEDS.

1. UNDER THE ANTITERRORISM DEATH PENALTY ACT WHICH WAS INACTED CARRIES THE PRISON LETIGATION REFORM ACT WHERE A INMATE MUST EXHAUST HIS ADMINISTRATIVE REMEDIES BEFORE HE CAN PRESENT HIS CLAIM IN THE DISTRICT COURT.

INMATE BAKER
#19613-039

Received & Seen 3/17/04

H. BEAM, MD
FCI MCKEAN

000188

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                                    FEDERAL BUREAU OF PRISON

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| DOCTOR MEDICAL | 3-28-03 |
| FROM: INMATE BAKER | REGISTER NO.: # 19613-039 |
| WORK ASSIGNMENT: SHU | UNIT: |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

DOCTOR, TODAY AT APPROXIMATELY 8:10 NURSE NELSON
ARRIVED AT SHU DOOR 101, I REQUESTED MEDICAL ATTENTION
AND WAS DENIED AGAIN. THIS IS THE FOURTH (4) TIME
I BROUGHT THIS TO HER ATTENTION CONCERNING MY SYMPTOM

PLEASE LOOK INTO THE MATTER!

8th AMENDMENT
CRUEL AND UNUSUAL PUNISHMENT DENIAL OF
MEDICAL NEED, AND BEING DELIBERATELY INDIFFERENT!

(Do not write below this line)

DISPOSITION: I Saw you on 3/31/03. Are you still
having a need for evaluation? Your
note complaining about Nelson RN doesn't
mention your concern.

        Please direct requests for care to
The PA or nurse practitioner or MD making
rounds in the future. The nurse does not
diagnose problems.

| Signature Staff Member | Date | 000189 |
|---|---|---|
| W.H. BEAM MD FCI MCKEAN | 4/3/03 | |

Record Copy - File; Copy - Inmate
This form ... ... ... ... via W.H.                    This form replaces BP-148.070 dated Oct 86
                                                      and BP-S148.070 APR 94

BP-S148.055  INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Doctor ("MEDICAL") | DATE: 3-28-03 |
|---|---|
| FROM: INMATE BAKER | REGISTER NO.: # 19613-039 |
| WORK ASSIGNMENT: SHU | UNIT: A-A- |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

DOCTOR, I HAVE BEEN IN ADMINISTRATIVE DETENTION FOR (13) DAYS
REQUESTING MEDICAL ATTENTION OFOR MY MEDICAL NEED. SYMPTOMS, ("I HAVE
PUS, AND INFLAMMATION, BLEEDING, EXASPERATION, ON THE SURFACE OF MY HEAD")
I HAVE BROUGHT THIS TO THE ATTENTION OF YOUR MEDICAL TEAM HERE AT
F.C.I. McKEAN. THEY ARE FIRST, SHIFT (NURSE (3) TIMES), EVENING WATCH NURSE
ON (2) OCCASIONS, AND (P.A. ON (2) OCCASION), AND STILL NO RESULTS.

DOCTOR, TO PREVENT THIS MATTER, FROM RESULTING TO BE ADJUDICATED
ON JUDICIAL PREREEDINGS PLEASE, LOOK INTO THE MATTER! CAUSE.
("8 AMENDMENT CRULE AND UNUSUAL PUNISHMENT BEING DELIBERATELY
INDIFFERENT TOWARD MY MEDICAL NEED).

(Do not write below this line)

DISPOSITION:

I will bely examine your scalp
soon -

| Signature Staff Member | Date 3/28/03 | 000190 |
|---|---|---|

H. BEAM, MD
FCI McKEAN

Record Copy - File; Copy - Inmate
This form may be xeroxed via WP

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUE.    'O STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**

*Dr Beam*

**FEDERAL BUREAU OF PRISON**

| TO:(Name and Title of Staff Member) DR. BEAM M.D. | DATE: -039 |
|---|---|
| FROM: INMATE BAKER | REGISTER NO.: 16917 |
| WORK ASSIGNMENT: | UNIT: |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

My MEDICINE IS ALL GONE AND THE BUMPS ARE
RETURNING. I NEED SOME STRONGER MEDICINE

Thank you,

(Do not write below this line)

DISPOSITION:

Please bring this up with The
MLP on Sickcall

Signature Staff Member    H. BEAM, MD
FCI McKEAN        Date 3/24/04

000186

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055  INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                           FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) **DOCTOR BEAM., M.D.** | DATE: **MAY 3, 2004** |
|---|---|
| FROM: **INMATE DARRYL BAKER** | REGISTER NO.: **# 19613-039** |
| WORK ASSIGNMENT: **ORDERLY** | UNIT: **AA** |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

**DOCTOR BEAM, I WAS TAKEN TO SEE AN ORBITAL SPECIALIST ON APRIL 30, 2004.**

**DOCTOR BEAM, I WOULD LIKE TO HAVE A COPY OF THE ORBITAL SPECIALIST LETTER**

**AND REPORT THAT EXPLAINS MY INJURY OR HIS ANALYSIS TO MY LEFT EYE.**

**THANK YOU!**

(Do not write below this line)

DISPOSITION:

*I will forward This request To medical records*

Signature Staff Member                    Date        5/5/04

H. BEAM, MD
FCI MCKEAN

Record Copy - File; Copy - Inmate            This form replaces BP-148.070 dated Oct 86
(This form may be replicated via WP)         and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUE** ⟶ **O STAFF** CDFRM
SEP 98
U.S. **DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) DOCTOR BEAM., M.D. | DATE: APRIL 22, 2004 |
|---|---|
| FROM: DARRYL ORRIN BAKER  INMATE: | REGISTER NO.: #19613-039 |
| WORK ASSIGNMENT: ORDERLY | UNIT: AA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)
        **DOCTOR BEAM, I CONFABULATED WITH YOU ON SEVERAL OCCASIONS AND REQUESTED**

