July 17, 2008

Clerk of the Court
United states District Court
Western District of Pennsylvania
Susan Paradise Baxter
Chief United States Magistrate Judge
17 South Park Row, Room A280
Erie, PA
16501

**FILED**

**JUL 2 3 2008**

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

    RE: **MEDICAL MALPRACTICE CLAIM**

        **DARRYL ORRIN BAKER v. UNITED STATES, ET.AL.**
        **CIVIL ACTION NO. 1:05-CV-147**

Honorable Magistrate Judge:

(1) The Plaintiff was Order by this Honorable Court to not file any more motion that pertain to this case.

(2) The Plaintiff's counsel Mr. Brain Fife, told the Plaintiff that the Plaintiff was to have (2) Settlement Conferences which did not occur, and the Plaintiff did not receive any **Order** from this Honorable Court.

(3) Based on the Report of Marian Rubenfeld, M.D., Ph.D **(EXPERT WITNESS)**, that the Defendants Breach the Duty of Care the Plaintiff **DEMAND A TRIAL BY JURY,** or if the Defendants want to settle this case, the Plaintiff is open for negotiations.

Thank you very much.

                                          Respectfully submitted

                           BY: _Darryl Baker_
                                Darryl Orrin Baker
                                Reg. No.# 19613-039 Unit-J
                                Federal Correctional Institution
                                P.O. Box 1000
ENCL:                        Sandstone, MN
                                55072

## QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.
### ATTORNEYS AT LAW

Bryan D. Fife
bfife@quinnfirm.com

2222 W. Grandview Blvd.
Erie, PA 16506
814/833-2222 Phone
814/833-6753 Fax
www.quinnfirm.com

July 11, 2008

Mr. Darryl Orrin Baker
Prisoner ID No. 19613-039
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN  55002

**RE:   Medical Malpractice Claim**
**       Our File No.:  60110.0001**

Dear Mr. Baker:

Enclosed please find a copy of Dr. Marian Rubenfeld's report in regards to your medical malpractice claim. Please contact me to discuss at your earliest convenience. Thank you very much.

Very truly yours,

QUINN, BUSECK, LEEMHUIS, TOOHEY &
KROTO, INC.

By _____
   Bryan D. Fife

BDF/sac/404918/60110.0001
Enclosure

#398381



**Eye Care Associates, P.A.**

Marian Rubenfeld, M.D., Ph.D.

Specializing in
Neuro-Ophthalmology,
Orbit, and Oculoplastics



20th Floor, Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
Telephone: 612.338.4861
Facsimile: 612.333.8306

710 E. 24th Street, Suite 201
(Adjacent to Phillips Eye Institute)
Minneapolis, MN 55404
Telephone: 612.871.0100
Facsimile: 612.871.0237

06-06-08

Bryan D. Fife, Esq.
Quinn et al.
2222 W. Grandview Blvd.
Erie, PA 16506

Re: Darryl Orrin Baker v. United States of America, et al.

Dear Mr. Fife;

In my capacity as subspecialist in neuro-ophthalmology, orbit, and oculoplastics, I have now reviewed the case material you have sent me concerning Mr. Baker, and had the opportunity to examine him in person.

Let me tell you the gist of my analysis before going into the details of the case: Mr. Baker was assaulted by two inmates on 02-27-2004 who inflicted a severe eye and orbital injury to his left eye. This injury was a blow-out fracture of the left orbit, which caused incarceration of fatty tissue and thereby anchored the inferior rectus muscle into the fracture site. When the swelling subsided after a few days, the globe still could not move in all its range of motion, and the proper medical response (the standard of medicine in the community) would have been to initiate a CT scan at that point. Then, the incarceration would have been detected, and Mr. Baker given the choice of surgical intervention. He either would not have availed himself of the surgical option, which would have left the incarceration in place, or had the surgery. Once the surgery was done, even at that time, there existed a small percentage of chance that there may have been occult damage to the muscle or nerve supplying it such that it would not have restored a full range of motion. Then, the appropriate thing to do would be to wait about 3-6 months, to see whether the strabismic damage reversed itself. If not, a second surgery would have been possible, that of strabismus surgery to re-align, as best possible, the eyes.

However, in my experience with these kinds of cases, there was a larger chance that, the incarceration would have been interrupted, the muscle has been freed, and the normal, or almost normal, function of the eye restored.

That this was not done for Mr. Baker comprises medical malpractice.

How do I make the above assertions? I shall give attention herein to 2 sets of evidence, the written record, and the physical exam.

### A. The Physical Exam

Mr. Baker entered my office on 06-06-08, in the company of a prison guard. I gathered the history from the inmate.