**A COPY OF MEDICAL REPORT FROM THE OUTSIDE SURGION WHEN I WENT TO SEE HIM ON APRIL 15, 2004.**

**DOCTOR BEAM, MAY I HAVE A COPY OF THIS REPORT SO I CAN SEE HIS DIAGNOSIS THAT WHERE**

**SUSTAINED TO MY LEFT EYE ON FEBRUARY 27, 2004.**

                                        **THANK YOU VERY MUCH!**

                        (Do not write below this line)

DISPOSITION:        I'll see what I can do

Signature Staff Member                Date    4/23/04

Record Copy - File; Copy - Inmate                This form replaces BP-148.070 dated Oct 86
(This form may be replicated via WP)            and BP-S148.070 APR 94

Printed on Recycled Paper

BP-S148.055 **INMATE REQUES** **TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| DOCTOR BEAM., M.D. | APRIL 28, 2004 |
| FROM: INMATE BAKER | REGISTER NO.: # 19613–039 |
| WORK ASSIGNMENT: ORDERLY | UNIT: AA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

DOCTOR BEAM, I HAD A CALL-OUT ON APRIL 28, 2004, AND MEDICAL STAFF SAID YOU

CALLED IN SICK. DOCTOR BEAM, I WAS THE RECIPIENT OF DOCTOR STATHOPOULOS, M.D.

MEDICAL REPORT WHEN I SAW HIM ON APRIL 15, 2004, AND HE INDICATED THAT I HAD

SOME SCARRING OF THE FLOOR OF THE ORBIT WITH POSSIBLE ADHESIONS TO THE INFERIOR

RECTUS MUSCLE. HE STATED THAT OPHTHALMOLOIST LIKE TO WAIT TWO (2) WEEKS TO SEE

IF IT WOULD HEAL ON ITS OWN OR SEE IF THE MUSCLE ENTRAPMENT IS RESOLVED. HE ALSO

STATED THAT I WAS SIX (6) TO EIGHT (8) WEEKS OUT AND THAT I SHOULD GET A SECOND

OPINION FROM AN ORBITAL PLASTIC SPECIALIST. DOCTOR BEAM I AM STILL HAVING EXCRUCIATI

PAIN IN MY UPPER LEFT EYE AND I STILL SEE DOUBLE WHEN I LOOK UP, AND MY LEFT EYE DOE

ELEVATE OR LOOK AS FAR UP AS THE RIGHT EYE.

(Do not write below this line)

DISPOSITION:

The Apr 28 copyct was to
keep you abreast of developments.
We're on top of things! you will
get the care you need

| Signature Staff Member | Date |
|---|---|
| [signature] BEAM, MD FCI MCKEAN | 4/29/04 |

Record Copy - File; Copy - Inmater
(This form may be replicated via WP)                This form replaces BP-148.070 dated Oct 86
                                                    and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST T. STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                           **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) DOCTOR BEAM, M.D. | DATE: MARCH 28, 2004 |
|---|---|
| FROM: INMATE BAKER , *DARRYL* | REGISTER NO.: 19613-039 |
| WORK ASSIGNMENT: ORDERLY | UNIT: *SHU AA* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

DOCTOR BEAM, THIS IS A SICK CALL REQUEST IN REFERENCE TO A INJURY FROM AN

ASSULT I RECEIVED TO MY EYE ON FEBRUARY 27, 2004. DOCTOR BEAM, MY EYE HAS

NOT FULLY RECOVERED AND I NEED MEDICAL ATTENTION. DOCTOR BEAM, WOULD YOU

PLEASE SET AN APPOINTMENT WHERE I CAN COME IN AND HAVE MY EYE EXAMINE.

THANK YOU.

(Do not write below this line)

DISPOSITION:

You were Seen By Dr Howard 3/31/04
I will have you called on 4/1/04
for discussion of what needs
To Be done

| Signature Staff Member | Date 3/31/04 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)        This form replaces BP-148.070 dated Oct 86
                                            and BP-S148.070 APR 94

(ATTACHMENT 8)

13-110                                                                                    NSN 7540-00-634-4127

| MEDICAL RECORD | CONSULTATION SHEET |

### REQUEST

TO: OPTOMETRIST    FROM: (Requesting physician or activity) Dennis Olson, MD, CD    DATE OF REQUEST

REASON FOR REQUEST (Complaints and findings)

EYE EXAM:

SUBJECTIVE:     blurs at far and near
assaulted
Feb 27th
age 41

PROVISIONAL DIAGNOSIS

lwtin left eye socket

DOCTOR'S SIGNATURE    APPROVED    PLACE OF CONSULTATION

D. OLSON, M.D.    ☐ ROUTINE    ☐ TODAY
☐ BEDSIDE  ☐ ON CALL    ☐ 72 HOURS    ☐ EMERGENCY

### CONSULTATION REPORT

RECORD REVIEWED ☐ YES ☐ NO    PATIENT EXAMINED ☑ YES ☐ NO

Visual Acuity Distance OD 20/200    OS 20/200    TONOMETRY:    OD 17
Near    OD .37m    OS .37m    uncorrected    OS 18
0950

External Normal 72/69    open angles + dilate to
Internal    examine retinas

Refraction OD -1.00 -1.25 X 180    20/20    5 × 24 × 6 1/4
OS -1.00 -1.25 X 10    20/20    Sorenses

Diagnosis CMA

Analysis requires eyeglasses    on upward gaze
left eye stops

Plan    order eyeglasses    trauma to eye socket
possible left superior
(Continue on reverse side)    oblique
entrapment

SIGNATURE AND TITLE  Christian J. Horvath    DATE 3/31/04

IDENTIFICATION NO.    ORGANIZATION FCI McKean    REGISTER NO. 19613-039    WARD NO.