- He holds his head in a position of elevation, because of fusional needs (see below; he cannot fuse or use his eyes together in primary position, looking straight ahead.).
- The right upper lid seemed ptotic, because the left upper lid was retracted.
- Sensation over the facial region was abnormal: there was decreased sensation to touch in the area from the left lower lid superiorly, to the nose medially, to the side of the face temporally, to the upper lip inferiorly. (This is a classic finding in the case of an orbital floor fracture, indicating either damage to or incarceration of the infraorbital (V2) nerve.)
- Visual acuity:  -2.50 +1.25 x 87 yielded 20/50, PHNI, and J2.
  -2.25 +1.00 x 100 yielded 20/60, PHNI, and J3.

Manifest refraction:  -3.25 +1.50 x 85 yielded 20/20
 -3.00+1.25 x 90 yielded 20/25.

- Pupils were equal, round, brisk, and did not show an afferent papillary defect.
- Hertel exopthalmometer at a setting of 116 showed an excursion of 28mm OD, and 26mm OS. This means that the eyeball OS sinks in 2 mm deeper than the eyeball OD.
- Oculomotor exam: at distance; showed a left hypotropia and exotropia (2^BU + 18^BI). At near, showed the same (1^BU + 12^BI). This means that the patient does not fuse in primary position (looking straight ahead) and must hold his head with his chin elevated in order to fuse. When he is held in a position where he is looking straight ahead, the left eye is deviated lower than and out from the position of the normal right eye.

|   |   |   |   |   |   |
|---|---|---|---|---|---|
| 0 | 0 | 0 | -2 | -2 | -2 |
| 0 | 0 | 0 | 0 | -1 | -1 |
| 0 | 0 | 0 | 0 | 0 | -1 |

Movements in the 9 cardinal positions of gaze.

The rest of the exam, including slit lamp exam and dilated fundus exam, was normal. One exception: intraocular pressures were 21 and 22mm Hg.

**Clinical Impressions from the Exam:**
1. Blow-out fracture of left orbit; left orbital entrapment of intraocular fat and therefore left inferior rectus muscle, causing failure of eye to elevate into normal positions of gaze, and pain upon attempt.
2. Failure of fusion except in head-elevated position, because of left eye held in exotropic hyppotropia in normal primary position (out and down).
3. (The elevated intraocular pressures will have to be followed up on later; Mr. Baker is a glaucoma suspect because of them.)

**Recommendations from the exam:**
1. Immediate current CT scan to analyze the anatomy of the entrapment.
2. Surgery on the blow-out fracture and the orbital entrapment.
3. Period of recovery to determine degree of recovery.
4. Strabismus surgery to repair any damage done.
5. (Follow Mr. Baker as a glaucoma suspect. This glaucoma is not from the injury to his eye, but is inherent to him as an individual. Hence, both eyes have a risk of glaucoma.)

B. The Written Record

There are ample written records that indicate that Mr. Baker did not receive appropriate medical care. Here are just a few, taken from his record:

1. 03-31-04, consultation report, optometrist: The restriction of gaze in the left eye is first mentioned in this report. This causes the consultant to request an MRI and referral to an ophthalmologist.
2. 04-01-04: Documentation of limitation of movement in left eye.
3. 04-09-04: CT of orbits done. Note: This reading of the CT scan is incomplete, and shows probable cause for entrapment of muscles by entrapment of orbital fat around muscle.
4. 04-16-04 ophthalmology consult: Notes that he only gets double vision when he looks up, in contrast to my report below. The doctor's opinion that, "I think it would be better to take a conservative approach..." is erroneous, but he admits his limitations, and says a second opinion from an orbital specialist is necessary.

5. From the point at which there is conclusive evidence of orbital entrapment OS, Mr. Baker should have been referred for surgery. If the surgery was performed, and Mr. Baker ultimately did not recover full movement, one would assume there to be damage to the muscles from the entrapment. Increased length of time of entrapment increases the risk of complete recovery.

6. 06-16-04: Note mentioning entrapment not resolved after five months, and recommendation at that point for repair and release entrapment under general anesthesia.

7. 07-01-04: Federal prison. In transit form.

8. 07-01-04: Notes that he needs referral to ophthalmologist. Intake form written by patient clearly identifies problem.

9. 09-20-04: Still has problem. 10-21-04: Still has problem. 01-19-05: Still has problem.

10. 03-28-05: CT scan of the orbits. Here, it is noted that a small amount of orbital fat extends into the orbital floor, but it does not entrap the muscle. This is a frequent mistake made by non-subspecialists, when reading the scans. If there is orbital fat immediately contiguous to the muscle and it is entrapped, the muscle is entrapped too. The fat is holding the muscle, "prisoner". Thus, although the muscle is not entrapped, the fat is. A simple test such as forced duction test on his eyes would have undoubtedly given the diagnosis. However, this reading of the CT scan undoubtedly led to his denial of treatment.

There are more entries of a similar nature.

This constitutes my opinion on the case so described, and is held within a reasonable degree of medical certainty.

Yours truly,

*[signature]*

Marian Rubenfeld, M.D., Ph.D.