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle; grade/rank; rate; hospital or medical facility)

Baker, Darryl

REVIEWED BY
3/31/04
ordered

H. BEAM, MD
FCI McKEAN

CONSULTATION SHEET
Medical Record

STANDARD FORM 513 (REV. 8-92)
Prescribed by GSA/ICMR, FIRMR (41 CFR) 201-9.202-1

Refer to opt...

· ˙513–110˙                                                                                                  NSN 7540–00–634–4127

| MEDICAL RECORD | CONSULTATION SHEET |
|---|---|

## REQUEST

TO: OPTOMETRIST
FROM: (Requesting physician or activity) Dennis Olson, MD, CD
DATE OF REQUEST

REASON FOR REQUEST (Complaints and findings)

EYE EXAM:

SUBJECTIVE:

PROVISIONAL DIAGNOSIS

| DOCTOR'S SIGNATURE | APPROVED | PLACE OF CONSULTATION | | |
|---|---|---|---|---|
| D. OLSON, M.D. | | ☐ ROUTINE | ☐ TODAY | |
| | | ☐ BEDSIDE    ☐ ON CALL | ☐ 72 HOURS | ☐ EMERGENCY |

## CONSULTATION REPORT

RECORD REVIEWED ☐ YES ☐ NO          PATIENT EXAMINED ☐ YES ☐ NO

Visual Acuity   Distance   OD          OS          TONOMETRY:          OD

                Near   OD          OS                                          OS

External       Compared prescription ordered on 3/31/04
Internal       to Dr Stathopoulous   — Vision is 20/20
Refraction     with each correction. — essentially
                                                equal

Diagnosis

Analysis                    No change required

Plan

(Continue on reverse side)

| SIGNATURE AND TITLE *Christine J. Hornacker* | DATE 4/28/04 |
|---|---|
| IDENTIFICATION NO. 4/16/11 | ORGANIZATION **FCI McKean** | REGISTER NO. 19613-039 | WARD NO. |

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle; grade; rank; rate; hospital or medical facility)

Dennis Olson, MD
Physician                    Baker, Darryl

CONSULTATION SHEET
Medical Record

STANDARD FORM 513 (REV. 8–92)
Prescribed by GSA/ICMR, FIRMR (41 CFR) 201–9.202–1

NSN 7540-00-634-4127

| MEDICAL RECORD | | CONSULTATION SHEET | | |
|---|---|---|---|---|

**REQUEST**

TO:    OPTOMETRIST     FROM: (Requesting physician or activity)    *Dennis Olson, MD, CD*    DATE OF REQUEST

REASON FOR REQUEST (Complaints and findings)

EYE EXAM :

SUBJECTIVE :    Did not appear for scheduled appointment

went to Dr on outside trip today

PROVISIONAL DIAGNOSIS

| DOCTOR'S SIGNATURE | APPROVED | PLACE OF CONSULTATION | ☐ ROUTINE | ☐ TODAY |
|---|---|---|---|---|
| D. OLSON, M.D. | | ☐ BEDSIDE   ☐ ON CALL | ☐ 72 HOURS | ☐ EMERGENCY |

**CONSULTATION REPORT**

RECORD REVIEWED ☐ YES ☐ NO     PATIENT EXAMINED ☐ YES ☒ NO

Visual Acuity   Distance    OD      OS     TONOMETRY:    OD

             Near     OD      OS                     OS

External

Internal                On township to see ophthalmologist

Refraction              today

Diagnosis                          6/9/04

Analysis                         D. Olson, MD
                               Clinical Director

Plan

*(Continue on reverse side)*

| SIGNATURE AND TITLE | | | DATE |
|---|---|---|---|
| *Christon J. Hoerantos* | | | 6/9/04 |
| IDENTIFICATION NO. | ORGANIZATION **FCI McKean** | REGISTER NO. 14613 | WARD NO. |

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle; grade; rank; rate; hospital or medical facility)

*BAKer*

CONSULTATION SHEET

Medical Record

STANDARD FORM 513 (REV. 8-92)
Prescribed by GSA/ICMR, FIRMR (41 CFR) 201-9.202-1

**(ATTACHMENT 9)**

Attachment #1
LEW 1330.16
Page 1

# INFORMAL RESOLUTION ATTEMPT

In accordance with Program Statement 1330.7, Administrative Remedy Procedure for Inmates, this form will serve as documentation by the respective staff member and his unit manager to indicate an informal attempt to resolve the complaint of the following inmate:

NAME: Darryl Orrin Baker          REGISTRATION NO. # 19613-039

FORM TO INMATE: _____     STAFF: Hozkes

**A BP-9 will not be accepted without this completed form attached**  (pg 1 & pg 2)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1.  Nature of Complaint ( to be completed by inmate)

I WAS HOUSED AT THIS CAMP ON AUGUST 9, 2005 AND REQUEST TO SEE THE EYE SPECIALIST OR EYE DOCTOR. I PUT IN 3 CALL OUT FORMS AND WAS SEEN BY THE TO PHYSICIAN PHYSICIAN ASSISTANT GOEZ, GOSA AND RAMIREZ, AND STILL TO THIS DAY OF MARCH 9, 2006, HAS NOT SEEN A EYE SPECIALIST OR A EYE DOCTOR.

I HAVE EXCRUCIATING PAIN IN MY LEFT EYE AND I AM REQUESTING MEDICAL ATTENTION. I HAVE BEEN DENIED A EIGHTH AMENDMENT VIOLATION BECAUSE THE MEDICAL DEPARTMENT HAS DENIED ME MEDICAL TREATMENT BY NOT ALLOWING ME TO SEE A ORBITAL SPECIALIST.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,                      :
           Plaintiff,            :
                                      :
                                      :
      v.            :           Civil Action No. 05-147 (Erie)
                                      :
                                      :
UNITED STATES of AMERICA, et al.,        :
           Defendants.          :

DECLARATION OF STEVEN BROWN.

1. I, Steven Brown, do hereby declare that I am employed as a Health Services

Administrator (HSA), at the United States Penitentiary (USP), Lewisburg, Pennsylvania. As the

HSA at USP Lewisburg, I have access to many records maintained in the ordinary course of

business at USP Lewisburg, including inmate medical records. I am familiar with medical

terminology, and I can interpret medical records.

2. Attached hereto, please find a true and correct copy of the medical record of inmate

Darryl Orrin Baker, Register Number 19613-039, which are maintained in the ordinary course of

business at USP Lewisburg. With respect to the medical treatment inmate Baker received an

eye injury sustained on February 27, 2004, his medical records indicate the following:

    a.    On February 29, 2004, an injury assessment and follow-up form was completed
by the Physician's Assistant (PA) at the Federal Correctional Institution (FCI),
McKean, Pennsylvania, indicating inmate Baker was injured during an assault by
two inmates. Inmate Baker reported face and eye pain associated with an assault
by two inmates with no loss of consciousness. He also complained of minor pain,
swelling and abrasions on his right chest, back, upper extremities, and both hands.
He reported episodic nose bleeding during the 24 hours following the assault. He
also reported resolving or decreasing paresthesia (numbness) of his left face and
teeth. He denied dizziness, hearing loss, vision loss or loss of consciousness. On
examination, he was awake, conscious, and oriented. He was in moderate
distress, ambulatory, and he had a flat affect. No blood was observed from his
ears. His tympanic membranes were intact without fluid or blood. The left side
of his face was mildly tender with some ecchymosis (skin discoloration) and

swelling. No step-off deformity of his nose was observed. His skin was intact
with much periorbital ecchymosis, edema and tenderness. His nasotracheal
pyramid and nose tip were neutral with mild ecchymosis on the left side. A
deviated nasal septum was observed on the right side with bilateral mucosal
edema, left greater than right, with dried and fresh blood. On the left side of the
nose, no visible rupture was observed. Injuries to his chest, back and upper
extremities were diagramed. His cranial nerves II-XII were in tact. His pupils
were equally reactive to light and accommodation. Conjunctivitis was observed
in his left eye. He was assessed with periorbital soft tissue trauma, ecchymosis,
and edema without a fracture, left maxilla/zygoma contusion without a fracture to
his mouth, contusion with abrasions (superficial) to his right chest and back,
contusions, sprain, and superficial abrasions to his right arm, and nose bleeding
and deviated nasal septum without fracture. He was prescribed Epinephrine to
control and prevent nose bleeding. He was given instructions regarding use of the
Epinephrine. He was given the Snelling visual eye examination, and he scored
20/25 bilaterally. He was educated and counseled regarding trauma. He was told
to return as needed. See, Medical Record of Darryl Orrin Baker, Reg. No. 19613-
039, at p. 174, attached hereto and labeled **Document 4a**.

b.    On March 9, 2004, at the request of an Associate Warden, a PA visited inmate
      Baker in SHU to advise him of SHU sick call procedures. During this visit,
      inmate Baker became verbally abusive and belligerent. He was told his behavior
      was not appropriate, and he was given another chance to discuss his health issues.
      He continued to be abusive in demeanor and language. The visit was ended. He
      was advised to sign up for sick call if he needed to be seen. See **Document 4a**, at
      p. 43.

c.    On March 11, 2004, The Medical Officer entered a notation into inmate Baker's
      medical record indicating that earlier that day, he received a written request from
      Baker dated March 9, 2004, in which inmate Baker indicated he was assaulted on
      February 27, 2004, and he was experiencing problems with his left eye. Inmate
      Baker indicated during the assault, he suffered contusions about his face, back and
      arm. He stated his left eye was punched and was sore, but cleared up afterwards.
      Inmate Baker stated that during the previous five days, the eye became sore again
      with crusting of the lower lid, red with weeping and redness. He denied
      photophbia, with slight soreness when he looked down extremely. On
      observation, he looked well. His pupils were equal, and reacted to light and
      accommodation. He had full extra ocular movement in both eyes. A fundoscopic
      visual examination was within normal limits for both eyes. The right conjunctiva
      was not red, and left conjunctiva was slightly red. An abrasion was observed at
      the lower lid of the left eye, and his left eye was watering. He denied recent injury
      or trauma. His vision acuity was 20/30 bilaterally, floroscene staining revealed no
      defect of the left cornea. He was assessed with abraded lower lid of the left eye.
      The Medical Officer was unsure how this happened, and indicated his belief that
      the injury was not related to the February 27, 2004 assault. Inmate Baker was
      educated regarding use of medications. He was prescribed Sufacetamide
      Ophthalmic Solution, and an optometry consultation was ordered. Id., at pp. 40-

41.

d.    On March 25, 2004, a PA conducting sick call appointments in the SHU indicated inmate Baker failed to report for a sick call appointment to check on his left eye due to his March 24, 2004 release from SHU to general population. It was noted that inmate Baker should follow-up with any medical needs at the HSU and through general population sick call procedures. Id., at p. 38.

e.    On March 31, 2004, inmate Baker was seen by the Optometrist. It was noted his left eye stopped during an upward gaze. He suspected entrapment of the left superior orbital muscle after the injury of February 27, 2004. He recommended an evaluation by an Ophthalmologist. Upon receipt of the Optometrist's evaluation, the Medical Officer contacted the contract Ophthalmologist. By telephone, the Ophthalmologist recommended ct scans of the orbits including coronal views, and an Ophthalmology follow-up appointment one week after the cat scan. The Ophthalmologist's recommendations were forwarded to the Utilization Review Committee (URC). Id., at pp. 36, 143-144.

f.    On April 1, 2004, inmate Baker was seen by the Medical Officer for a follow-up appointment. He reported, "when I look up, I see double since the assault." The Medical Officer observed inmate Baker appeared alright generally. He noted inmate Baker could not look up above the rest point with his left eye. Lateral movements were okay. He noted tenderness of the upper aspect of the orbital rim of the left eye. Inmate Baker was assessed with probable left superior orbital muscle entrapment. He was educated regarding upcoming plans for correction. He was prescribed Ketoconazole. Id., at p. 37.

g.    CT Scans of inmate Baker's brain and orbits conducted on April 9, 2004, showed an old fracture at the floor of the left orbit with some mucosal thickening that appeared to be chronic. No obvious muscle entrapment was noted at that time, however, the inferior rectus was very close to the ridge. Id., at pp. 82-83.

h.    On April 9, 2004, upon his return from the cat scan procedure, inmate Baker was seen by the Medical Officer. It was noted the ct scans of the orbits were conducted, and the results were not available. He was educated that he probably had entrapment of the extra ocular muscle, and the Medical Officer explained how it could have happened. On observation, inmate Baker appeared okay. It was noted he lacked the ability to look up with his left eye. He was assessed with probable extra ocular muscle entrapment. Id., at p. 34.

I.    On April 12, 2004, it was noted inmate Baker did not report to review the cat scan results. Id., at p. 29.

j.    On April 13, 2004, the Medical Officer called the Ophthalmologist's office. Another Ophthalmologist from the practice re-read the cat scan, and indicated inmate Baker had an old fracture at the inferior rim. it was noted the cat scan showed an old fracture of the inferior rim. The Medical Officer noted he would

await the contract Ophthalmologist's recommendation. Id., at p. 35.

k.    On April 15, 2004, inmate Baker was evaluated by the contract Ophthalmologist. It was noted his vision was 20/100 in the right eye and 20/200 in the left eye. The Ophthalmologist stated this could be corrected to 20/20 with an eyeglass prescription. On examination, inmate Baker's eyes were well aligned straight ahead. However, during upward gazing, the left eye did not elevate or look as far up as the right eye. He did not see any signs that the left eye was protruding further out or recessed into the eye more so than the right. The retina was normal. The cat scan suggested some scarring of the floor of the orbit with possible adhesions to the inferior rectus muscle. He noted that typically, in ophthalmology, even with a fracture of the orbital floor, it was preferred to wait at least two weeks to see if it would heal on its own. It was noted inmate Baker was about six to eight weeks post trauma, and he was complaining of symptoms. Because he was well aligned at near, the Ophthalmologist determined it would be preferable to take a conservative approach. He indicated it would be worthwhile to get a second opinion by an orbital plastic specialist. Id., at p. 140.

l.    On April 15, 2004, upon inmate Baker's return from the contract Ophthalmologist's office, the Medical Officer had a brief talk with him, and indicated he (the Medical Officer) would contact the contract Ophthalmologist for an update. Id., at p. 32.

m.    On April 15, 2004, the Medical Officer noted he spoke with the contract Ophthalmologist, who stated inmate Baker had a healed fracture with some entrapment of the inferior rectus. He recommended inmate Baker be rechecked in two months. He indicated the outcome was fairly good in that his gaze was convergent in most portions. Id., at p. 30.

n.    On April 15, 2004, the Medical Officer advised inmate Baker of the information provided by the contract Ophthalmologist. The assessment was healing fracture of the left orbit, inferior rectus muscle entrapment, functional, outcome reasonably good. Inmate Baker was educated regarding the need for eye glasses and a follow-up plan. Id., at p. 30.

o.    On April 21, 2004, the Medical Officer noted another Ophthalmologist from the contract Ophthalmologist's office left a message indicating he would see inmate Baker. The Medical Officer indicated he would arrange for this appointment for one to two weeks later. He noted he spoke with inmate Baker to explain the plan. Id., at p. 31.

p.    On April 30, 2004, inmate Baker was transported to the contract Ophthalmologist's office for a second opinion. Id., t p. 31.

q.    On May 3, 2004, it was noted that the second Ophthalmologist reported inmate Baker was quite functional with some degree of impairment as is. He recommended an Ophthalmology follow up in six weeks. He stated if inmate

Baker had diplopia while looking straight ahead, he would need a repair. Id., at p. 28.

r.    On May 6, 2004, inmate Baker was seen by the Medical Officer for a re-check of his left eye. During an examination of the extra ocular movements, inmate Baker reported he felt better. He stated he experienced pain looking up and to the right. He stated he felt like he was making progress. On examination, the Medical Officer felt inmate Baker was doing much better with elevation of the left eye. There was slight diplopia when he looked up the right. He was assessed with improving function of the left inferior rectus, healing blow-out fracture of the left orbit. He was educated regarding wearing glasses, and a follow-up with the second Ophthalmologist was scheduled for six weeks. Id., at p. 29.

s.    On June 4, 2004, inmate Baker was checked by the Medical Officer. He reported he still saw double when looking up and to the right side. He complained of pain in his left upper eye and nasal area. During an examination, it was noted his left eye appeared to be improving. It was noted inmate Baker still complained of diplopia in certain situations. He was assessed with diplopia, blowout fracture and left inferior rectus dysfunction. He was educated regarding his condition. He was told that follow-up appointments had been scheduled, and he would be placed on the call out. Id., at p. 26.

t.    On June 9, 2004, inmate Baker was seen by the second contract Ophthalmologist. It was noted that at five months after the injury, he still had entrapment. He could not look up with his left eye without experiencing a form of diplopia that gave him extreme imbalance. He told the Ophthalmologist he did not think he could function that way. The Ophthalmologist noted his acuity was 20/20 in both eyes with glasses. The Ophthalmologist recommended repair of the blowout fracture to release the entrapment under general anaesthesia. He explained to inmate Baker that one of the risks of this procedure was the risk that he may develop diplopia in down gaze. The Ophthalmologist could not guarantee this outcome would not result. Id., at p. 142.

u.    On June 16, 2004, the Medical Officer noted he reviewed the report from the second contract Ophthalmologist. The report was forwarded to the Utilization Review Committee (URC). Id., at p. 27.

v.    On July 1, 2004, inmate Baker was transferred from FCI McKean. Id., at p. 22.

w.    On July 7, 2004, during an intake screening at the Metropolitan Detention Center (MDC), Brooklyn, New York, it was noted inmate Baker had a history of orbital fracture, and needed an ophthalmology follow-up. He was instructed to follow-up at sick call for further evaluation. Id., at p. 18.

x.    On August 12, 2004, inmate Baker was transferred from MDC Brooklyn to FCI Elkton, Ohio. Id., at 16.

y.    On August 13, 2004, he reported he had a terrible sore throat for three days with fever, chills and aches. It was noted he did not have a fever at the time he reported to the Health Services Unit (HSU). After an examination, he was assessed with tonsilitis. He was prescribed Amoxicillin and Motrin. He was instructed to gargle and rest, and to follow-up in sick call. Id., at p. 12.

z.    On September 20, 2004, he complained of continued pain and diplopia in this left eye. On examination of his eyes, mild decreased superior movement of his left eye was noted. He did not have eyeglasses. He indicated he experienced pain with lateral movement. His medical consultations and ct scans were reviewed. He was assessed with status post left orbital fracture with impingement/entrapment. A cat scan of his orbits was ordered. An ophthalmologist referral was forwarded to the Utilization Review Committee (URC) to determine the need for surgery. He was scheduled to see an Optometrist. Id., at p. 13.

aa.    On December 16, 2004, inmate Baker complained of continued pain in his left eye. He asked when he would have the cat scan and an appointment with an outside specialist. He also had medical complaints not related to his eyes. He was examined, and the cat scan schedule was checked. He was assessed with history of left orbital fracture. It was noted he was on the schedule for a cat scan, but it was cancelled due to fog and inclement weather. It was noted he was re-scheduled for a cat scan. He was educated, and it was noted his eye had become a chronic situation, but was not urgent. Id., at pp. 8, 11.

bb.    On January 19, 2005, he was seen in the Chronic Care Clinic. He stated he had a history of diplopia, dizziness, headaches, and left eye muscle entrapment, secondary to an assault at FCI McKean. It was noted he was transferred to FCI Elkton before he could have surgery on his orbit. It was noted he had many years left to serve on his sentence and the case was not urgent. After an examination, he was assessed with diplopia, dizziness and headaches. It was noted that after receiving results from the cat scan a surgical referral could be forwarded to the URC. Id., at pp. 8-9.

cc.    On March 28, 2005, a cat scan was conducted. His paranasal sinuses appeared clear. There was some nasal septal deviation towards the left. The left frontal sinus was hypoplastic. The globes and the optic nerve appeared fairly symmetric. There appeared to be a fracture involving the left orbital floor. Absence of bone was noted involving the posterior aspect of the orbital floor and lateral aspect. The inferior rectus muscle extended to this defect but did not definitely appear to be entrapped. Minimal left maxillary sinus mucosal thickening was present. The radiologist suspected this was not an acute fracture. He saw minimal, if any, soft tissue swelling. An artifact from dental hardware limited his evaluation slightly. The uncinate process appeared intact bilaterally. Osteomeatal units appeared to be intact. The axial images indicated questionable possibly healed fracture involving the left lateral orbital wall. The impression of the radiologist was bony defect involving the posterior lateral aspect of the left orbital floor. He suspected this

represented an area of previous fracture. A small amount of orbital fat extended into this area. The left inferior rectus muscle extended to this defect but not through the defect. It did not appear to be entrapped. Minimal mucosal thickening of the left maxillary sinuses. The remainder of the paranasal sinuses appeared clear. No air fluid levels were identified. The left frontal sinus was hypoplastic. Id., at p. 85.

dd.     On April 6, 2005, he was seen in the Chronic Care Clinic at FCI Elkton. He complained of pain in the left eye when he looked up or to the side. He also complained of some numbness to the left side of the face. He denied dizziness or drooling. He was examined. He was assessed with diplopia, history of orbit fracture and folliculitis. He was educated about the care of his skin. It was noted the institution was awaiting a cat scan and review of the URC for a surgical referral. Id., at pp. 6-7.

ee.     On May 6, 2005, inmate Baker asked about the plan of action in regards to the left orbit fracture. He stated he had pain in the left eye. After an examination and review of previous records, he was assessed with history of orbit fracture and folliculitis. He was scheduled to be seen by the Clinical Director. Id., at p. 4.

ff.     On May 18, 2005, he was seen by the Clinical Director regarding the cat scan of his left eye. He stated he was still having gaze problems and pain. His vision was stable. He was assessed with left orbital fracture with mild entrapment of the left inferior rectus muscle. An Ophthalmology/surgical consultation referral was forwarded to the URC with the cat scan. Id., at p. 5.

gg.     On July 6, 2005, inmate Baker was seen in the Chronic Care Clinic. He complained of left eye pain. He stated he felt pain when looking up, also some swelling of the upper lid of the right eye. He also complained of allergy symptoms for two weeks. On examination he was alert and oriented. No redness was observed at his right eye. His pupil was round and reactive. Mild swelling of the upper lid was observed. No swelling or redness of the conjunctiva was observed at the left eye. Tenderness was evident at the medial side of the upper side of the orbit. He was assessed with history of orbit fracture, diplopia and allergy. He was educated regarding the URC's decision to send him to the Ophthalmologist for a surgical consultation. He was also told to purchase allergy pills at the commissary. Id., at p. 5.

hh.     On August 11, 2005, inmate Baker was scheduled to see the contract Ophthalmologist for a surgical consultation. However, the appointment had to be cancelled because he refused to permit staff to apply handcuffs to his wrists in order for Officers to transport him to the Ophthalmologist's office. It was noted he continued to have a decrease in vision. He complained of pain in his left eye. He complained of diplopia when reading. On examination, his visual acuity was 20/25 in his left eye and 20/20 in his left eye. The eye fundoscopic examination was negative. He had a slight decreased lateral range of motion. He was assessed with history of left orbit fracture, no entrapment on examination. He refused to

sign the medical treatment refusal form.  He was offered pain medications, and he refused them.  He stated Motrin and Naprosen were no help.  He and good vision acuity.  It was noted his refusal to submit to standard cuffing procedures resulted in the cancellation of the Ophthalmology appointment.  He was told that if he needed pain medication, he should report to sick call.  Id., at p. 2.

Pursuant to the provisions of 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _____9_____ day of December, 2005.


Steven Brown
Health Services Administrator
United States Penitentiary
Lewisburg, Pennsylvania

## ADMINISTRATIVE DETENTION ORDER

FCI MCKEAN, PENNSYLVANIA
Institution
Date/Time:  2-29-04 9:50 AM

TO    :  Special Housing Unit Officer

FROM  :  D. BAILEY, LIEUTENANT  , (Name/Title)

SUBJECT : Placement of BAKER, DARRYL      (A-A) , Reg. No. 19613-039 Administrative Detention
_____    (a) Is pending a hearing for a violation of Bureau regulations;
__XX__   **(b) Is pending investigation of a violation of Bureau regulations;**
_____    (c) Is pending investigation or trial for a criminal act;
_____    (d) Is to be admitted to Administrative Detention
        (1) Since the inmate has requested admission for protection;
        I hereby request placement in Administrative Detention for my own protection.
        Inmate Signature/Register No.:_____
        Staff Witness Printed Name Signature: _____
_____    (2) Since a serious threat exists to individual's safety as perceived by staff, although person has not
requested admission; referral of the necessary information will be forwarded to the UDC/DHO for
appropriate hearing.
_____    (e) Is pending transfer or is in holdover status during transfer.
_____    (f) Is pending classification; or
_____    (g) Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative
Detention by the Warden's designee.
It is this officer's decision based on all the circumstances that the above named inmate's continued presence in
the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or
orderly running of the institution because*

YOU HAVE BEEN PLACED IN ADMINISTRATIVE DETENTION PENDING AN INVESTIGATION INTO
YOUR INVOLVEMENT IN A PHYSICAL ALTERCATION.  CONDUCT OF THIS NATURE SERIOUSLY
RISKS THE SECURITY OF A CORRECTIONAL INSTITUTION AND WILL NOT BE TOLERATED.


Therefore, the above named inmate is to be placed in Administrative Detention until further notice.  The inmate
received a copy of this Order on (date / time) _2-29-2004 9:55 AM_____
Staff Witness Signature/Printed Name L. MOORE, ACT. LT. / _____
*In the case of DHO action, reference to that order is sufficient.  In other cases, the officer will make an
independent review and decision, which is documented here.
Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain;
Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File
(This form may be replicated via WP)                    Replaces BP-308(52) of JAN 88

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DARRYL ORRIN BAKER,              :
        Plaintiff,              :
                            :
     v.              :        Civil Action No. 05-146 (E)
                            :
UNITED STATES OF AMERICA, et al.,  :
        Defendants.              :

## DECLARATION OF WILLIAM E. BAUMGARTEL

I, William E. Baumgartel, make the following declaration under penalty of perjury:

1. I am a Paralegal Specialist employed by the United States Department of Justice, Federal Bureau of Prisons, United States Penitentiary (USP), Lewisburg, Pennsylvania. I have been employed in this capacity since approximately November 2002

2. As a Paralegal Specialist, I have access to most records maintained in the ordinary course of business at USP Lewisburg, including records maintained in inmate Central Files for inmates incarcerated at USP Lewisburg.

3. Attached hereto, please find a true and correct copy of the Administrative Detention Order dated February 29, 2004, for inmate Darryl Orrin Baker, Register Number 19613-039, which is maintained in the ordinary course of business at USP Lewisburg.

                        I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this *14* day of December, 2005.

                                      Wm. E. Baumgartel
                                      Paralegal Specialist
                                      United States Penitentiary
                                      Lewisburg, Pennsylvania



# FEDERAL BUREAU OF PRISONS
# m e m o r a n d u m

**FCI, McKean, Pennsylvania**

**DATE:**    February 29, 2004

**REPLY TO**
**ATTN OF:**    D. Bailey, Lieutenant

**SUBJECT:**    Fight / Assault, Inmate on Inmate

**TO:**    Donald P. Reich, Captain

On Sunday, February 29, 2004, at approximately 9:40 am, I was notified by Officer Szarowicz, Unit A-A, that he had an inmate with injuries consistent with being involved in a physical altercation. Staff responded to Unit A-A and found inmate Baker, Darryl, #19613-039 with a swollen left eye. Further investigation revealed that on Friday, February 27, 2004, at approximately 8:30 pm, inmates Baker #19613-039 and _____, ' _____ #' _ J- got into a verbal altercation in the microwave room of Unit A-A, over the use of the microwaves. The argument escalated and a some point inmate _____, _____, #' _ /- ' _ entered the area. The three inmates then got involved in a physical altercation.

All three inmates were escorted to the Health Services Department for medical assessments and placed in the Special Housing Unit pending investigation.

A hand and body check was conducted of all inmates in Unit A-A with negative results.

## INMATE INTERVIEWS:

### Baker, Darryl  #19613-039

Inmate Baker was interviewed in the Lieutenant's office by Lt. Bailey and he gave the following statement:

Inmate Baker stated that on Friday night at approximately 8:30 pm he entered the microwave room of Unit A-A. He got into an argument with inmate _____ # _____ } over the use of a microwave. He stated that _____ left the area and returned with inmate _____ ! #; _____ ) and the two of them proceeded to assault him.

Inmate _____ . was interviewed in the Lieutenant's office by Lt. Bailey and he gave the following statement:

Inmate _____ , stated that he did not have any knowledge of a fight or assault taking place recently in Unit A-A. He further stated that he was not involved in any fight or assault of inmate Baker and that he has not seen Baker for several days.

Inmate _____ .l was interviewed in the Lieutenant's office by Lt. Bailey and he gave the following statement:

Inmate _____ . stated that Baker and _____ had gotten into a fight in the microwave room on Friday night. He stated that the two of them got into a fight over the use of a microwave and that when he saw it he jumped in to break things up. _____ claimed that he had nothing to do with the injuries sustained by Baker.

## INMATE MEDICAL ASSESSMENT REPORTS:

### Baker, Darryl  #19613-039

Inmate Baker received a medical assessment by Robert Piotrowski, PA-C in the Health Services Department:

Inmate Baker sustained a hemorrahge to his left eye, superficial abrasions to the left side of his face, and a contusion to his forehead.

Inmate _____ . received a medical assessment by Robert Piotrowski, PA-C in the Health Services Department:

Inmate _____ did not sustain any injuries during this incident.

Inmate _____ . received a medical assessment by Robert Piotrowski, PA-C in the Health Services Department:

Inmate _____ did not sustain any injuries during this incident.



U.S. Department of Justice

# MEMORANDUM

## Federal Bureau of Prisons
### FCI MCKEAN

DATE: 2-29-04

REPLY TO: L. CARLSON S.O.S.

SUBJECT:  POSSIBLE ASSAULT

TO:   INVESTIGATING LT.

ON 2-29-04 AT APPROX. 9:30AM, WHILE ASSIGNED AS THE COMPOUND #2 OFFICER, I REPORTED TO UNIT A-A FOR A POSSIBLE ASSAULT, AT THAT TIME I ESCORTED INMATE BAKER #19613-039 TO THE LT. OFFICE, THEN TO THE INSTITUTIONAL HOSPITAL, THEN TO SHU. AFTER THE 10:00AM COUNT I REPORTED TO UNIT A-A, AND ESCORTED INMATE #          TO THE LT. OFFICE, THEN TO THE INSTITUTIONAL HOSPITAL, THEN TO SHU.



**UNITED STATES GOVERNMENT**
M E M O R A N D U M
**FEDERAL CORRECTIONAL INSTITUTION**
**MCKEAN COUNTY, PENNSYLVANIA**
**16701-5000**

**DATE:** February 29, 2004

**REPLY TO**
**ATTN OF:** John Szajowicz, SOS

**SUBJECT:** Inmate Baker, Darryl #19613-039

**TO:** Douglas Bailey, Operations Lieutenant

On 2-29-04 at approximately 0915 I entered the lower ten man cell in Unit AA.  I found inmate Baker #19613-039 lying in his assigned cell with his bed sheet covering his face.  I asked him a question and he answered me with the sheet still covering his face.  I got suspicions so I ordered him to remove the sheet from his face.  When he complied I discovered that his left eye and upper forehead had injuries that are consistent with an assault.

I then asked him what had happened to his face and he replied that a dumb bell up in the weight room fell on him.

I immediately notified the Operations Lieutenant.

# P1613-039

## SENECA EYE SURGEONS, INC.

103 W. ST. CLAIR ST., WARREN, PA 16355    814-726-2020
27 PORTER AVE., JAMESTOWN, NY 14701    716-483-2020
2 MAIN ST., BRADFORD, PA 16701    814-362-7477

PATIENT'S NAME _Darryl Baker_    DATE _4/15/04_

ADDRESS _____

                          SURGERY DATE _____

MEDICARE NO. _____

**Rx**

|       | SPH   | CYL    | AXIS | PRISM | BASE |
|-------|-------|--------|------|-------|------|
| OD    | -1.75 | +1.00  | 090  |       |      |
| OS    | -2.00 | +1.25  | 090  |       |      |
| ADD   | +1.25 | SPECIAL INSTRUCTIONS |   |       |      |
| ADD   | +1.25 | POLYCARBONATE LENSES RECOMMENDED |  |  |      |

DIAGNOSIS ___V43.1 / 379.31___  OD / OS    PROGNOSIS _____

PRESCRIPTION DURATION___ 6 MOS            _____
                                          PHYSICIAN'S SIGNATURE

PAUL O. KEVERLINE, M.D.
   PA LIC. MD-011817-E
   NY LIC. 170334-1

ROBERT J. WEISS, M.D.
   PA LIC. MD-022030-E
   NY LIC. 127219-1

TIMOTHY J. O'BRIEN, M.D.
   PA LIC. MD-047466-L
   NY LIC. 195904-1

NICHOLAS A. STATHOPOULOS, M.D.
   PA LIC. MD-071144-L
   NY LIC. 205998-1

CHARLES E. KELLER, O.D.
   PA LIC. OE-005123-P

SES017

000141